IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORIGINAL

JARID L. CUBBAGE )
   Petitioner, )
)
v. ) Civil Action No. 1:05-cv-798 GMS
)
THOMAS CARROLL, Warden )
   Respondent. )

MEMORANDUM OF LAW
in support of
WRIT OF HABEAS CORPUS



FILED
JAN -3 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Jarid L. Cubbage
PRO SE
271683
D.C.C.
1181 Paddock Rd.
Smyrna, De. 19977

DATE: December 22, 2005

# TABLE OF CONTENTS

PAGE

STATEMENT OF FACTS ... 1

ARGUMENT

I. THE DEFENDANT'S DUE PROCESS OF LAW OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE DEFENSE WAS MISLED INTO PROCEEDING TO TRIAL UNPREPARED BECAUSE OF NONDISCLOSURE ... 3

II. THE DEFENDANT'S RIGHT TO CONFRONTATION THAT IS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE TRIAL JUDGE ABUSED IT'S DISCRETION AND LIMITED THE CROSS-EXAMINATION OF A CODEFENDANT ... 10

III. THE DEFENDANT'S DUE PROCESS OF LAW THAT'S GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE PROSECUTOR SUBMITTED FALSE AND PREJUDICIAL EVIDENCE TO GAIN A CONVICTION ... 14

IV. THE DEFENDANT'S DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WAS VIOLATED DUE TO PROSECUTOR MISCONDUCT OF IMPERMISSIBLE CROSS-EXAMINATION ON DEFENDANT'S POST-ARREST SILENCE ... 18

V. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION DUE TO COUNSEL'S FAILURE TO INVESTIGATE AND PREPARE FOR TRIAL ... 22

# TABLE OF CONTENTS

ARGUMENT                                                                PAGE

VI. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE
OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT
OF THE UNITED STATES CONSTITUTION DUE TO COUNSEL'S
FAILURE TO OBTAIN CRIMINAL RECORD OF A
CODEFENDANT                                                             30

VII. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE
OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT
OF THE UNITED STATES CONSTITUTION DUE TO DEFENSE
COUNSEL'S FAILURE TO IMPEACH DETECTIVE HUDSON'S
TRIAL TESTIMONY                                                         34

VIII. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE
OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT
OF THE UNITED STATES CONSTITUTION DUE TO COUNSEL'S
FAILURE TO RAISE ISSUE ON DIRECT APPEAL OF
PROSECUTOR FAILURE TO DISCLOSE EVIDENCE UNDER ITS
RULE 16 OBLIGATIONS                                                     40

CONCLUSION                                                              45

ATTACHMENTS

Cubbage v. State, Del. Supr., 827 A.2d 30 (2003)  (A)

Cubbage v. State, 2005 WL 914470  (B)

Cubbage v. State, 2005 WL 2319114 (Del. Supr.)  (C)

## STATEMENT OF FACTS

On Saturday, February 9, 2002, the Burger King Restaurant in Rehoboth Beach, Delaware was robbed. The night manager, Michael Johnson and employee Jason Bavll was placed in the dumpster area by Daron Lewis and William Wilson while a third suspect went inside and removed a deposit bag from the table. Later that morning, store manager Pamala Bland, discovered that the money from the safe had been removed. On Sunday, February 10, 2002, Lewis turned himself in and gave a statement implicating Jarid Cubbage. Wilson also turned himself in but did not make a statement. Later that day, Cubbage was arrested and charged with Robbery 1st, Conspiracy 2nd, Possession of a Deadly Weapon during Commission of a Felony and Wearing a Disguise during Commission of a Felony.

By the time of Cubbage's preliminary hearing, Wilson had implicated Cubbage as the third participant. After the defendant's arraignment on April 4, 2002, Cubbage filed a motion for discovery through his first attorney, Thomas Barnett. (A-1) Prosecutor Adkins filed Automatic Discovery on April 25, 2002, but this discovery response failed to disclose Wilson's statements to Det. Hudson during their interview. (A-2) Cubbage sent three letters (A-3-5) and a motion (A-6) to Mr. Barnett, sent a letter to Prosecutor Adkins (A-7) and a letter to the Honorable Judge Bradley to obtain Wilson's statement. (A-8)

In September 2002, Mr. Barnett resigned as conflict counsel and John Brady was appointed as counsel. The defendant mailed a letter (A-9) and two motions (A-10-11) to receive Wilson's statements. On September 27, 2002, three days before trial, Prosecutor Adkins files a second Automatic Discovery (A-12) that stated Wilson did an untaped

1

Oral interview with Det. Hudson. The trial commenced from October 2, 2002, through October 8, 2002. The Jury returned a verdict of guilty on all counts.

December 6, 2002, the defendant was sentenced to eight years at level five and various levels of probation. The defendant timely filed his appeal which was denied in the Supreme Court. Cubbage v. State, Del. Supr. 827 A.2d 30 (2003) see Attachment "A" On April 26, 2004, the defendant timely filed a motion for post-conviction relief pursuant to Superior Court Criminal Rule 61. Superior Court Judge Stokes denied motion for post-conviction relief on April 13, 2005. State v. Cubbage, 2005 WL 914470 see Attachment "B" The defendant appealled to the Delaware Supreme Court, which affirmed the State's motion to affirm pursuant to Supreme Court Rule 25. Cubbage v. State, 2005 WL 2319114 (Del. Supr.) This Petition for Habeas Corpus Relief was filed on November 23, 2005. This is the Memorandum of Law in support of the petition.

# CLAIM ONE

THE DEFENDANT'S DUE PROCESS OF LAW OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE DEFENSE WAS MISLED INTO PROCEEDING TO TRIAL UNPREPARED BECAUSE OF NONDISCLOSURE

## EXHAUSTION

The claim for relief was presented to the Post-Conviction Court (within Argument One, p. 5-18 of the Post-Conviction Memorandum) and on appeal thereof (within Argument I, p. 5-10 of Appellant's Opening Brief). Thus, Cubbage has exhausted remedies as to the claim.

### The Defense is misled into proceeding to trial unprepared because of nondisclosure

During the defendant's preliminary hearing on February 28, 2002, Detective Hudson testified that he interviewed Codefendant William Wilson the week before and Wilson implicated Cubbage as a participant in the robbery. (A-13, Ln. 7-17)(A-14, Ln. 4-10) Det. Hudson also testified that the only evidence he had against the defendant, as far as physical or identification, was the Codefendants' statements. (A-15, Ln. 12-21)

April 25th, 2002, Mr. Adkins filed a discovery response that he was providing relevant written, recorded or oral statements made by the defendant or adult codefendant pursuant to Superior Court Criminal Rule 16. (A-2) This response informed the defense there was an audio recorded tape of Wilson's interview with Det. Hudson on 2-10-02 but nothing in reference to his 2-21-02 interview with Det. Hudson was mentioned. A police report was supplied that stated Wilson made no statements. (A-16-17) Mr. Adkins failed to file an objection under Rule 16(d) to the 2-21-02 interview or mention he wasn't providing complete discovery and misled the defense by stating this was the state's entire response to its discovery obligations under Rule 16 or any written request by the defendant. (A-2c)

September 27th, 2002, Mr. Adkins filed a second discovery which

3

informed the defense that the interview between Det. Hudson and Wilson was oral and not recorded. (A-12) The State informed the defense that Wilson substantially corroborated the version given by Lewis and the main inconsistency is they each claim the other had the gun. (A-12) Lewis' version was the suspects wore black ski masks. (A-18) (A-19 Ln. 17-23) (see Lewis' 2-10-02 interview tape) Once again, Mr. Adkins failed to inform that he wasn't providing complete discovery and failed to file an objection under Rule 16(d) to the interview between Wilson and Det. Hudson.

At trial, Mr. Adkins proffered testimony from Wilson that he wore a red/white doorag during the robbery (A-20, Ln. 13-19) (A-21, Ln. 2-12), he talked with Det. Hudson and his attorney Mr. Chasanov (A-22, Ln. 20-23), he talked about the incident, spoke to them on his own free will, he told the truth and he admitted his involvement in the robbery. (A-23, Ln. 1-12) Mr. Adkins violated his discovery obligations under Rule 16 and misled the defendant into proceeding to trial unprepared. Wilson's trial testimony was a surprise to the defendant. When the defense is misled into proceeding to trial unprepared, due process is violated. State v. Concannon, 457 A.2d 1350 (R.I. 1983) The defense believed Wilson would testify to wearing a black ski mask since Mr. Adkins stated in the second discovery response that Wilson substantially corroborated Lewis' version and Det. Hudson testified at the preliminary hearing that the suspects wore black ski masks. Mr. Brady approached the bench and informed the trial judge that he was unable to examine Wilson because Det. Hudson couldn't find his notes. (A-24 Ln. 3-6, 12-13) (A-25 Ln. 6-17) In an attempt to mitigate the error, the trial judge limited the defense from asking questions about the interview between Wilson and Det. Hudson. (A-25 Ln. 18-23)

Superior Court Criminal Rule 16 states that the defendant may make requests for any relevant: (1) Written or recorded statements or confessions made by the defendant or a co-defendant .... or copies thereof, and the substance of any oral statement which the State intends to offer in evidence at trial, made by the defendant whether before or after arrest in response to interrogation. Skinner v. State, Del. Supr. 575 A.2d 1108 Superior

4

Court Criminal Rule 16 is in the same general form as Federal Criminal Rule 16, however, Federal Rule 16 makes no specific reference to codefendants. Delaware Rule provides for much broader discovery than its Federal counterpart. <u>Minor v. State</u>, Del. Supr. 177 A.2d 215

Mr. Adkin's reason for not disclosing Wilson's statements is because Det. Hudson isn't sure there ever were any notes, he can't find any. (A-24 Ln. 14-16) In a sworn affadavit, Mr. Brady questioned Det. Hudson about the lost of notes. (A-26) In this case, the prosecutor provided Automatic Discovery. (A-27 Ln. 5-6) Eight months prior to trial, Mr. Adkins knew that Wilson had made statements to Det. Hudson. Under Rule 16, Mr. Adkins was obligated to disclose to the defense the statements from Wilson's interview with Det. Hudson. Superior Court Criminal 16(a) requires the State to disclose any statement of the defendant that the prosecution knows exists and which is within the possession, custody and control of the State. The Delaware Supreme Court have interpreted this language to mean that the State's obligation to produce a statement arises only when the prosecutor becomes aware of its existence. <u>Gardner v. State</u>, Del. Supr., 567 A.2d 404, 412 (1989) As Det. Hudson was an agent of the State, it was Mr. Adkins duty to find out about evidence before he disclosed discovery. Mr. Adkins had an duty to find out about the notes before he provided the first discovery response to Mr. Barnett. If the State had conducted a proper investigation of the material in its possession in order to comply with its discovery obligations, the State would have been able to discover the notes. <u>Johnson v. State</u>, 550 A.2d 903 (1988) If the State failed to provide complete discovery, it must follow the procedure mandated by Rule 16(d) which states: (B) Response. "The party upon whom the request is served shall serve a response within 20 days after service of the request or at such other time as ordered by the court. The response shall comply with the request or specify any objection to it." <u>Johnson v. State</u>, Del. Supr. 550 A.2d 903 (1988) In order

5

comply fully with its discovery obligations, the State should have supplied the defense with a summary of Wilson's testimony he was expected to give at trial, State v. Concannon, 457 A.2d 1350 (R.I. 1983); or a summary of the interview between Wilson and Det. Hudson, Kornegay v. State, Del. Supr. 596 A.2d 481 (1991); or the portion of Wilson's P.S.I. report that relates to the robbery, United States v. DeVore, 839 F.2d 1330 (1988); or a copy of Wilson's statements that the State disclosed to Wilson's attorney Mr. Chasanov who confirmed it with Mr. Brady. (A-26)

The Supreme Court made it clear that a violation of Superior Court Criminal Rule 16 with respect to the delayed disclosure of evidence requires reversal of a conviction only if the violation prejudiced the defendant. The Supreme Court adopted the test for harmless error regarding prosecutorial misconduct initially articulated in Hughes v. State, Del. Supr., 437 A.2d 559 (1981) as the appropriate test for determining whether a discovery violation requires reversal of a conviction. That test requires the Court to analyze (1) the centrality of the error to the case, (2) the closeness of the case and (3) the steps taken by the Court to mitigate the results of the error. Skinner v. State, 575 A.2d at 1126 (Del. Supr. 1990)

Applying the test to this case, Wilson's statement that he wore the red/white doorag as a disguise was central to the State's case because proving Wilson wore such a distinct item that was found in the defendant's car identified the defendant as one of the perpetrators and provided a direct link to the Burger King robbery. It was so important that Mr. Adkins impeaches his own State witness, Johnson, in closing argument. (A-28 Ln. 8-23) (A-29 Ln. 1-14) The case was a close one because there was no other evidence that linked the defendant to the robbery or proved his guilt

6

beyond a reasonable doubt. The trial judge limited the questioning to just Wilson's own words and barred questioning of the 2-21-02 interview but did not strike the prior testimony given by Wilson about the red/white doorag and 2-21-02 interview or give any curative instructions.

The primary purpose of discovery is to eliminate surprise. State v. Darcy, R.I. 442 A.2d 900 (1982) The defense was alibi and it was necessary for the defense to show that the codefendants weren't credible. The defense theory was the State didn't possess any evidence connecting the defendant to the crime and believed the case would be a credibility contest. The defense was surprised by Wilson's testimony that he wore the red/white doorag as a disguise because the defense assumed Wilson would testify that he wore a black ski mask after the State informed the defense that Wilson substantially corroborated Lewis' version and Det. Hudson testified he had no physical evidence against the defendant at the preliminary hearing. Mr. Brady informed the trial judge that he was unable to examine Wilson because of the lost of notes. The admission of the unexpected testimony may have diluted the effectiveness of defendant's representation, adversely affecting his federal and state constitutional rights to counsel. Delahunt v. State, 440 A.2d 133 (R.I. 1982) The right to assistance of counsel is one of the fundamental elements of the due process right to a fair trial. State v. Carvalho, 122 R.I. 461, 409 A.2d 132, 134 (1979)

Mr. Brady may have made the jury aware that a discrepency existed in the color of the disguises worn by Wilson but because he was unable to impeach Wilson cause of the nondisclosure of the notes, Wilson's testimony was rendered completely trustworthy. This isn't a case where the evidence was overwhelming. There was no testimony from Wilson's aunt, church members or any other witness placing the defendant and codefendants together on the night of 2-8-02. Both Lewis and Wilson testified that Lewis and Cubbage picked Wilson up from church and Wilson's aunt wouldn't let him leave because church wasn't

7

over. (A-30 Ln. 5-23) (A-31 Ln. 1-5) (A-32 Ln. 8-22) (A-33 Ln. 1-16) Johnson testified that Cubbage was at work until nine O'clock (A-34 Ln. 4-11) Contradicts Lewis' testimony that he was picked up by Cubbage at five or six o'clock. (A-35 Ln. 8-20) Lewis' version that he, Wilson and Cubbage was in front of Burger King when Baull came outside with the trash (A-36 Ln. 1-7) was inconsistent with Wilson's version that he and Lewis was in back of Burger King next to the drive thru when Baull came out with the trash (A-37 Ln. 17-23) (A-38 Ln. 1-17) It is impossible for both Lewis and Wilson to be in the front and back of Burger King at the exact same moment in time when Baull came out with the trash. Neither codefendant testified about the phone call the defendant made to Johnson. (A-39 Ln. 16-23) (A-40 Ln. 1-9) (A-41 Ln. 16-23) The fact that defendant possessed a key to the safe does not prove his guilt because no witnessed testified that they seen the defendant enter the restaurant (A-42 Ln. 1-9) or with any money (A-43 Ln. 5-14) plus both Johnson and Bland possessed keys to the safe (A-44 Ln. 11-14) and both came in contact with the safe after the robbery. (A-45 Ln. 18-20) (A-46 Ln. 13-23) Lewis' version that Cubbage was the only one to go inside the restaurant (A-47 Ln. 2-4) (A-48 Ln. 11-14) was contradicted by Sgt. Swain's testimony that there were three different sets of footprints found inside the restaurant. (A-49 Ln. 10-19) (A-50) It is impossible for the defendant to make his footprints plus two extra. This testimony destroys the State's theory that Cubbage went inside to retrieve the money while the codefendants waited outside guarding the complaining witnesses and a reasonable inference can be drawn that there were five people who robbed Burger King instead of three.

    The defense of alibi was plausible and had a reasonable chance of success had not the State misled the defense and provided proper discover. It is clear from the record that the defendant's right to a fair trial, his right to prepare a defense and his right to effective assistance of counsel that is

8

guaranteed by the 14th and 6th Amendment of the United States Constitution was violated cause of nondisclosure. The Delaware Courts failed to consider this claim or grant the relief requested, these post-Conviction remedies have proven to be inadequate in that Defendant has been deprived of his freedom without an opportunity to have the intrinsic fairness of the criminal process under which he is committed examined into, even though it may appear proper and regular on its face.

Based on the above argument, the Court should conclude that the Delaware Supreme Court's decision involved an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings" and resulted in a decision that was contrary to and involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254 (d)(1)(2) The petitioner is therefore entitled to relief under 28 U.S.C. § 2254.

9

## CLAIM TWO

THE DEFENDANT'S RIGHT TO CONFRONTATION THAT IS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE TRIAL JUDGE ABUSED IT'S DISCRETION AND LIMITED THE CROSS-EXAMINATION OF A CODEFENDANT

### EXHAUSTION

The claim for relief was presented to the Post-Conviction Court (within Argument Two, p. 18-24 of the Post-Conviction Memorandum) and on appeal thereof (within Argument II, p. 11-12 of Appellant's Opening Brief) Thus, Cubbage has exhausted remedies as to the claim.

### The Trial Judge limited the defense from cross-examining codefendant Wilson

The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right---to be confronted with the witness against him." U.S. Const. Amend. VI. This right extends to state prosecutions through the Due Process Clause of the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)

As a result of nondisclosure of the notes and an attempt to mitigate a discovery violation, the trial judge violated the defendant's Confrontation rights by limiting the cross-examination of a codefendant. After Wilson testified that he wore the red/white doorag, that he spoke with Det. Hudson and his attorney, William Chasanov, on his own free will, that he told the truth and admitted his involvement in the robbery (A-22 Ln. 20-23) (A-23 Ln. 1-12); defense attorney approached the bench to state that he was unable to cross-examine the witness due to the nontaking of notes (A-25 Ln. 6-17) and the trial judge then limited the cross-examination to exclude the 2-21-02 interview. (A-25 Ln. 18-23) The trial judge never considered the importance of Wilson's testimony or the unfair prejudice to the defense and failed to strike Wilson's testimony concerning the 2-21-02 interview or giving curative instructions to the

10

"The widest latitude is permitted in cross-examination of an accomplice and counsel may test his veracity or question his motives, his bias, his interests, his relation to the crime, the persons connected with it and any other matters tending to impeach his fairness or impartiality." The defense was unable to ask Wilson if he told Det. Hudson he wore the red/white doorag during the robbery at the 2-21-02 interview because a week after Wilson's interview, Det. Hudson testified that he had no physical or identification evidence against the defendant. (A-15 Ln. 12-21) If Wilson told the truth and talked about the incident, Det. Hudson would have testified to Wilson wearing the doorag when Det. Hudson testified about disguises and on cross-examination when defense counsel questioned Det. Hudson about physical and identification evidence he had against the defendant. Also the State would have disclosed it in the discovery response just as Mr. Adkins had disclosed that the main inconsistency was that he and Lewis claim the other had the gun. (A-12)

A critical factor in determining whether a defendant's right to confrontation has been violated is whether the defendant had other ways to obtain the effect that the excluded examination would have allegedly established. Brown, 110 F.3d at 607 There was no way for the defense to obtain this crucial testimony without referring to the 2-21-02 interview. In light of the unchallenged testimony, the jury could hardly believe otherwise. As sole judges of credibility, the jury was entitled to hear of favorable treatment to Wilson by the prosecution and when Wilson informed the police or prosecution that he wore the red/white doorag so that they could make an informed judgment as to the weight to place on Wilson's testimony which provided a crucial link. see Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076 13 L.Ed.2d 934 (1965

It is clear from the record that the defendant's right

12

to Confrontation guaranteed by the Sixth Amendment of the U.S. Constitution was violated by the trial judge limitation of defense counsels cross-examination. The trial judge allowed testimony of Wilson that was not subjected to adversial testing. Because the defense was unable to challange Wilson's testimony about the 2-21-02 interview, where he claims he told the truth, rendered his trial testimony completely trustworthy. The jury was allowed to consider evidence that was irrelevant and prejudicial. The Delaware Supreme Court failed to consider this claim or grant relief requested, these post-conviction remedies have proven to be inadequate in that defendant has been deprived of his freedom without an opportunity to have the intrinsic fairness of the criminal process under which he is committed examined into, even though it may appear proper and regular on its face.

Based on the above argument, the Court should conclude that the Delaware Supreme Court decision was "contrary to and involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

13