# CLAIM THREE

THE DEFENDANT'S DUE PROCESS OF LAW THAT'S GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE PROSECUTOR SUBMITTED FALSE AND PREJUDICIAL EVIDENCE TO GAIN A CONVICTION

## EXHAUSTION

The claim for relief was presented to the Post-Conviction Court (within Argument THREE and FOUR, p. 24-36 of the Post-Conviction Memorandum) and on appeal thereof (within Argument III, p. 13-15 of Appellant's Opening Brief) Thus, Cubbage has exhausted remedies as to the claim.

### Prosecutor submitted false and prejudicial evidence to gain a conviction

Principle that a State may not knowingly use false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty. Deliberate deception of a court and jurors by presentation of known false evidence is imcompatible with rudimentary demands of justice. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) Prosecutor Adkins deceived the court and jurors by submitting evidence that he knew to be false through a witness, Det. Hudson, who was not the complaining witness or a codefendant to the Burger King robbery. (A-51 Ln. 11-23) (A-52 Ln. 1-23) (A-53 Ln. 1-23) (A-54 Ln. 1-14) The evidence submitted were the same items Det. Hudson seized on 2-11-02 (A-55,56) and did a return search with Judge Hagan on 2-18-02.(A-57) Prosecutor Adkins who questioned Det. Hudson at Cubbage's preliminary hearing about disguises worn (A-19) and was also present when Det. Hudson testified that the only evidence he had against the defendant was the codefendants' statements. (A-15 Ln. 12-21) The state failed to have the complaining witness or codefendants identify the three doorags and three gloves (one pair and single) as they had previously done with the bb gun and baseball bat (A-58 Ln. 2-22) (A-59 Ln. 2-10) (A-60 Ln 17-23) or the red/white doorag. (A-20 Ln 10-22) (A-21 Ln. 1-12)

14

The doorags and gloves submitted into evidence did not tend to establish a fact in issue or corroborate other direct evidence in the case and should have been barred under Federal and Delaware Rules of Evidence 402: "Evidence which is not relevant is not admissible." Relevancy is determined by the purpose for which evidence is offered. It was never determined the State's purpose of offering the doorags and gloves but the Post-Conviction Court determined the evidence was admissible because the State identified the photographs in their discovery response. (A-61) The State could not establish a link between the items and the crime committed. The black doorag, blue doorag, light blue doorag, pair of black gloves and the single black and white Nike glove varied in appearance from the masks and gloves described by the State witnesses. Lewis testified the defendant wore a black ski mask (A-62 Ln. 1-5) and white gloves. (A-48 Ln. 15-18) Wilson doesn't recall what the defendant wore. (A-37 Ln. 9-15) Johnson testified that the third suspect wore all black like the other two suspects but he doesn't state the color of the gloves. (A-63 Ln. 3-14) Although the items were in the State's possession, Det. Hudson never showed them to Johnson. (A-64 Ln. 18-23) (A-65 Ln. 1-2) Without an evidentiary link, the evidence carries the risk that a jury may associate mere ownership of these items with the disposition to use it. "Speculation based on mere ownership of instruments adaptable for use in a crime subjects the defendant to the same risk that impermissible character or bad act evidence may pose — equating disposition with guilt." Farmer v. State, Del. Supr. 698 A.2d 946 "Evidence that is speculative carries the potential for permitting the jury to draw unwarranted inferences and admissibility is barred because speculation creates prejudice.

The State knowingly solicited false testimony from Det. Hudson that the bag of items were evidence. (A-52 Ln. 17-23) Adkins who was present during the preliminary hearing in which Det. Hudson testified that the only evidence he had was

15

the codefendants statements failed to correct this testimony. The United States Supreme Court in Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) held that the prosecutor had the duty to correct which he knew to be false. Convictions obtained through use of false evidence and testimony, known to be such by representatives of the State, is a denial of due process. The Supreme Court has held that a conviction obtained by the knowing use of false evidence or testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false evidence or testimony could have affected the judgement of the jury. Jenkins v. Artuz, 294 F.3d 284 (2d Cir 2002).

    The defense was alibi and the defense theory was the State didn't have any evidence connecting the defendant with the robbery. The testimony of police officers usually is given more credence by members of the jury. Curran v. Delaware, 154 F. Supp 27 (1957) The nature of the photograhs, doorags, gloves and Det. Hudson's testimony that the items were evidence combined with Prosecutor Adkins' closing argument that the items were related to the crime (A-28 ln. 5-7), could well have led to the defendant's conviction. This isn't a case where the evidence was overwhelming. There wasn't any testimony placing the defendant and codefendants together on the night of 2-8-02. Both codefendants testified that Cubbage and Lewis picked Wilson up from church. (A-30-33) Johnson's testimony that the defendant worked until 9:00 contradicts Lewis' testimony that the defendant picked him up at five or six. (A-34-A-35) Lewis' version that he, Wilson and Cubbage was in front of Burger King when Bawll came outside with the trash was inconsistent with Wilson's version that he and Lewis was in back of Burger King next to the drive thru when Bawll came out with the trash and he did not know where the defendant was. (A-36-38) Neither codefendant testified about the phone call the defendant made to Johnson. (A-39-41) Lewis' version that Cubbage was the only one to go inside the restaurant was contradicted by Sgt. Swain's testimony that there were three sets of foot prints found inside the restaurant. (A-

16

47-50) Had the doorags and gloves not been introduced, the jury would have had to decide the case based on the testimony from the state and defense witnesses. There exist a reasonable doubt that the jury may have returned a verdict of "not guilty" had the false and prejudicial evidence and testimony not been submitted.

It is clear from the record that the defendant's due process rights to a fair trial free from false and prejudicial evidence that's guaranteed by the Fourteenth Amendment was violated when the State submitted false evidence and testimony from the lead investigating detective. The jury was allowed to consider this evidence in determing the defendant's guilt. The Delaware Courts failed to consider this claim or grant relief requested, these post-conviction remedies have proven to be inadequate in that Defendant has been deprived of the criminal process under which he is committed examined into, even though it may appear proper and regular on its face.

Based on the above argument, the Court should conclude that the Delaware Supreme Court's decision was contrary to and involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. (see 28 U.S.C. § 2254 (d)(1)(2)) Therefore, petitioner is entitled to relief under 28 U.S.C. § 2254.

17

## CLAIM FOUR

THE DEFENDANT'S DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT OF LAW OF THE UNITED STATES CONSTITUTION WAS VIOLATED DUE TO PROSECUTOR MISCONDUCT OF IMPERMISSIBLE CROSS-EXAMINATION ON DEFENDANT'S POST-ARREST SILENCE

## EXHAUSTION

The claim for relief was presented to the Post-Conviction Court (within Argument V, p. 36-40 of the Post-Conviction Memorandum) and on appeal thereof (within Argument IV, p. 16-19 of Appellant's Opening Brief) Thus, Cubbage has exhausted remedies as to the claim.

### Prosecutor's impermissible Cross-examination

In United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133 45 L.Ed.2d 99 (1975), The Supreme Court in the exercise of its supervisory power over federal courts, reasoned that evidence of silence during police interrogation is so ambiguous that it lacks significant probative value and must therefore be excluded. The Delaware Supreme Court adopts the rationale of the United States Supreme Court in United States v. Hale see Bowe v. State, Del. Supr. 514 A.2d 408 (1986)

Mr. Adkins sought to impeach the defendant's exculpatory story. (A-66 Ln. 1-8) "A state prosecutor may not seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda Warnings at time of his arrest; use of a defendant's post-arrest silence in such manner violates due process". U.S.C.A Const. Amend. 5, 14; Doyle v. Ohio, 426 U.S. 610, 620, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) Over defense objection (A-66 Ln.9-18) the trial judge abused it's discretion and permitted the questioning because the defendant didn't mention the alibi

18

during police interrogation and questioning about post-arrest silence is usually the way it's handled. (A-66-Ln.19-23) (A-67 Ln.1-18) An arrestee is under no duty to speak and has been advised by government authorities that he has a right to remain silent and anything he does say can and will be used against him in court. U.S. v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) The danger is that the jury is likely to assign much more weight to the defendant's silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury is likely to draw from the fact the defendant remained silent at the time of arrest. Delaware law clearly recognizes that the State may not comment on a defendant's exercise of the right to remain silent. Bowe v. State, Del. Supr., 514 A.2d 408 (1986) The State then proceeded to question the defendant on his failure to have told Det. Hudson about his alibi at the time of custodial interrogation. (A-68 Ln.7-23) (A-69 Ln.1-18) The wording of the prosecutor's questioning "Why didn't you tell this story to anybody when you got arrested" -- made plain that the defendant actually had exercised his "miranda rights." United States v. Oliver, 278 F.3d 1038, 1039-40 (10th Cir. 2001) The State continued to highlight the defendant's silence through the redirect of Det. Hudson (A-70 Ln.21-23) (A-71 Ln.1-6) and in his closing argument. (A-72 Ln.3-9)

  In denying the defendant's claim on appeal from post-conviction relief, the Supreme Court cited Capano v. State, Del. Supr. 781 A.2d 556, 648 (Del. 2001) The Capano case is unlike that of the defendant's. The Supreme Court was clear in its decision that Capano's silence wasn't used to impeach an exculpatory story. The State used Capano's silence to impeach him on a discreet issue that Capano himself had raised in order to convince the jury of the veracity of his letters to MacIngtre and what they (Capano and MacIngtre) could tell the jury about his conduct in January and

19

February 1998. This testimony raised a subsidiary issue relative to the alleged accident that occured on Thursday, June 27, 1996. The letters, as Capano testified to, related to his "State of mind". The State was entitled to raise inference that the "State of mind" he claimed to have, a protective one toward MacIntyre wasn't credible.

In the present case, the prejudice caused was the prosecutor was able to continually imply through cross-examination, redirect of Det. Hudson and closing arguments that the defendant's failure to come forward at an earlier time was evidence of his guilt. The jury was allowed to consider the defendant's silence when determining guilt even though the defendant had a constitutionally protected right to remain silent.

The state's case against the defendant wasn't overwhelming. There was no testimony from Wilson's aunt, Church members or any other witness placing the defendant and codefendants together on the night of 2-8-02. Both Lewis and Wilson testified that Lewis and Cubbage picked Wilson up from Church and Wilson's aunt wouldn't let him leave because Church wasn't over. (A-30 Ln. 5-23) (A-31 Ln. 1-5) (A-32 Ln. 8-22) (A-33 Ln. 1-16) Johnson testified that Cubbage was at work until nine o'clock (A-34 Ln. 4-11) (A-39 Ln. 6-19) Contradicts Lewis' testimony that he was picked up by Cubbage at five or six o'clock. (A-35 Ln. 8-20) Lewis' version that he, Wilson and Cubbage was in front of Burger King when Baull came outside with the trash (A-36 Ln. 1-7) was inconsistent with Wilson's version that he and Lewis was in back of Burger King next to the drive thru when Baull came out with the trash and he didn't know where Cubbage was. (A-37 Ln. 17-23) (A-38 Ln. 1-17) It is impossible for both Lewis and Wilson to be in the front and back of Burger King at the exact same moment in time when Baull came out with the trash. Neither codefendant testified about the phone call the defendant made to Johnson. (A-39 Ln. 16-23) (A-40 Ln. 1-9) The fact that defendant possessed a key to the safe does not prove his guilt because no witness

20

testified that they seen the defendant enter the restaurant (A-42 Ln. 1-9) or with any money (A-43 Ln. 5-14) plus both Johnson and Bland possessed keys to the safe (A-44 Ln. 11-14) and both came in contact with the safe after the robbery. (A-45 Ln. 18-20) (A-46 Ln. 13-23) Lewis' version that Cubbage was the only one to go inside the restaurant (A-47 Ln. 2-4) (A-48 Ln. 11-14) was contradicted by Sgt. Swain's testimony that there were three different sets of footprints found inside the restaurant. (A-49 Ln. 10-19) (A-50) It is impossible for the defendant to make his footprints plus two extra. This testimony destroys the State's theory that Cubbage went inside to retrieve the money while the codefendants waited outside guarding the complaining witnesses and a reasonable inference can be drawn that there were five people who robbed Burger King instead of three.

It is clear from the record that the defendant's due process rights were violated when the State impeached his alibi defense through cross-examination on his post arrest silence and the jury was allowed to consider that silence as evidence of the defendant's guilt. The Supreme Court failed to consider this claim or grant relief requested, these post-conviction remedies have proven to be inadequate in that Defendant has been deprived of his freedom without an opportunity to have the intrinsic fairness of the criminal process under which he is committed examined into, even though it may appear proper and regular on its face.

Based on the above argument, the Court should conclude that the Delaware Supreme Court's decision was contrary to and involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. (See 28 U.S.C. § 2254 (d)(1)(2) The petitioner is therefore entitled to relief under 28 U.S.C. § 2254.

21

## CLAIM FIVE

THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION DUE TO COUNSEL'S FAILURE TO INVESTIGATE AND PREPARE FOR TRIAL.

### EXHAUSTION

The claim for relief was presented to the Post-Conviction Court (within Argument SIX, p. 41-48 of the Post-Conviction Memorandum) and on appeal thereof (within Argument V, p. 20-22 of Appellant's Opening Brief) Thus, Cubbage has exhausted remedies as to the claim.

### Fail to prepare

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)

The defendant argues that his trial counsel, Mr. Brady, should have investigated the State's case against his client by filing a motion for discovery under Superior Court Criminal Rule 16. The defendant mailed a letter (A-9) and two motions (A-10-11) to Mr. Brady asking him to obtain Wilson's statements and Mr. Brady neglected to do so. At trial, Prosecutor Adkins stated out of abundance of caution he disclosed discovery because he had heard nothing from the two attorneys. (A-27 Ln. 12-21) By stating he was acting out of an abundance of caution, the State admits serious doubt about its compliance with it's discovery obligations. State v. Coelho, 454 A.2d 241 (R.I. 1982) Counsel has a duty to make a reasonable

22

investigation or to make a reasonable decision that makes particular investigation unnecessary. Sullivan v. Fairman, 819 F.2d 1382, 1391 (7th Cir. 1987) Mr. Brady neither investigated, nor made a reasonable decision not to investigate the State's case through discovery. Such a complete lack of pretrial preparation puts at risk both the defendant's right to an "ample opportunity to meet the case of the prosecution." Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 54 (1986) At the time Mr. Brady neglected to request discovery, Wilson's statements, he could not know what the State's case would be or the testimony Wilson would give. Counsel's failure to file for discovery could not be strategic because during a side bar conference, Mr. Brady stated that he could not examine the witness because of the lost of notes. (A-25 Ln. 13-17) No conceivable sound strategy to proceed unprepared. Mr. Brady's failure to seek discovery and his willingness to accept the State's version of facts, calls into question the adequacy of his representation. United States v. Matos, 905 F.2d 30 (1990) Defense counsel's failure to file for discovery prevented the defendant from preparing the best available defense, making an informed decision as to a plea agreement and caused the defendant to be surprised at trial. Had Brady filed discovery and been supplied with Wilson's statement, Mr. Brady could have advised the defendant of the consequences of going to trial and advised him to take the plea the State had offered (A-73) or negotiated a different plea bargin. If the defendant had elected to go to trial, the defense would have been prepared for Wilson's trial testimony that he wore the red/white doorag instead of assuming he would testify that he wore the black ski mask. The Supreme Court held that total failure on the part of defense counsel to conduct any pretrial discovery amounted to ineffective assistance of counsel. United States v. Gray, 878 F.2d 702

Counsel's complete abdication of the duty to investigate recognized in Strickland caused his performance to fall below the minimum standard of reasonable proffessional representation.

Mr. Brady failed to investigate by failing to familiarize himself with the defendant's case by reviewing the preliminary hearing transcripts (A-74) and the State's first discovery response to the defense (A-2). The pretrial period constitutes a "critical period" in the prosecution for which a defendant is entitled to effective counsel because it emcompasses counsel's constitutionally imposed duty to investigate the case. The Third has elaborated upon this requirement, declaring that it's the duty of every lawyer to conduct a prompt investigation of the circumstances relevant to the guilt of their client. United States v. Baynes, 687 F.2d 659, 668 (3d Cir. 1982). If Mr. Brady would have investigated by reviewing the preliminary hearing transcript, he would have learned that Det. Hudson testified about the color of the disguises worn by the suspects as told to him by the codefendant's (A-19(a) Ln.17-23) (A-19(b) Ln.1-2) and the only evidence Det. Hudson had against Cubbage was the codefendants' statements (A-15 Ln.12-21). Mr. Brady would have also learned that Det. Hudson had interviewed Wilson a week prior to his preliminary hearing testimony. (A-14 Ln.4-10) If Mr. Brady would have reviewed the first discovery response (A-2), he would have learned that he did not possess the 2-10-02 interview tapes of Lewis, Wilson and Cubbage. He would have learned that the 2-21-02 interview between Wilson and Det. Hudson or the statements from that interview wasn't mentioned, disclosed or transcribed. Mr. Brady would also have been aware that Det. Hudson seized nine items from the defendant's car (A-55-56) and did a return search with the Honorable Judge Hagan on 2-18-02 (A-57), a week before Cubbage's preliminary hearing.

Before trial, because Mr. Brady failed to seek discovery and familiarize himself with the defendant's case, he was unaware of Lewis' version and could not have known how Wilson had

24

doorag the defendant sought to have returned after Det. Hudson testified he had no physical evidence against Cubbage. An attorney must conduct pretrial investigation of both law and facts governing their case, for without such knowledge it becomes impossible for them to function effectively as an advocate. United States v. Gray, 878 F.2d 711 Although Mr. Brady signed a sworn affadavit that he questioned Det. Hudson about the lost of his notes and Mr. Chasanov confirmed Wilson's statements, he failed to take any notes from the interview. (A-26) (A-25 Ln. 6-17) He failed to request the substance of Wilson's interview with Det. Hudson, Kornegay v. State, Del. Supr. 596 A.2d 481 (1991); or the testimony Wilson was expected to give at trial, State v. Concannon, 457 A.2d 1350 (R.I. 1983); or any investigator's field notes or relevant police reports that was in the State's possession. Reynolds v. State, Del. Supr. 606 A.2d 743 (1992) Mr. Brady failed to motion the court to be allowed to interview Wilson or have Mr. Adkins disclose Wilson's P.S.I. report that relates to the robbery. U.S. v. Devoe, 839 F.2d 1330 (1988) Mr. Brady's performance fell below the professional norm for competent attorneys.

    The second prong of Strickland v. Washington test for deprivation of Sixth Amendment right to Counsel's errors were so serious as to deprive defendant of fair trial, does not merely question whether results was fundamentally unfair or unreliable. The State was allowed to surprise the defendant when the prosecution failed to disclose Wilson's statement until the second day of trial and the defense learned of its substance the same time as the jury. The State's case and theory was that Lewis, Wilson and Cubbage robbed the Burger King restaurant. Lewis and Wilson stood guard of Johnson and Baull, who were placed in the dumpster, while Cubbage went inside to retrieve the money.

26

The defense was alibi. The defense theory was the State had no evidence against the defendant and the two codefendant's robbed Burger King with three other people. In support of this defense, trial counsel had to establish that the codefendants weren't credible. This theory was plausible and had a reasonable chance of success because there was no testimony from Wilson's aunt, Church members or friends placing the defendant and codefendants together on the night of 2-8-02. Both Lewis and Wilson testified that Lewis and Cubbage picked Wilson up from church and Wilson's aunt wouldn't let him leave because Church wasn't over. (A-30 Ln. 5-23) (A-31 Ln. 1-5) (A-32 Ln. 8-22) (A-33 Ln. 1-16) Johnson testified that Cubbage was at work until nine o'clock (A-34 Ln 4-11) (A-39 Ln. 6-19) contradicts Lewis' version that he was picked up by Cubbage at five or six o'clock. (A-35 Ln. 8-20) Lewis' version that he, Wilson and Cubbage was in front of Burger King when Baull came outside with the trash (A-36 Ln. 1-7) was inconsistent with Wilson's version that he and Lewis was in back of Burger King next to the drive thru when Baull came out with the trash and he didn't know where Cubbage was. (A-37 Ln 17-23 (A-38 Ln. 1-17) It is impossible for both Lewis and Wilson to be in the front and back of Burger King at the exact same moment in time when Baull came out with the trash. Neither codefendant testified about the phone call the defendant made to Johnson. (A-39 Ln. 16-23) (A-40 Ln. 1-9) The fact that the defendant possessed a key to the safe does not prove his guilt because no witness testified that they seen the defendant enter the restaurant (A-42 Ln. 1-9) or with any money (A-43 Ln. 5-14) Plus both Johnson and Bland possessed keys to the safe (A-44 Ln. 11-14) and both came in contact with the safe after the robbery. (A-45 Ln. 18-20) (A-46 Ln. 13-23) Although there are other doorags and gloves introduced into evidence by the prosecutor, no state witness testify that the items were used or worn

27