during the robbery. Lewis' version that Cubbage was the only one to go inside the restaurant (A-47 Ln. 2-4) (A-48 Ln. 11-14) was contradicted by Sgt. Swain's testimony that there were three different sets of footprints found inside the restaurant. (A-49 Ln. 10-19) (A-50) It is impossible for the defendant to make his footprints plus two extra. This testimony destroys the State's theory that Cubbage went inside to retrieve the money while the codefendants waited outside guarding Johnson and Bovll and a reasonable inference can be drawn that there were five people who robbed Burger King instead of three.

It is clear from the record that Wilson's testimony concerning the red/white doorag was the dominant factor in the defendant's conviction. Proving Cubbage possessed a distinct item that was used during the robbery identified him as one of the perpetraters and linked Cubbage to the robbery. The red/white doorag was so important to the State's case, Mr. Adkins impeaches his own witness, Johnson, during closing argument that Johnson was traumatized and could not have known what Wilson worn but Wilson who was there knew what he worn. (A-28 Ln. 18-23) (A-29 Ln. 1-14) Absent the testimony about the doorag, there isn't any other evidence linking the defendant to the robbery and the case becomes a credibility contest, forcing the jury to decide the case based on the testimony of the State and defense witnesses.

Mr. Brady may have made the jury aware that Wilson's testimony that he wore the red/white doorag as a disguise was inconsistent with other testimony concerning disguises (A-75 Ln. 15-23) (A-76 Ln. 1-23) (A-77 Ln. 1-23) (A-78 Ln. 1-23) (A-79 Ln. 1-6), his failure to introduce into evidence Det. Hudson's preliminary hearing testimony that he had no physical evidence against Cubbage depicted Wilson's testimony that he wore the red/doorag completely trustworthy. Had Wilson been impeached with Det. Hudson's preliminary hearing testimony, the jury would have had to evaluate his credibility and may not have believed his testimony. If the jury

28

had been aware that the same red/white doorag Wilson Claim to have worn during the robbery was the same doorag Det. Hudson had in his possession when he did a return search with Honorable Judge Hagan (A-57), when he interviewed Wilson (A-14 Ln.4-10) and when he testified that he had no physical evidence against Cubbage (A-15 Ln. 12-21) plus Sgt. Swain's testimony that three footprints were found inside the restaurant (A-49 Ln. 10-19), there is a reasonable probability that the defense theory would have been successful. In credibility Contest, testimony of neutral, disinterested witness is exceedingly important. Harris v. Reed, 894 F.2d 871, 878 (7th Cir. 1990)

Mr. Brady Completely abandoned his duties to prepare for trial. Had he investigated, he would have learned of his Client's Concerns with surprise at trial. (A-8) Mr. Brady inadequate trial preparation renders it highly implausible that he developed his theory that Wilson was lying about wearing the red/white doorag prior to trial. The Supreme Court failed to Consider this Claim or grant relief requested. These post-Conviction remedies have proven to be inadequate in that Defendant has been deprived of his freedom without an opportunity to have the intrinsic fairness of the criminal process under which he is committed examined into, even though it may appear proper and regular on its face.

Based on the above argument, the Court should conclude that the Delaware Supreme Court's decision was "Contrary to and involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. (See 28 U.S.C. §2254 (d)(1)(2)) The petitioner is therefore entitled to relief under 28 U.S.C. §2254

29

## CLAIM SIX

THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION DUE TO COUNSEL'S FAILURE TO OBTAIN CRIMINAL RECORD OF A CODEFENDANT.

## EXHAUSTION

The Claim for relief was presented to the Post-Conviction Court (within Argument Seven, p. 48-51 of the Post-Conviction Memorandum) and on appeal thereof (within Argument VI, p. 23-24 of Appellant's Opening Brief) Thus, Cubbage has exhausted remedies as to the Claim.

## Fail to obtain criminal record

The defendant argues that Mr. Brady failed to obtain the criminal record of codefendant Wilson due to Mr. Brady's failure to prepare for trial by filing a motion for discovery. The Supreme Court held that total failure on the part of defense counsel to conduct pretrial discovery amounted to ineffective assistance counsel. Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574 91 L.Ed.2d 305 54  Mr. Adkins stated that Wilson's criminal record should have been disclosed in the first discovery response (A-12(b)) and Mr. Brady failed to investigate the files that was turned over to him by Mr. Barnett or compel the State to disclose the criminal record. Because Mr. Brady failed to obtain Wilson's criminal record, he was unable to know that Wilson had a conviction for shoplifting. "As shoplifting is a crime involving dishonesty, admission of the conviction for impeachment purposes is mandatory". Webb v. State, Del. Supr., 663 A.2d 452 (1995) Wilson testified at trial that the reason he lied to Det. Hudson during their first interview was because he never been in trouble like this before. (A-22 Ln. 3-17) Although it's the duty of the state to correct testimony that they know to be false. Napue v.

Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) Mr. Brady was unable to impeach his testimony with his shoplifting conviction, denying the defendant the opportunity to confront an adverse witness. If Mr. Brady had possessed Wilson's criminal conviction, he could have brung out facts underlying the adjudication as long as he did not elicit the adjudication itself. United States v. Conniff, 521 F.2d 565 Mr. Brady would have been allowed to establish that Wilson had been adjudicated as a delinquent, that the crime involved dishonesty and that he had to report to classes once a month. United States v. Jones, 557 F.2d 1237 Mr. Brady was so unaware of Wilson's shoplifting conviction and criminal report, in his affadavit replying to the allegation of his ineffectiveness, he believes the conviction the defendant is referring to is the conviction Wilson was serving a sentence (A-26 (b)) Failure to conduct any pretrial investigation generally constitutes clear instance of ineffectiveness. United States v. Gray, 878 F.2d 702 Mr. Brady breached his duty to investigate by failing to obtain evidence that was favorable to his client and he was not acting as counsel guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)

Second prong of Strickland v. Washington test for deprivation of Sixth Amendment right to counsel, requiring defendant to show that counsel's errors were so serious as to deprive defendant of a fair trial, does not merely question whether outcome would have been different, but also looks at whether results was fundamentally unfair or unreliable. In a case of a key state witness, impeachment with a prior conviction will affect

the outcome, whether it goes to general credibility or reliability. In this case, the accuracy and truthfulness of Wilson's testimony were key elements in the State's case against the defendant. The jury was faced with two versions of facts: Wilson's account (he wore the red/white doorag and Cubbage was involved) and defendant's account (he wasn't involved and there's no evidence linking him to the crime) The defense was alibi and it was necessary for the defense to prove that Wilson wasn't credible. It was unfair to the defense for Wilson, who pled delinquent to shoplifting, to create an erroneous impression that he was crime free by implying to the jury he had never been in trouble with the law before. Mr. Brady's failure to impeach Wilson with his prior shoplifting delinquency, made his testimony completely trustworthy. The jury could have believed that the only trouble Wilson may have gotten into was at home or school and thus added more weight to his credibility. As sole judges of credibility, the jury was entitled to hear evidence of prior convictions that affects the credibility of a key witness so they could make a fair determination as to the assessment of guilt or innocence. If Mr. Brady had obtain Wilson's criminal report and placed his shoplifting conviction before the jury, the state may not have attacked the defendant's credibility and prior conviction in closing arguments (A-80 Ln. 17-23) (A-81 Ln. 5-13) or decieve the trial judge by saying the codefendants didn't have any record. (A-82. Ln. 15-21) because Wilson's credibility and prior conviction would also have been before the jury.

This was not a case where the evidence was overwhelming. There was no testimony from Wilson's aunt, church members or any other witness that placed the defendant and codefendants

together the night of 2-8-02. It is impossible for both Lewis and Wilson to be in the front and back of Burger King at the same exact moment in time when Baull came out with the trash. Neither codefendant mentioned the phone call that the defendant made to Johnson. No state witness identified the dorags or gloves the State introduced into evidence as items that were used or worn during the robbery. The fact that three footprints were found inside the restaurant destroys the State's theory that Cubbage was the only one to go inside to retrieve the money while the codefendants stood guard of complaining witnesses Johnson and Baull, who were inside the dumpster. Mr. Brady's failure to obtain Wilson's criminal record and place his shoplifting conviction before the jury, caused the defendant to be denied a fair trial.

The Supreme Court failed to consider this claim or grant relief requested, these post-conviction remedies have proven to be inadequate in that Defendant has been deprived of his freedom without an opportunity to have the intrinsic fairness of the criminal process under which he is committed examined into, even though it may appear proper and regular on its face.

Based on the above argument, the Court should conclude that the Delaware Supreme Court's decision was contrary to and involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. (See 28 U.S.C. § 2254 (d)(1)(2)) The petitioner is therefore entitled to relief under 28 U.S.C. 2254.

## CLAIM SEVEN

THE DEFENDANT WAS DENIED EFFECTIVE
ASSISTANCE OF COUNSEL GUARANTEED BY
THE SIXTH AMENDMENT OF THE UNITED
STATES CONSTITUTION DUE TO DEFENSE
COUNSEL'S FAILURE TO IMPEACH
DETECTIVE HUDSON'S TRIAL TESTIMONY

## EXHAUSTION

The Claim for relief was presented to the
Post-Conviction Court (within Argument Eight, p. 51-
54 of the Post-Conviction Memorandum) and on
appeal thereof (within Argument VII, p. 25-26
of Appellant's Opening Brief) Thus, Cubbage has
exhausted remedies as to the claim.

## Fail to impeach

Mr. Brady rendered ineffective assistance of counsel
when he failed to impeach Det. Hudson's trial testimony with
his inconsistent preliminary hearing testimony. Hadley v.
Groose, 97 F.3d 1131 and Moffett v. Kolb, 930 F.3d 1161
During trial, Det. Hudson testified that the bag of items
that were seized from the defendant's car was evidence
from the Burger King robbery. (A-52 Ln. 17-23) (A-53 Ln. 1-
23) (A-54 Ln. 1-14) and because Mr. Brady had not familiarized
himself with the defendant's case, he was unaware and
unable to impeach Det. Hudson with his prior inconsistent
preliminary hearing testimony that the only evidence he had
against the defendant, as far as physical or identification,
was the codefendant's statements. (A-15 Ln. 12-21) "An attorney
must conduct pre-trial investigation of both law and facts
governing their case, for without such knowledge it becomes
impossible for them to function effectively as an advocate."
United States v. Gray, 878 F.2d 711 Mr. Brady possessed the

34

tools to impeach Det. Hudson and there was no strategic reason not to do so. The Supreme Court in <u>Coleman v. Alabama</u>, 399 U.S. 1, 26 L.Ed. 2d 387, 90 S.Ct. 1999 (1970) held that a preliminary hearing is a "Critical Stage" of a criminal proceeding because the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witness at trial or preserve testimony favorable to the accused of a witness. Mr. Brady may have made the jury aware that there was an discrepency as to the color of the disguises the suspects wore (A-75 Ln. 15-23) (A-76 Ln. 1-23) (A-77 Ln. 1-23) (A-78 Ln. 1-23) (A-79 Ln. 1-6) but his failure to impeach Det. Hudson's trial testimony with his preliminary hearing testimony portrayed his statements that the seized items were evidence of the Burger King robbery completely trustworthy. Had Mr. Brady impeached Det. Hudson's trial testimony with his earlier preliminary hearing testimony, the jury would have been forced to evaluate his credibility and may not have believed his testimony. The jury would also had to assess the credibility of Wilson because the same red/white doorag he claims to have worn during the robbery is the same doorag Det. Hudson seized with the other items, had in his possession when he did a return search with the Honorable Judge Hagan (A-57), and still testified at the preliminary hearing that he had no physical evidence against the defendant. A lawyer who fails adequately to investigate and to introduce into evidence, records that demonstrate his client's factual innocence or that raise sufficient doubt as to that question to undermine confidence in the verdict renders deficient performance. <u>Hart v. Gomez</u>, 174 F.3d 1067

Second prong of Strickland v. Washington test for deprivation of Sixth Amendment right to Counsel, requiring defendant to show that Counsel's errors were so serious as to deprive defendant of a fair trial, does not merely question whether outcome would have been different, but also looks at whether results was fundamentally unfair or unreliable. The defense was alibi and it was necessary to show that the witnesses weren't credible. The theory of the defense was the state possessed no evidence Connecting the defendant with the Burger King robbery. This defense was plausible and had a reasonable chance of success because no witness identified any of the items (doorag and gloves) as being used or worn during the robbery and Det. Hudson testified during the defendant's preliminary that he had no physical evidence against the defendant, just the Codefendant's statements. His preliminary hearing testimony was important for the defense and Brady's failure to introduce them at trial Caused his performance to fall below an objective standard of reasonableness. It would have been effective for Mr. Brady to impeach Det. Hudson at trial with his preliminary hearing testimony that he had no physical evidence against the defendant and offer evidence favorable to the defendant. If the jury had been aware that the items (doorags and gloves) Were in Det. Hudson's possession when he did a return search with the Honorable Judge Hagan (A-57), interview Wilson at his preliminary hearing (A-14 Ln. 4-10), testified about the Color of disguises worn by the suspects as told to him by the Codefendants (A-19(a) Ln. 17-23) (A-19(b) Ln. 1-2) and he still testified that he had no physical evidence against the defendant, just the Codefendants' statements. (A-15 Ln. 12-21), there is a

36

reasonable probability that Cubbage defense theory of alibi would have been successful.

This wasn't a case where the evidence was overwhelming. There was no testimony from Wilson's aunt, church members or friends placing the defendant and codefendants together on the night of 2-8-02. Both Lewis and Wilson testified that Lewis and Cubbage picked Wilson up from church and Wilson's aunt wouldn't let him leave because church wasn't over. (A-30 Ln. 5-23) (A-31 Ln. 1-5) (A-32 Ln. 8-22) (A-33 Ln. 1-16) Johnson testified that Cubbage was at work until nine o'clock (A-34 Ln 4-11) (A-39 Ln. 6-19) Contradicts Lewis' testimony that he was picked up by Cubbage at five or six o'clock. (A-35 Ln. 8-20) Lewis' version that he, Wilson and Cubbage was in front of Burger King when Baull came outside with the trash (A-36 Ln. 1-7) was inconsistent with Wilson's version that he and Lewis was in back of Burger King next to the drive thru when Baull came out with the trash and he didn't know where Cubbage was. (A-37 Ln. 17-23) (A-38 Ln. 1-17) It is impossible for both Lewis and Wilson to be in the front and back of Burger King at the exact same moment in time when Baull came out with the trash. Neither codefendant testified about the phone call the defendant made to Johnson. (A-39 Ln. 16-23) (A-40 Ln. 1-9) The fact that defendant possessed a key to the safe does not prove his guilt because no witness testified that they seen the defendant enter the restaurant (A-42 Ln. 1-9) or with any money (A-43 Ln. 5-14) plus both Johnson and bland possessed keys to the safe (A-44 Ln. 11-14) and both came in contact with the safe after the robbery. (A-45 Ln. 18-20) (A-46 Ln. 13-23) Lewis' version that Cubbage was the only one to go inside the restaurant (A-47 Ln. 2-4) (A-48 Ln. 11-14) was

Contradicted by Sgt. Swain's testimony that there were three different sets of footprints found inside the restaurant. (A-49 Ln. 10-19) (A-50) It is impossible for the defendant to make his footprints plus two extra. This testimony destroys the State's theory that Cubbage went inside to retrieve the money while the codefendant's waited outside guarding Johnson and Baull and a reasonable inference can be drawn that there were five people who robbed Burger King instead of three.

In light of the unchallenged evidence testimony plus closing arguments about the codefendant knowing what he wore that night and that items were found in the trunk of the defendant's car that was related to the crime, the jury could hardly believed otherwise. If Mr. Brady had impeached Det. Hudson's trial testimony with his preliminary hearing testimony, the jury would have found it highly unlikely that Wilson wore the red/white doorag and that the items were evidence because Det. Hudson, an 18 year veteran who the jury would find presumptively reliable, would have testified about it during his direct testimony when Mr. Adkins questioned him about the disguises and on cross-examination when defense counsel questioned him about any physical evidence he had against the defendant at the preliminary hearing. There exist a reasonable probability that the verdict would have been different and the jury would have believed the defendant and his mistress.

The Supreme Court failed to consider this claim or grant relief requested, these post-conviction remedies have proven to be inadequate in that defendant has been deprived of his freedom without an opportunity to have the intrinsic fairness of the criminal process under which he is committed examined into, even though it may appear proper and regular on its face.

38

Based on the above argument, the Court should Conclude that the Delaware Supreme Court decision was Contrary to and involved an unreasonable application of Clearly established Federal law as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the Evidence presented in the State Court proceeding. (See 28 U.S.C. § 2254 (d)(1)(2) The petitioner is therefore entitled to relief under 28 U.S.C. § 2254

39