## CLAIM EIGHT

THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION DUE TO COUNSEL'S FAILURE TO RAISE ISSUE ON DIRECT APPEAL OF PROSECUTOR FAILURE TO DISCLOSE EVIDENCE UNDER ITS RULE 16 OBLIGATIONS

### EXHAUSTION

The claim for relief was presented to the Post-Conviction Court (within Argument NINE, pg. 54-58 of the Post-Conviction Memorandum) and on appeal thereof (within Argument VIII, p. 27-30 of Appellant's Opening Brief) Thus, Cubbage has exhausted remedies as to the claim.

### Fail to raise issue

Mr. Brady rendered ineffective assistance of counsel when he failed to raise the issue of the prosecutor failure to disclose evidence under Rule 16. The defendant, through a letter with cited case law, asked Mr. Brady to raise the issue that Mr. Adkins failed to disclose Wilson's statements under Rule 16 (A-83) and he neglected to do so after assuring the defendant he would. "Where a defendant on appeal urges his counsel to make a nonfrivolous argument, appointed counsel has a duty not only to raise such a nonfrivolous argument but to advocate it conscientiously on appeal." Barnes v. Jones, 665 F.2d 427  On direct appeal, Mr. Brady only mentions in a one line sentence that Det. Hudson didn't disclose his notes. (A-84) "Appointed appellate counsel's unwillingness to present particular arguments at defendant's request not only abridges defendant's right to counsel on appeal, but also limits defendant's Constitutional right of equal access to the appellate process.

40

Mr. Brady was misled into proceeding to trial unprepared. Under Superior Court Criminal Rule 16, the defendant is entitled to notes of oral statements made by a codefendant. Skinner v. State, 575 A.2d 1103 (1990) Mr. Brady interviewed Det. Hudson about his lost of the notes from the interview between Det. Hudson and Wilson. (A-26) Mr. Adkins knew that Wilson implicated Cubbage during the 2-21-02 interview (A-13 Ln. 7-17) and was bound by Rule 16 to disclose them. The Supreme Court held " a state's obligation to produce a statement arises only when the prosecutor becomes aware of its existence." Gardner v. State, Del. Supr. 567 A.2d 404 (1989) The State violated it's discovery obligations when Mr. Adkins failed to disclose the notes from the interview in the first discovery response (A-2) and to follow the procedure mandated by Rule 16(d). Johnson v. State, 550 A.2d 903 The defense was misled into proceeding to trial unprepared by the second discovery filed by Mr. Adkins. This discovery stated that Wilson substantially corroborated Lewis' version and the main inconsistency was that they each claim the other had the gun. (A-12) Lewis' version was that each suspect wore black ski masks. (See Lewis' interview tape: 2-10-02) (A-19(a) Ln 17-23) (A-19(b) Ln 1-2) (A-18) The defense assumed Wilson would testify that he wore a black ski mask as a disguise, however, Wilson testified that he wore a red/white doorag. (A-20 Ln. 13-19) (A-21 Ln. 2-12) Mr. Brady stated that he was unable to examine Wilson (A-25 Ln. 6-17) When the defense is misled into proceeding to trial unprepared, due process is violated. State v. Concannon, 457 A.2d 1350 (R.I. 1983) Mr. Adkin's justification for not disclosing the notes was Det. Hudson wasn't sure there ever were any notes, he certainly can't find any. (A-24 Ln. 14-16) The State has a duty to find out about evidence in it's control. The State had the duty to find out about the notes before it responded to the first

41

discovery response. If Mr. Adkins had conducted a proper investigation of the material in its possession in order to comply with it's discovery obligations, the State would have been able to discover Det. Hudson's notes. Johnson v. State, 550 A.2d 903 A defendant who demonstrates appointed appellant counsel failed to argue colorable claim at his request, a defendant need not also demonstrate likelihood of success on the merits of those claims to establish that he was denied effective assistance. Barnes v. Jones, 665 F.2d 427 Counsel's failure to raise issue which was obvious on the record and must have leaped out upon even a casual reading of the transcript was deficient performance. Matire v. Wainwright, 811 F.2d 1430 (11th Cir 1987)

Second prong of Strickland v. Washington test for deprivation of Sixth Amendment right to counsel, requiring defendant to show that counsel's deficient performance was prejudicial and not for counsel's unprofessional errors, the result of the proceeding would have been different. Discovery violations are reviewed by the Supreme Court and will be subject to reversal if substantial rights of the accused are prejudicially affected. Johnson v. State, Del. Supr., 550 A.2d 903 The Supreme Court adopted the test for harmless error regarding prosecutorial misconduct initially articulated in Hughes v. State, Del. Supr. 437 A.2d 559, 571 (1981) as the appropriate test for determining whether a discovery violation requires reversal of a conviction. That test requires the Supreme Court to analyze (1) the centrality of the error to the case, (2) the closeness of the case and (3) steps taken by the court to mitigate the results of the error. Skinner v. State, Del. Supr. 575 A.2d 1108 Applying the test to this case, Wilson's statement was central to the case because proving Wilson wore such a distinct item that was found

42

in the defendant's car identified the defendant as one of the perpetraters and provided a direct link to the Burger King robbery. It was so important that Mr. Adkins impeaches his own witness, Johnson, in closing arguments (A-28 Ln. 8-23) (A-29 Ln. 1-14) The case was a close one because there was no other evidence that linked the defendant to the robbery or proved his guilt beyond a reasonable doubt. The trial judge limited the questioning to just Wilson's own words and barred questioning of the 2-21-02 interview (A-25 Ln. 18-23) but did not strike the testimony given by Wilson about the red/white dooray and 2-21-02 interview or give any curative instructions. The right to assistance of counsel is one of the fundamental elements of the due process right to a fair trial. State v. Carvalho, 122 R.I. 461, 409 A.2d 132 (1979) The admission of the unexpected testimony weakened the effectiveness of the defendant's representation, adversely affecting his federal and state constitutional rights to counsel. Delahunt v. State, 440 A.2d 133 (R.I. 1982) and State v. Desroches, 110 R.I. 497, 505 293 A.2d 913 (1972)

Prosecutor's failure to comply with discovery infringes upon a defendant's due process rights to establish the best available defense. State v. Coelho, R.I. 454 A.2d 241

The Supreme Court failed to consider this claim or grant relief requested, these post-conviction remedies have proven to be inadequate in that defendant has been deprived of his freedom without an opportunity to have the intrinsic fairness of the criminal process under which he is committed examined into, even though it may appear proper and regular on its face.

Based on the above argument, the Court should

43

Conclude that the Delaware Supreme Court decision was contrary to and involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. (see 28 U.S.C. § 2254 (d)(1)(2)) The petitioner is therefore entitled to relief under 28 U.S.C. § 2254

## CONCLUSION

Wherefore, for the reasons set forth herein and in the documents incorporated by reference, Petitioner respectfully requests that the Court order an evidentiary hearing and appoint counsel for the petitioner; grant the writ of habeas corpus, reverse Petitioner's Conviction and order a new trial; and grant all other appropriate relief

Date: December 12, 2005

Respectfully Submitted,

Jarid L Cubbage
Jarid L. Cubbage
Pro-Se
271683
D.C.C.
1181 Paddock Rd
Smyrna, De. 19977

45

CERTIFICATE OF SERVICE

I, david L Cubbage, hereby certify that I have served a true and correct cop(ies) of the attached: Memorandum of Law upon the following parties/person(s):

TO: District Court
844 N. King St.
Lockbox 18
Wilmington, De. 19801

TO:

TO: Thomas Carrol and Carl Danberg
Dept. of Justice
Carvel State Building
820 North French St.
Wilmington, De. 19801

TO:

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977,

On this 12 day of 12, 2005.

_David L Cubbage_

Westlaw.

827 A.2d 30       Page 1

827 A.2d 30, 2003 WL 21488129
**(Cite as: 827 A.2d 30)**

**H**
827 A.2d 30, 2003 WL 21488129
UNPUBLISHED DISPOSITION(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Jarid CUBBAGE, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 5, 2003.**

Submitted May 20, 2003.
Decided June 25, 2003.

Defendant was convicted in the Superior Court, Sussex County, of robbery in the first degree, possession of a deadly weapon during the commission of a felony, conspiracy in the first degree, and wearing a disguise during the commission of a felony. Defendant appealed. The Supreme Court held that evidence supported convictions.

Affirmed.

West Headnotes

[1] **Robbery 342** 24.15(2)
342k24.15(2) Most Cited Cases
Evidence supported defendant's first degree robbery conviction; defendant was one of the few people who had key and knowledge of combination to safe, codefendants identified defendant as participant in robbery, clothes used in robbery were found in defendant's vehicle, and victims testified that robbers appeared to be armed with baseball bat and gun. 11 Del.C. § 832(a)(2).

[2] **Conspiracy 91** 47(11)
91k47(11) Most Cited Cases
Evidence supported defendant's conviction for conspiracy; co-conspirators testified that defendant went with them to purchase disguises and discussed plan to rob store. 11 Del. C. § 513(1).

[3] **Disorderly Conduct 129** 9
129k9 Most Cited Cases
Victim testimony that defendant wore disguise during robbery was sufficient to support defendant's conviction for wearing a disguise during the commission of a felony. 11 Del. C. § 1239(a).

[4] **Weapons 406** 17(4)
406k17(4) Most Cited Cases
Evidence supported finding that defendant had required intent to support conviction for possession of a deadly weapon during the commission of a felony, even though defendant did not himself possess the bat or gun wielded by his co-conspirators during robbery; trial testimony revealed that defendant directed co-conspirators to exchange the weapons before the robbery and told them where to discard weapons after robbery, and weapons were used as an integral part of robbery, such that defendant had vicarious accomplice liability for their use. 11 Del. C. § 306(c), 1447(a).

Court Below: Superior Court of the State of Delaware in and for Sussex County, Cr. ID. No. 0202007080.

Before VEASEY, Chief Justice, BERGER, and STEELE, Justices.

*ORDER*

*1 This 25th day of June 2003, upon consideration of the briefs of the parties, it appears to the Court as follows:

1. In October 2002, a Sussex County Superior Court jury convicted Appellant, Jarid Cubbage of Robbery in the First Degree, FN1 Possession of a Deadly Weapon During the Commission of a Felony, FN2 Conspiracy in the First Degree, FN3 and Wearing a Disguise During the Commission of a Felony. FN4 In this appeal, Cubbage argues that the trial judge erred by denying his Motion for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Attachment "A"

827 A.2d 30 Page 2
827 A.2d 30, 2003 WL 21488129
(Cite as: 827 A.2d 30)

Judgment of Acquittal because the State failed to present sufficient evidence: (1) regarding the intention to commit the offenses and (2) to support conviction on all the charges. We believe that Cubbage's arguments are without merit and therefore affirm.

>    FN1. 11 *Del. C.* § 832(a)(2).
>
>    FN2. 11 *Del. C.* § 1447(a).
>
>    FN3. 11 *Del. C.* § 513(1).
>
>    FN4. 11 *Del. C.* § 1239(a).

2. Cubbage entered a guilty plea in 1994 to a charge of Robbery in the Second Degree and was therefore a convicted felon at the time of his October 2002 Sussex County jury trial. From May 2000 to February 2002, Cubbage worked at a Burger King in Sussex County, and on February 8, 2002, Cubbage worked at a Burger King in Rehoboth Beach as an assistant manager. As one of the assistant managers, Cubbage had a key to the restaurant safe. The safe also contained a combination lock and only the owners and three store managers (Cubbage, Michael Johnson, and Pamela Sue Bland) had both the key and the combination.

3. On February 9, 2002, at approximately 1:00 a.m., assistant manager Johnson was counting the daily receipts and placing $1,407.03 in the night deposit bag. Jason Baull, an employee, assisted Johnson with the closing responsibilities. Baull's responsibilities included cleaning the restaurant and removing the trash while Johnson totaled the receipts.

4. While totaling the receipts, Johnson heard Baull calling him from outside the restaurant. Johnson laid the deposit bag on a storage room table and went outside to investigate. Johnson saw two people dressed in black and one of the individuals had his arms around Baull. The larger of the two individuals had what appeared to a be a 9 millimeter handgun pointed at Baull's head while the other individual had a baseball bat. Johnson also noticed a third person dressed in black and wearing black gloves trying to hide behind the store's utility box. All three of the individuals wore masks, and Johnson heard the individual with the bat address the gunman as "Daron." The gunman commanded Johnson not to do anything stupid or he would shoot Baull. Johnson recognized the gunman's voice to be that of Daron Lewis, a former employee at the Rehoboth Burger King from July 2001 through December 2001. Johnson also recognized the voice of the person with the bat to be William James Wilson III, another former employee from June 2000 to December 2001.

5. Lewis and Wilson took Johnson to the trash dumpster behind the restaurant and locked Johnson and Baull in the trash dumpster area. A brick wall with access through two wooden doors standing approximately 12 feet high surrounded the restaurant dumpster area. When Lewis and Wilson eventually ran away, Baull climbed over the wall and opened the doors for Johnson. Johnson then noticed that someone opened the previously locked drive-thru window and took the deposit bag. Johnson also inspected the store safe and noticed that the safe was still locked. Johnson then telephoned Pamela Sue Bland, the store manager, to notify her of the robbery. Bland went to the restaurant to meet with the State Police and then noticed that the safe was closed. The next morning, however, Bland opened the safe and discovered approximately $595.00 missing from the safe.

*2 6. On Sunday, February 10, 2002, Daron Lewis turned himself in at Delaware State Police Troop 4. Lewis told Detective Hudson that Cubbage was the third masked participant in the Burger King robbery of the previous day. Detective Hudson arrested Cubbage that same afternoon while Cubbage was working at the Burger King. The police searched Cubbage's car and found three bandanas and a pair of black gloves. Lewis later showed the Detective the location of the bat and a BB gun actually used in the robbery.

7. In May 2002, Lewis entered a guilty plea to charges of Robbery in the Second Degree and Wearing a Disguise During the Commission of a Felony in connection with his involvement in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

827 A.2d 30                                                                                                              Page 3

827 A.2d 30, 2003 WL 21488129
**(Cite as: 827 A.2d 30)**

February 9th Burger King robbery. Co-defendant William Wilson also pleaded guilty to the same charges. Both Lewis and Wilson testified at Cubbage's trial and implicated Cubbage as the third participant in the February 9th robbery. Lewis also testified that after he and Wilson placed Baull and Johnson in the dumpster area, Cubbage ran into the restaurant and stole the money. Both Lewis and Wilson testified that Cubbage drove the three of them to Salisbury, Maryland and left the deposit bag at a residence. Cubbage testified in his own defense at trial and denied any involvement in the robbery.

8. The standard of review in assessing an insufficiency of evidence claim is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt. The court does not distinguish between direct and circumstantial evidence in making this determination. FN5

> FN5. *Monroe v. State,* 652 A.2d 560, 563 (Del.2001).

9. Cubbage argues that the trial judge should have granted his Motion for Judgment of Acquittal because the evidence was insufficient to support any of the four guilty verdicts. In addition, Cubbage argues that he could not be convicted of the third count charging Possession of a Deadly Weapon During the Commission of a Felony because he never possessed either the BB gun or the bat during the robbery.

9. We conclude that the State presented sufficient evidence to support the trial judge's decision to deny Cubbage's Motion for Judgment of Acquittal. While Cubbage denied participation in the robbery, the jury, as the determiner of witness credibility, was free to reject Cubbage's assertions and accept the contrary testimony of Lewis and Wilson.

[1] 10. With respect to the count of Robbery in the First Degree, the trial testimony of the various prosecution witnesses provided sufficient evidence for a rational juror to find Cubbage guilty beyond a reasonable doubt. In order to convict Cubbage of Robbery in the First Degree, the State must prove that Cubbage committed the offense of Robbery in the Second Degree and while in the course of the commission of that crime, Cubbage or another participant in the crime displayed what appeared to be a deadly weapon. FN6 In order to prove Robbery in the Second Degree, the State must prove beyond a reasonable doubt that Cubbage, while in the course of committing theft, used or threatened the immediate use of force upon another person with the intent to prevent or overcome resistance to the taking of the property or to the retention of the property immediately after the taking. FN7 The trial judge instructed the jury on all of the statutory elements, including accomplice liability. FN8 Cubbage does not claim any error in the jury instructions.

> FN6. 11 *Del. C.* § 832(a)(2).
>
> FN7. 11 *Del. C.* § 832(a)(1).
>
> FN8. 11 *Del. C.* § 271.

\*3 11. Johnson, the assistant manager, testified that he placed $1,407.03 in the deposit bag the night of the robbery and that there was money in the store safe that evening. Johnson also testified that he saw three individuals and recognized two of the individuals (Lewis and Wilson) as former employees. Johnson also testified that the previously locked drive-thru window was open after the robbery, but the store safe was still locked. Later on Saturday morning, February 9, manager Pamela Sue Bland discovered approximately $595.00 missing from the safe. Bland also testified that only possession of a key and knowledge of the safe combination could unlock the safe. According to Bland, only the restaurant owners, Johnson, Cubbage and she possessed keys to the safe. Thus, Cubbage's ability to access the safe constituted circumstantial evidence that Cubbage stole the money from the safe. Cubbage's ability to access the safe, Lewis and Wilson's testimony implicating Cubbage as the third robber, and the bandana and gloves found in Cubbage's car provided sufficient evidence for a rational juror to conclude that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

827 A.2d 30                                                                                                                          Page 4
827 A.2d 30, 2003 WL 21488129
**(Cite as: 827 A.2d 30)**

Cubbage took part in the Burger King robbery. Several witnesses testified that the robbers used what *appeared to be* deadly weapons (a gun and a baseball bat) during the commission of the robbery. Accordingly, the trial judge properly denied Cubbage's Motion for Judgment of Acquittal with respect to the charge of Robbery in the First Degree.

[2] [3] 12. With respect to the conspiracy charge, both Lewis and Wilson testified that along with Cubbage, the three men traveled to Rehoboth Beach, purchased disguises at a dollar store, and discussed the plan to rob the Burger King. Based on this testimony, a rational juror could conclude that Cubbage conspired with Lewis and Wilson to commit the robbery. In addition, this testimony along with Johnson's testimony that the three robbers wore disguises could easily result in a rational juror concluding that Cubbage wore a disguise in the robbery.

[4] 13. While intent must be proved in order to convict on the four offenses charged, that statutory element is normally proved by circumstantial evidence. 11 *Del. C.* § 306(c) states: "A person is presumed to intend the natural and probable consequences of the person's act." A rational juror could therefore reasonably infer that Cubbage's actions in planning the Burger King robbery with Lewis and Wilson, wearing a disguise during the robbery, and entering the restaurant to steal money were all actions done with the intent to commit the robbery offense. A juror could also rationally conclude that Cubbage had the required intent for conviction of the deadly weapon offense even though he did not possess the gun or the bat because the trial testimony revealed that Cubbage directed Lewis and Wilson to exchange the weapons before the robbery and told the defendants to discard the weapons in West Rehoboth after the robbery. FN9

>   FN9. *See* Appendix to State's Answering Brief at 22, 25, 28 (trial testimony of Daron Lewis).

14. Finally, it was not necessary for Cubbage to have personal possession of either the gun or the bat for a jury to convict him of the Possession of a Deadly Weapon During the Commission of a Felony. "The defendant, by participating in the robbery, is responsible under Section 271 for the felony-weapons offense which was an integral part of the robbery." FN10 Cubbage had vicarious accomplice liability despite not personally possessing the weapons because the gun and the bat were used as an integral part of the robbery and Cubbage participated in planning and committing the robbery.

>   FN10. *Brooks v. State,* 367 A.2d 638, 639-40 (Del.1976).

*4 NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

Del.Supr.,2003.
Cubbage v. State
827 A.2d 30, 2003 WL 21488129

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                           Page 1

Not Reported in A.2d, 2005 WL 914470
**(Cite as: Not Reported in A.2d)**

**H**
Not Reported in A.2d, 2005 WL 914470
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
STATE of Delaware
v.
Jarid L. **CUBBAGE**
April 13, 2005.

Upon Defendant's Motion for Postconviction Relief Pursuant to Superior Court Criminal Rule 61.

ORDER

STOKES, J.
*1 On this 13th day of April, 2005, upon consideration of Defendant Jarid L. **Cubbage's** ("defendant") Motion for Postconviction Relief, the Commissioner's Report and Recommendations, defendant's appeal therefrom, and the record in this case, it appears that:

1) A Superior Court jury found defendant guilty, on October 8, 2002, on the charges of Robbery in the First Degree in violation of 11 *Del. C.* § 832(a)(2); Possession of a Deadly Weapon During the Commission of a Felony in violation of 11 *Del. C.* § 1447(a); Conspiracy in the Second Degree in violation of 11 *Del. C.* § 512(1); and Wearing a Disguise During the Commission of a Felony in violation of 11 *Del. C.* § 1239(a).

2) Defendant filed an appeal, and the Delaware Supreme Court affirmed his conviction and sentence. *Cubbage v. State,* 827 A.2d 30 (Del.2003). Defendant thereafter filed a motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61").

3) The matter was referred to the Court Commissioner for findings of fact and recommendation pursuant to 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62. The Commissioner has filed a Report and Recommendations recommending that the Court deny defendant's motion for postconviction relief. The Report and Recommendations are attached hereto as Exhibit A and incorporated by reference. Defendant filed an appeal therefrom, wherein he objects to all of the Commissioner's findings, conclusions, and recommendations.

NOW, THEREFORE, after careful and de novo review of the record in this action, I find and conclude as follows:

1) I incorporate by reference the Commissioner's Report and Recommendations for the purpose of setting forth the factual history, procedural history, and Rule 61 claims, and I will not repeat such herein.

2) Only defendant's ineffective assistance of counsel claims are not procedurally barred; Rule 61(i)(3) bars all other claims.

3) With regard to Claim 1, defendant objects to each of the Commissioner's findings, conclusions and recommendations. This Court will not detail each of the objections. Basically, he argues against each finding, conclusion and recommendation of the Commissioner and refines his arguments advanced in his Rule 61 motion. Defendant also argues that the prejudice prong of an ineffective assistance of counsel claim can be met if a defendant shows the results were "fundamentally unfair or unreliable." Defendant is legally incorrect. In order to establish the prejudice prong, defendant must show that but for the attorney's unprofessional errors, the outcome of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668 (1984). To the extent he argues otherwise, his arguments fail.

The Commissioner has thoroughly discussed the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Attachment "B"

Not Reported in A.2d                                                                                                                              Page 2

Not Reported in A.2d, 2005 WL 914470
**(Cite as: Not Reported in A.2d)**

facts and the law. Her findings, conclusions, and recommendations are valid and well-reasoned, while defendant's arguments are neither valid nor well-reasoned. I accept the Commissioner's findings and recommendations with regard to Claim 1.

*2 4) With regard to Claim 2, defendant continues to misunderstand the factual scenario on which he bases his arguments. Again, the limitation the Court imposed was to defendant's benefit, and defendant's argument is meritless. I accept the Commissioner's findings and recommendations with regard to Claim 2.

5) With regard to Claim 3, defendant advances the same arguments he advanced in the Rule 61 motion. I conclude his assertions and arguments are invalid, as did the Commissioner. I accept the Commissioner's findings and recommendations with regard to Claim 3.

6) With regard to Claim 4, defendant argues the Commissioner's assumption that Detective Hudson would have clarified his testimony is speculative. Defendant argues that the cross-examination would have resulted in the jury acquitting him. Defendant's speculative conclusion requires the Court to assume that the jury would have ignored the powerful tape of Daron Lewis, the testimony of Daron Lewis and Billy Wilson, and the physical evidence which clearly existed and the jury would have acquitted defendant because Detective Hudson said, in response to a vague question, he had no physical evidence, at a point in time when he actually had such evidence. The Court will not reach such an illogical conclusion.

I accept the Commissioner's findings and recommendations with regard to Claim 4.

7) With regard to Claim 5, defendant continues to argue his rights were violated when he was questioned about his alibi. Defendant continues to ignore the facts and law. He waived his right to remain silent; consequently, trial counsel had no basis for pursuing this argument on appeal.

I accept the Commissioner's findings and recommendations with regard to Claim 5.

8) With regard to Claim 6, defendant reargues the standard for the prejudice prong is the results were unfair or unreliable. This is legally incorrect. I accept the Commissioner's findings and recommendations with regard to Claim 6.

9) With regard to Claim 7, defendant argues that he was unable to confront an adverse witness. Defendant has failed to show that the Commissioner's findings and conclusions were invalid. I accept the Commissioner's findings and recommendations with regard to Claim 7.

10) With regard to Claim 8, defendant makes no valid argument. I accept the Commissioner's findings and recommendations with regard to Claim 8.

11) With regard to Claim 9, defendant argues that the State deliberately failed to disclose that Wilson had stated to the police officer that he had worn the red and white doo-rag, and the Supreme Court would have reversed on that ground. There is nothing in the record to establish any deliberate non-disclosure of any such statement. In fact, there is not even concrete evidence to establish that Wilson ever stated to the police officer that he wore the red and white doo-rag. The Court merely has been assuming that statement was made in order to consider defendant's arguments under a best case scenario. In any case, the evidence against defendant was overwhelming. The Supreme Court would not have reversed on this ground and defendant cannot show the outcome would have been something other than what it was. I accept the Commissioner's findings and recommendations with regard to Claim 9.

*3 FOR THE FOREGOING REASONS, IT IS ORDERED AS FOLLOWS:

1) The defendant's objections are rejected;

2) The thoughtful and well-reasoned Commissioner's Report and Recommendations are adopted by the Court; and

3) Defendant's motion for postconviction relief is denied for the reasons set forth in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                        Page 3

Not Reported in A.2d, 2005 WL 914470
**(Cite as: Not Reported in A.2d)**

Commissioner's Report and Recommendations, which I have adopted.

## COMMISSIONER'S REPORT AND RECOMMENDATIONS

Pending before the Court is a motion for postconviction relief which defendant Jarid L. **Cubbage** ("defendant" or "**Cubbage**") has filed pursuant to Superior Court Criminal Rule 61 (" Rule 61"). **Cubbage** also requests the Court appoint counsel in connection with the presentation of this motion. Because the motion may be decided on the record, defendant has thoroughly advanced his arguments, and the issues are simple, no need exists to appoint counsel to represent defendant, and accordingly, I recommend no counsel be appointed for this postconviction proceeding.

This constitutes my report and recommendations on the pending postconviction relief motion this 15th day of March, 2005.

On October 8, 2002, a Superior Court jury convicted defendant of the charges of Robbery in the First Degree in violation of 11 *Del. C.* § 832(a)(2) ; Possession of a Deadly Weapon During the Commission of a Felony in violation of 11 *Del. C.* § 1447(a) ; Conspiracy in the Second Degree in violation of 11 *Del. C.* § 512(1) ; and Wearing a Disguise During the Commission of a Felony in violation of 11 *Del. C.* § 1239(a). Defendant appealed to the Supreme Court; that court denied the appeal. *Cubbage v. State,* 827 A.2d 30 (Del.2003).

In its decision, the Supreme Court succinctly described the commission of the crime, and I quote therefrom.
2. * * * From May 2000 to February 2002, **Cubbage** worked at a Burger King in Sussex County, and on February 8, 2002, **Cubbage** worked at a Burger King in Rehoboth Beach as an assistant manager. As one of the assistant managers, **Cubbage** had a key to the restaurant safe. The safe also contained a combination lock and only the owners and three store managers ( **Cubbage**, Michael Johnson, and Pamela Sue Bland) had both the key and the combination.
3. On February 9, 2002, at approximately 1:00 a. m., assistant manager Johnson was counting the daily receipts and placing $ 1,407.03 in the night deposit bag. Jason Baull, an employee, assisted Johnson with the closing responsibilities. Baull's responsibilities included cleaning the restaurant and removing the trash while Johnson totaled the receipts.
4. While totaling the receipts, Johnson heard Baull calling him from outside the restaurant. Johnson laid the deposit bag on a storage room table and went outside to investigate. Johnson saw two people dressed in black and one of the individuals had his arms around Baull. The larger of the two individuals had what appeared to a be a 9 millimeter handgun pointed at Baull's head while the other individual had a baseball bat. Johnson also noticed a third person dressed in black and wearing black gloves trying to hide behind the store's utility box. All three of the individuals wore masks, and Johnson heard the individual with the bat address the gunman as " Daron." The gunman commanded Johnson not to do anything stupid or he would shoot Baull. Johnson recognized the gunman's voice to be that of Daron Lewis, a former employee at the Rehoboth Burger King from July 2001 through December 2001. Johnson also recognized the voice of the person with the bat to be William James Wilson III, another former employee from June 2000 to December 2001.
*4 5. Lewis and Wilson took Johnson to the trash dumpster behind the restaurant and locked Johnson and Baull in the trash dumpster area. A brick wall with access through two wooden doors standing approximately 12 feet high surrounded the restaurant dumpster area. When Lewis and Wilson eventually ran away, Baull climbed over the wall and opened the doors for Johnson. Johnson then noticed that someone opened the previously locked drive-thru window and took the deposit bag. Johnson also inspected the store safe and noticed that the safe was still locked. Johnson then telephoned Pamela Sue Bland, the store manager, to notify her of the robbery. Bland went to the restaurant to meet with the State Police and then noticed that the safe was closed. The next morning, however, Bland opened the safe and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Law Library

Slip Copy
Slip Copy, 2005 WL 2319114 (Del.Supr.)
**Unpublished Disposition**
(Cite as: 2005 WL 2319114 (Del.Supr.))

Page 1

**H**
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

NOTE: THIS OPINION WILL NOT BE PUBLISHED IN A PRINTED VOLUME. THE DISPOSITION WILL APPEAR IN A REPORTER TABLE.

Supreme Court of Delaware.
Jarid L. CUBBAGE, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
No. 168, 2005.

Submitted Aug. 23, 2005.
Decided Sept. 20, 2005.

Court Below--Superior Court of the State of Delaware, in and for Sussex County in IS02-02-0611, 0612 & 0613; IS02-03-0268. Def. ID No. 0202007080.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

ORDER

*1 This 20th day of September 2005, upon consideration of the appellant's opening brief, the State's motion to affirm, the appellant's response to the motion to affirm, the State's reply to the appellant's response [FN1] and the Superior Court record, it appears to the Court that:

> FN1. The Court permitted the appellant to file the response to the motion to affirm. See Supr. Ct. R. 25(a) (providing that there shall be no response to the motion to affirm unless requested by the Court).

(1) The appellant, Jarid L. Cubbage, has filed an appeal from the Superior Court's denial of his motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61"). The appellee, State of Delaware, has moved to affirm the judgment of the Superior Court on the ground that it is manifest on the face of Cubbage's opening brief that the appeal is without merit. [FN2] We agree and affirm.

> FN2. Del.Supr. Ct. R. 25(a).

(2) Following a jury trial in the Superior Court, Cubbage was convicted of Robbery in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, Conspiracy in the Second Degree and Wearing a Disguise During the Commission of a Felony. The Superior Court sentenced Cubbage to eight years at Level V followed by decreasing levels of supervision.

(3) On direct appeal, Cubbage argued that the Superior Court erred when denying his motion for judgment of acquittal. This Court concluded that Cubbage's arguments were without merit and affirmed the Superior Court's judgment. [FN3]

> FN3. *Cubbage v. State,* 2003 WL 21488129 (Del.Supr.).

(4) In April 2004, Cubbage filed a motion for postconviction relief. Cubbage alleged that (a) he was denied due process when the State failed to disclose alleged notes or a detailed summary of a co-defendant's oral statement; (b) he was denied due process when the State introduced irrelevant and prejudicial evidence; (c) his confrontation rights were violated when the Superior Court limited cross-examination of a co-defendant; and (d) the prosecutor improperly cross-examined him on his post-arrest silence. In related claims, Cubbage alleged that his defense counsel was ineffective when he failed to (a) file for discovery, (b) obtain the criminal record of a co-defendant for impeachment purposes, (c) file a motion for return of property, (d) object to inadmissible evidence, e) impeach a detective's trial testimony, and (f) raise the State's alleged discovery violation and alleged *Doyle* violation on direct appeal. [FN4]

> FN4. See *Capano v. State,* 781 A.2d 556, 648 (Del.2001) (discussing *Doyle v. Ohio,* 426 U.S. 610, 619 (1976) holding that Due Process Clause of Fourteenth Amendment prohibits impeachment on the basis of a defendant's silence following *Miranda* warnings)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Attachment "C"

Slip Copy  
Slip Copy, 2005 WL 2319114 (Del.Supr.)  
**Unpublished Disposition**  
(Cite as: 2005 WL 2319114 (Del.Supr.))

Page 2

(5) The Superior Court directed that defense counsel file an affidavit in response to Cubbage's allegations of ineffective assistance of counsel. [FN5] Cubbage then filed a reply to defense counsel's affidavit.

> FN5. See *Horne v. State,* ___ A.2d ___, 2005 WL 1949967 at *2 (Del.Supr.) (concluding that the Superior Court should obtain trial counsel's affidavit in response to a first postconviction motion that raises ineffective assistance of counsel).

(6) The Superior Court referred Cubbage's postconviction motion to a Commissioner for proposed findings of fact and recommendations. [FN6] In a thoughtful and thorough twenty-four page report dated March 15, 2005, the Commissioner addressed each of Cubbage's claims before recommending to the Superior Court that the postconviction motion should be denied. The Commissioner concluded that, as to each claim, Cubbage failed to overcome the procedural bar of Rule 61(i)(3). [FN7] Where Cubbage raised a related claim of ineffective assistance of counsel, the Commissioner concluded that Cubbage failed to establish that he was prejudiced as a result of his counsel's alleged ineffectiveness. [FN8]

> FN6. Del.Code Ann. tit. 10, § 512(b)(1)b; Super. Ct.Crim. R. 62(a)(5).

> FN7. Rule 61(i)(3) provides that any ground for relief that was not previously raised is procedurally barred unless the defendant demonstrates "cause for relief from the procedural default" and "prejudice" stemming from the alleged grievance.

> FN8. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that defense counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the outcome of the case would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).

*2 (7) Cubbage filed extensive written objections to the Commissioner's report and recommendation. Following its de novo determination of Cubbage's objections, the Superior Court, by order dated April 14, 2005, adopted the Commissioner's findings and recommendation and denied Cubbage's motion for postconviction relief. [FN9] This appeal followed.

> FN9. Super. Ct.Crim. R. 62(a)(5)(iv).

(8) We have carefully considered Cubbage's appellate claims as set forth in the opening brief, as well as the State's motion to affirm and the Superior Court record. We conclude that the judgment of the Superior Court should be affirmed on the basis of the Superior Court's order dated April 14, 2005, that adopted the Commissioner's well-reasoned report and recommendation dated March 15, 2005. We agree that Cubbage's claims, none of which were raised in his direct appeal, do not meet the cause and prejudice standard of Rule 61(i)(3), nor do they qualify for the exception to the Rule 61(i)(3) procedural bar that is found in Rule 61(i)(5). [FN10] Moreover, to the extent that Cubbage alleged ineffective assistance of counsel, we agree that Cubbage has not demonstrated that any claimed error on the part of his counsel resulted in prejudice to him.

> FN10. Rule 61(i)(5) provides in pertinent part that the procedural bar in Rule 61(i)(3) shall not apply to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

(9) It is manifest on the face of Cubbage's opening brief that this appeal is without merit. The issues raised on appeal are clearly controlled by settled principles of law, and there was no error of law in the Superior Court. To the extent the appeal presents issues of judicial discretion, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

Slip Copy, 2005 WL 2319114 (Del.Supr.), Unpublished Disposition

END OF DOCUMENT

District Court
844 N. King St
Lock Box 18
Wilmington, De. 19801

David Cubbage
IM:
SBI# 271683    UNIT 23
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977