IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **JARID L. CUBBAGE**, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 05-798-GMS |
| | : | |
| **THOMAS CARROLL**, Warden, | : | |
| **CARL C. DANBERG**, | : | |
| Attorney General of the State of Delaware, | : | |
| | : | |
| Respondents. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, the respondents state the following in response to the petition for a writ of habeas corpus:

In October 2002, the petitioner, Jarid L. Cubbage, was convicted by a Sussex County Superior Court jury of first degree robbery, possession of a deadly weapon during the commission of a felony, first degree conspiracy, and wearing a disguise during the commission of a felony. Cubbage was sentenced to eight years in prison followed by decreasing levels of probation. The conviction and sentence were affirmed on direct appeal. *Cubbage v. State*, No. 5, 2003, 2003 WL 21488129 (Del. June 25, 2003). Cubbage applied for state post-conviction relief, and the Superior Court referred the matter to a Court Commissioner pursuant to DEL. CODE ANN. tit. 11, § 512(b) and Criminal Rule 62. On March 15, 2005, the Commissioner issued a Report and Recommendations in which she recommended that the court deny Cubbage's post-conviction motion. The Superior Court adopted the Report and Recommendations by order dated April 13, 2005. *State v. Cubbage*, 2005 WL 914470 (Del.

Super. Apr. 13, 2005).[1] The state supreme court affirmed the Superior Court's denial of post-conviction relief, *inter alia*, for the reasons stated in both the Superior Court's order and the Commissioner's Report and Recommendation. *Cubbage v. State*, No. 168, 2005, 2005 WL 2319114 at ¶ 8 (Del. Sept. 20, 2005); *see Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

Facts

As adduced at Cubbage's Superior Court jury trial and reported by the state supreme court on direct appeal, the facts surrounding his conviction are as follows:

> Cubbage entered a guilty plea in 1994 to a charge of Robbery in the Second Degree and was therefore a convicted felon at the time of his October 2002 Sussex County jury trial. From May 2000 to February 2002, Cubbage worked at a Burger King in Sussex County, and on February 8, 2002, Cubbage worked at a Burger King in Rehoboth Beach as an assistant manager. As one of the assistant managers, Cubbage had a key to the restaurant safe. The safe also contained a combination lock and only the owners and three store managers (Cubbage, Michael Johnson, and Pamela Sue Bland) had both the key and the combination.
>
> On February 9, 2002, at approximately 1:00 a.m., assistant manager Johnson was counting the daily receipts and placing $1,407.03 in the night deposit bag. Jason Baull, an employee, assisted Johnson with the closing responsibilities. Baull's responsibilities included cleaning the restaurant and removing the trash while Johnson totaled the receipts.
>
> While totaling the receipts, Johnson heard Baull calling him from outside the restaurant. Johnson laid the deposit bag on a storage room table and went outside to investigate. Johnson saw two people dressed in black and one of the individuals had his arms around Baull. The larger of the two individuals had what appeared to a be a 9 millimeter handgun pointed at Baull's head while the other individual had a baseball bat. Johnson also noticed a third person dressed in black and wearing black gloves trying to hide behind the store's utility box. All three of the individuals wore masks, and Johnson heard the individual with the bat address the gunman as "Daron." The gunman commanded Johnson not to do anything stupid or he would shoot Baull. Johnson recognized the gunman's voice to be that of

---

[1] A copy of the Commissioner's Report and Recommendations is attached as an exhibit to the Superior Court's order and is hereinafter cited to as "Rept. and Rec."

2

Daron Lewis, a former employee at the Rehoboth Burger King from July 2001 through December 2001. Johnson also recognized the voice of the person with the bat to be William James Wilson III, another former employee from June 2000 to December 2001.

Lewis and Wilson took Johnson to the trash dumpster behind the restaurant and locked Johnson and Baull in the trash dumpster area. A brick wall with access through two wooden doors standing approximately 12 feet high surrounded the restaurant dumpster area. When Lewis and Wilson eventually ran away, Baull climbed over the wall and opened the doors for Johnson. Johnson then noticed that someone opened the previously locked drive-thru window and took the deposit bag. Johnson also inspected the store safe and noticed that the safe was still locked. Johnson then telephoned Pamela Sue Bland, the store manager, to notify her of the robbery. Bland went to the restaurant to meet with the State Police and then noticed that the safe was closed. The next morning, however, Bland opened the safe and discovered approximately $595.00 missing from the safe.

On Sunday, February 10, 2002, Daron Lewis turned himself in at Delaware State Police Troop 4. Lewis told Detective Hudson that Cubbage was the third masked participant in the Burger King robbery of the previous day. Detective Hudson arrested Cubbage that same afternoon while Cubbage was working at the Burger King. The police searched Cubbage's car and found three bandanas and a pair of black gloves. Lewis later showed the Detective the location of the bat and a BB gun actually used in the robbery.

In May 2002, Lewis entered a guilty plea to charges of Robbery in the Second Degree and Wearing a Disguise During the Commission of a Felony in connection with his involvement in the February 9th Burger King robbery. Co-defendant William Wilson also pleaded guilty to the same charges. Both Lewis and Wilson testified at Cubbage's trial and implicated Cubbage as the third participant in the February 9th robbery. Lewis also testified that after he and Wilson placed Baull and Johnson in the dumpster area, Cubbage ran into the restaurant and stole the money. Both Lewis and Wilson testified that Cubbage drove the three of them to Salisbury, Maryland and left the deposit bag at a residence. Cubbage testified in his own defense at trial and denied any involvement in the robbery.

*Cubbage v. State*, No. 5, 2003, 2003 WL 21488129 at ¶¶ 2-7 (Del. June 25, 2003).

3

Discussion

In the petition and a handwritten supporting memorandum, Cubbage presents eight claims:[2] 1) Cubbage mistakenly proceeded to trial because the State did not disclose the substance of co-defendant William Wilson's statement; 2) limitations placed on the cross-examination of Wilson violated the Confrontation Clause; 3) the State submitted false evidence (doo-rags, gloves and pictures) because an investigator stated at the preliminary hearing that the only evidence against Cubbage was Wilson's statement; 4) the prosecutor improperly cross-examined Cubbage regarding his post-arrest silence; 5) defense counsel's representation was constitutionally ineffective because he failed to obtain Wilson's statement and was thus unprepared for trial; 6) defense counsel's representation was constitutionally ineffective because he did not obtain Wilson's criminal record which included a shoplifting conviction that could have been used for impeachment purposes; 7) defense counsel's representation was constitutionally ineffective because he failed to impeach a detective's testimony ; and 8) defense counsel's representation was constitutionally ineffective because he failed to raise as an issue on direct appeal the prosecutor's non-disclosure of Wilson's statement. (D.I. 2-3).[3] Cubbage did not raise the substantive claims on direct appeal, but he did present these claims as allegations of constitutionally ineffective assistance of counsel

---

[2]Cubbage presents his claims in the model § 2254 form using additional photocopied pages of the model form to list eight numbered grounds for relief. These claims correspond to the numbered claims as presented in a lengthy handwritten supporting memorandum. The answer responds to Cubbage's claims as thus numbered and not to a one-page attachment included with the model form which summarily lists claims with a different numerical pattern.

[3]The respondents note that to the extent that certain of Cubbage's claims overlap, those claims are addressed in a single argument in the answer.

during the state post-conviction proceedings in the Superior Court and in the ensuing appeal in the state supreme court. Similarly here, Cubbage complains that defense counsel should have advanced his substantive claims in the state courts. Thus, state remedies are exhausted regarding Cubbage's ineffective assistance of counsel claims. *See* 28 U.S.C. § 2254(b); *Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984).

The claims presented by Cubbage in the petition substantially correspond to the claims that he presented to the state courts in the post-conviction proceeding. The Superior Court adopted the Report and Recommendation and correctly determined that consideration of Cubbage's substantive claims was procedurally barred under Superior Court Criminal Rule 61(i)(3).[4] The state supreme court affirmed on that basis as well. *Cubbage v. State*, No. 168, 2005, 2005 WL 2319114 at ¶ 8 (Del. Sept. 20, 2005); *see Ylst v. Nunnemaker*, 501 U.S. 797 (1991) (holding where a state court decision rejects a claim, a later unexplained court order upholding the previous judgment is deemed to be based on the same ground). After finding that a petitioner has exhausted state remedies, this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989). Cubbage did not comply with relevant state procedural requirements regarding the presentation of his substantive claims in the post-conviction

---

[4]Consistent with Cubbage's presentation of the claims in the state courts, Cubbage also appears to allege that defense counsel was ineffective for not presenting these claims at trial or on direct appeal. The state courts held that Cubbage's ineffectiveness claims were not procedurally barred, and thus Cubbage's ineffectiveness claims relating to the substantive claims are addressed *infra*.

5

proceedings. The state supreme court affirmed the Superior Court's rejection of Cubbage's substantive claims on procedural grounds, invoking Superior Court Criminal Rule 61(i)(3), which precludes review of claims that were not asserted in the proceedings leading to the judgment of conviction unless a movant can establish cause for and prejudice from the procedural default. *Cubbage*, *supra*, 2005 WL 2319114 at ¶ 8. In applying the procedural bar of Rule 61(i)(3), the state courts articulated a "plain statement," under *Harris v. Reed*, 489 U.S. 255, 263-64 (1989), that the decision rested on state law grounds. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). This Court has held consistently that Rule 61(i)(3) is an independent and adequate state procedural rule which precludes federal habeas review. *E.g.*, *McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Dawson v. Snyder*, 988 F. Supp. 783, 804 (D. Del. 1997); *Carter v. Neal*, 910 F. Supp. 143, 149-50 (D. Del. 1995) *DeShields v. Snyder*, 830 F. Supp. 819, 822 (D. Del. 1993); *Flamer v. Chaffinch*, 827 F. Supp. 1079, 1087-88 (D. Del. 1993).

Accordingly, the state procedural bar imposed in this case under Criminal Rule 61(i)(3) is an independent and adequate state law ground under *Wainwright v. Sykes*, 433 U.S. 72 (1977) which precludes federal habeas review of Cubbage's substantive claims unless he can establish cause for his procedural default and resulting prejudice, or that a miscarriage of justice will result if the court refuses to hear the claims. *See* 28 U.S.C. § 2254(a); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris*, 489 U.S. at 262; *Murray v. Carrier*, 477 U.S. 478, 493 (1986); *Caswell v. Ryan*, 953 F.2d 853, 860-61 (3d Cir. 1992); *Bond*, 864 F.2d at 311; *Dawson*, 988 F. Supp. at 804-05. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S.

467, 493 (1991); *Carrier*, 477 U.S. at 487; *Dawson*, 988 F. Supp. at 805. To establish prejudice under the cause and prejudice standard, a petitioner must show that the alleged errors worked to his actual and substantial disadvantage, infecting his entire proceeding with error of constitutional dimensions. *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *Dawson*, 988 F. Supp. at 804-05.

Here, the record does not reveal cause for the procedural default of Cubbage's substantive claims in the state courts. Because the record does not reveal cause for Cubbage's procedural default, this Court need not reach the question of whether he has shown any actual prejudice. *See Coleman*, 501 U.S. at 752, 757 (rejecting claim that cause was established due to ignorance or inadvertence of counsel); *Smith v. Murray*, 477 U.S. 527, 533 (1986); *McCleaf*, 416 F. Supp. 2d at 297; *Lawrie*, 9 F. Supp. 2d at 454; *Dawson*, 988 F. Supp. at 804-05; *Carter*, 910 F. Supp. at 151. Accordingly, each of Cubbage's substantive claims should be dismissed as procedurally barred.

*Cubbage's Ineffectiveness Claims Do Not Provide A Basis for Relief*

Cubbage presented his claims of ineffective assistance of counsel in the state post-conviction appeal, and thus state remedies are exhausted with regards to the ineffectiveness claims.[5] Federal habeas review in this case is subject to the terms of the Antiterrorism and Effective Death Penalty Act of 1996. *See* 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3,

---

[5]Ineffective assistance of counsel may be asserted as cause for a procedural default in the state courts. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986); *McCleaf v. Carroll*, 416 F. Supp. 2d 283, 297 (D. Del. 2006). Here, the state courts interpreted Cubbage as having presented these specifications of ineffectiveness as independent claims and not as allegations of cause for the procedural default under Superior Court Criminal Rule 61(i)(3). Accordingly, the answer addresses Cubbage's allegations of ineffectiveness as independent claims.

7

8 (2002); *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Revised § 2254 restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see, e.g., Price v. Vincent*, 538 U.S. 634 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 21-22 (2002); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). The issue here is thus whether the decision of the state supreme court was contrary to, or involved an objectively unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000).

Cubbage's first, fifth and eighth claims are overlapping and essentially allege that defense counsel was ineffective for failing to challenge the prosecutor's non-disclosure of Wilson's statement about the red and white doo-rag on direct appeal. In order to prevail on a claim of ineffective assistance of counsel, Cubbage was required to allege and establish facts showing (1) that defense counsel's actions fell below an objective standard of reasonableness, and (2) that there exists a reasonable probability that, but for defense counsel's unprofessional errors, he would have prevailed at trial. *Hill v. Lockhart*, 474 U.S.

52, 57-59 (1985); *Strickland v. Washington*, 466 U.S. 668, 695 (1984); *Weeks v. Snyder*, 219 F.3d 245, 257 (3d Cir. 2000); *United States v. Brown*, 991 F.2d 1162 (3d Cir. 1993).

The *Strickland* analysis for a claim of ineffective assistance of counsel constitutes clearly established law under revised § 2254(d). *E.g.*, *Woodford*, 537 U.S. at 22; *Williams*, 529 U.S. at 390; *Keller v. Larkins*, 251 F.3d 408, 418 (3d Cir. 2001); *Johnson v. Carroll*, 327 F. Supp. 2d 386, 395 (D. Del. 2004). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." In evaluating defense counsel's performance, a reviewing court should also "eliminate the distorting effects of hindsight," and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In turn, a petitioner must allege not only the derelictions of counsel, but how those errors undermined the reliability of his conviction. *See Hill*, 474 U.S. at 60 (denying petition due to absence of factual allegation of prejudice); *United States v. Lively*, 817 F. Supp. 453, 458 n.2 (D. Del.), *aff'd*, 14 F.3d 50 (3d Cir. 1993) (table); *cf. Mayberry v. Petsock*, 821 F.2d 179, 185-86 (3d Cir. 1987) (specific allegations required as prerequisite for further proceedings); *DeShields v. Snyder*, 830 F. Supp. 819, 823-24 (D. Del. 1993). Thus, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *Wells*, 941 F.2d at 259-60; *Dooley*, 816 F.2d at 891-92. In this case, the decision of the state supreme court affirming the denial of Cubbage's post-conviction claim was not an unreasonable application of the well-settled two-part *Strickland* framework.

As explained in the Commissioner's Report and Recommendations, Cubbage's allegation focuses on Wilson's testimony that a red and white doo-rag discovered by police in Cubbage's car was used by Wilson as a mask during the robbery. According to Cubbage, Wilson's testimony on the point at trial was a surprise and represented the first time that the doo-rags discovered in Cubbage's car would be tied to the robbery. *See* Rept. and Rec. at *11.[6] As an initial matter, the only prejudice alleged in the petition in connection with the first claim is that Cubbage mistakenly proceeded to trial because he did not know that Wilson would testify regarding the red and white doo-rag. There simply is "no constitutional right to plea bargain," and "the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *accord Corbitt v. New Jersey*, 439 U.S. 212, 223 (1978) ("The States and the Federal Government are free to abolish guilty pleas and plea bargaining."). Thus, Cubbage's claim manifestly fails to state a claim of prejudice. Further, Cubbage's failure to detail the specifics of any alleged plea offer, and to allege that he would have in fact pled guilty, renders the claim as merely a conclusory allegation which fails to provide a basis for a finding of prejudice. *See Wells*, 941 F.2d at 259-60; *Dooley*, 816 F.2d at 891-92.

Even assuming that defense counsel had some obligation to object to the admissibility of Wilson's testimony on this point, the Commissioner correctly determined that Cubbage could not show that exclusion of the statement would have changed the result of his trial. Both Lewis and Wilson implicated Cubbage as the third bandit, and gloves and the bandanas were tied to Cubbage's vehicle. Cubbage had the keys to the safe, and the money from the

---

[6]Notably, defense counsel and Cubbage himself were both aware of Wilson's oral interview well before trial. Rept. and Rec. at *11 n.5.

locked safe had been stolen. As observed by the Commissioner, the "testimony about the red and white doo-rag was but one drop in a bucket of evidence." Rept. and Rec. at *11. Perforce, the determination of the state courts that Cubbage had failed to demonstrate prejudice under *Strickland* was not unreasonable within the meaning of § 2254, and the first, fifth, and eighth claims should be rejected.

In the second claim, Cubbage complains that counsel did not object to restrictions being placed on Wilson's cross-examination. As thoroughly addressed in the Commissioner's Report and Recommendations, Cubbage's claim simply misstates the progression of Wilson's cross-examination:

> Defendant maintains that the trial court limited defense counsel's cross-examination of Wilson. Defendant completely misunderstands what occurred. A review of the transcript of pages B-80 through B-87 shows the following. The State sought to introduce the tape recorded interview of Wilson pursuant to 11 *Del. C.* § 3507. In that interview, Wilson denies that he, Cubbage or Lewis participated in a robbery that night. However, the Detective later interviewed Wilson at his preliminary hearing and at that time, defendant told him that all three of them did participate in the robbery. Defense counsel sought to limit the questioning of the Detective during the 11 *Del. C.* § 3507 proceedings to *Wilson's* involvement in the robbery and to prohibit testimony and questioning about Wilson's oral statement that *defendant* was involved in the robbery. The Court granted that limitation. Thus, the limitation was to defendant's benefit. This is a meritless argument and the additional arguments defendant makes based on this faulty argument also are meritless. This claim fails.

Because Cubbage's meritless argument misunderstands the nature of the trial court's ruling, it cannot be said that the state courts' rejection of the claim amounted to an unreasonable application of *Strickland* within the meaning of § 2254.

In the third and seventh claims, Cubbage essentially alleges that defense counsel was ineffective for failing to object to the admission of evidence at trial, including the doo-rags and gloves found in his car and related photographs. As the argument goes, a police

11

detective testified at the preliminary hearing that authorities had no evidence regarding the robbery other than the co-defendants' statements. The Commissioner observed that the preliminary nature of the testimony allowed for an inference that the detective was stating that he did not have available identifying evidence against the defendant such as DNA or fingerprints. But the testimony cannot fairly be read for a broader inference that the entirety of the prosecution's case rested exclusively on the co-defendants' statements. Rept. and Rec. at * 12 & n. 7.

Thus, the state courts correctly determined that there was no basis for defense counsel to have objected to admission of the red and white doo-rag, gloves or pictures. Further, the detective's preliminary hearing testimony did not render any evidence "false" as alleged by Cubbage. *See* Rept. and Rec. at * 12-13. Accordingly, Cubbage is unable to satisfy either prong of the *Strickland* standard. First, Cubage cannot establish a performance deficiency on the part of defense counsel because the Sixth Amendment does not require counsel to press meritless arguments before a court. *See Sistrunk*, 96 F.3d at 671 ("Only in a rare case would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law."); *Pitts v. Redman*, 776 F. Supp. 907, 925-26 (D. Del. 1991), *aff'd*, 970 F.2d 899 (3d Cir.), *cert. denied*, 506 U.S. 1003 (1992). And because the underlying substantive claim lacked merit, Cubbage simply cannot demonstrate a reasonable probability that the result of his trial would have been different had counsel objected to admission of the evidence.

In the fourth claim, Cubbage claims that defense counsel should have objected to the prosecutor's cross-examination of Cubbage regarding his post-arrest silence. Cubbage testified at trial, and he presented a defense of alibi. The prosecutor attempted to impeach

Cubbage's testimony by asking Cubbage why he did not inform police about his alibi during questioning. As the argument goes, the trial judge erred by allowing the State to question Cubbage about his "post-arrest silence" over a defense objection. Cubbage claims defense counsel was ineffective for failing to advance the issue on direct appeal.

Because Cubbage not only testified, but also waived his Fifth Amendment rights when questioned by police, the prosecutor's inquiry was proper. *See Doyle v. Ohio*, 426 U.S. 610 (1976)). In *Doyle*, the Court held that the use for impeachment purposes of a defendant's silence, at the time of arrest and after receiving *Miranda*[7] warnings, may run afoul of the Due Process Clause. 426 U.S. at 619. Because *Miranda* warnings, *inter alia*, are a prophylactic means of protecting the Fifth Amendment right to remain silent, "'[s]ilence in the wake of these warnings may be nothing more that the arrestee's exercise of these . . . rights. Thus, every post-arrest silence is insolubly ambiguous . . . .' and lacks significant probative value." *Doyle*, 426 U.S. at 617. The burden is on the defendant to prove that he received *Miranda* warnings. *See Fletcher v. Weir*, 455 U.S. 603 (1982). Here, Cubbage spoke to police voluntarily and expressly waived his *Miranda* rights when talking to police. *Cf. Fletcher*, 455 U.S. at 606-07 (absent affirmative assurance that defendant relied on *Miranda* warnings, a State may permit cross-examination as to post-arrest silence when a defendant testifies).

Accordingly, not every reference to an accused's post-arrest silence amounts to error. Post-arrest silence may be used for impeachment purposes where that fact is inconsistent with the defendant's trial testimony concerning his behavior following arrest. *See Doyle*, 426

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

13

U.S. at 619 & n.11 (discussing exception to prohibition of use of post-arrest silence); *Hassine v. Zimmerman*, 160 F.3d 941 (3d Cir. 1998) (discussing *Doyle* exception which permits prosecution to use post-arrest silence to impeach the credibility of the defendant's version of what he did following arrest). Here, that is precisely what the prosecutor's questioning did, and perforce there was no prejudice.

As explained by the Commissioner, defense counsel "was not ineffective; there was no valid basis for such an argument. Defendant did not invoke his right to remain silent; he specifically waived it. Consequently, trial counsel had no basis for pursuing an argument that a comment on defendant's post-arrest silence was a constitutional violation." Rept. and Rec. at *13. The decision of the state courts was manifestly correct. *See generally United States v. Johnson*, 302 F.3d 139, 146 & n.5 (3d Cir. 2002); *United States v. Pino-Noriega*, 189 F.3d 1089, 1098 (9th Cir. 1999); *see also Anderson v. Charles*, 447 U.S. 231 (1980) (inconsistent statement given after arrest and *Miranda* warnings may be used to impeach exculpatory testimony); *Fletcher*, 455 U.S. at 619 (post-arrest silence may be used to impeach exculpatory testimony at trial where no *Miranda* warnings were ever given). Absent a basis for an objection, it cannot be said that the state courts' rejection of the claim was an unreasonable application of *Strickland* within the meaning of § 2254.

Cubbage in the sixth claim complains that defense counsel's representation was constitutionally ineffective because he did not obtain Wilson's criminal record which included a shoplifting conviction that could have been used for impeachment purposes. On August 6, 2001, Wilson had pled delinquent in the Delaware Family Court to misdemeanor shoplifting. Defense counsel was aware of this adjudication and did not use it for impeachment purposes. Delaware Rule of Evidence 609(d) generally prohibits juvenile

adjudications for impeachment purposes unless the court determines that admission of the evidence is necessary for a fair determination of guilt or innocence.[8] *See Harris v. State*, 695 A.2d 34, 43 (Del. 1997), *cited in* Rept. and Rec. at *15. In rejecting this specification of ineffectiveness, the Commissioner explained as follows:

> In this case, to establish prejudice, defendant would have to show that evidence of Wilson's juvenile adjudication was necessary to a fair determination of defendant's guilt or innocence. Defendant has not made such a showing. In any case, the jury was made aware of Wilson's convictions for robbery in the second degree and wearing a disguise during the commission of a felony. Trial counsel also attacked Wilson's credibility during cross-examination and in his closing argument. Thus, trial counsel undermined Wilson's credibility. Defendant cannot show prejudice from the failure of trial counsel to obtain the admissibility of Wilson's criminal adjudication for shoplifting.

Rept. and Rec. at *15. The jury having been told, *inter alia*, of Wilson's prior convictions for second degree robbery and wearing a disguise during the commission of a felony, Cubbage is hard pressed to explain how the jury would have been swayed further, and the result of his trial changed, had defense counsel emphasized a juvenile misdemeanor shoplifting adjudication. More importantly, it cannot be said that the state courts' application

---

[8] Questions relating to the admissibility of prior convictions in federal courts are governed by Federal Rules of Evidence 404(a) and 609, and in the Delaware courts by Delaware Uniform Rules of Evidence 404(a) and 609. In neither the federal nor the state courts do such questions involve violations of a federal constitutional right. *Luce v. United States*, 469 U.S. 38, 42 (1984) (holding that a court's ruling on Rule 609(a) is not "a question not reaching constitutional dimensions"); *Galindo v. Ylst*, 971 F.2d 1427, 1429 & n.3 (9th Cir. 1992), *cert. denied*, 508 U.S. 914 (1993); *Peoples v. Fulcomer*, 731 F. Supp. 1242, 1244 (E.D. Pa. 1990). A federal court cannot issue a writ of habeas corpus for violations of state law only. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Thus, any challenge by Cubbage to the state courts' application of Rule 609 presents only an issue of state law which cannot provide a basis for relief here.

of *Strickland* was objectively unreasonable within the meaning of § 2254(d). Accordingly, this claim fails to provide a basis for federal habeas relief.

## Conclusion

Based upon the Superior Court docket sheet, it appears that the transcripts of Cubbage's jury trial proceedings and sentencing have been prepared. In the event that the Court directs production of any transcript, the respondent cannot state with specificity when the transcript could be produced, but reasonably expects that production would take 90 days from the issuance of any order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/
Thomas E. Brown
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 577-8500
Del. Bar ID#  3278
*ThomasE.Brown@state.de.us*

Date: May 19, 2006

## CERTIFICATE OF SERVICE

The undersigned, being a member of the Bar of this Court, hereby certifies that on May 19, 2006 he caused to be electronically filed the attached document (Answer) with the Clerk of the Court using CM/ECF. I hereby certify that on May 19, 2006 I have also caused to be mailed by first class U.S. Mail two copies of the document to the following non-registered participant, the petitioner:

>Jarid L. Cubbage (No. 00271683)
>Delaware Correctional Center
>1181 Paddock Road
>Smyrna, De 19977.

/s/ _____
Thomas E. Brown
Deputy Attorney General
Del. Dept. of Justice

Counsel for Respondent

Date: May 19, 2006