IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JARID L. CUBBAGE,
     Petitioner,

     v.

THOMAS CARROLL, Warden,
CARI C. DANBERG,
Attorney General of the State of Del.,
     Respondents.

Civ. Act. No. 05-798-GMS

Ɖ scanned

Appendix In Support Of REPLY Of Movant
Jarid Cubbage To Respondent's Answer

Jarid L. Cubbage
Pro-se 271683
D.C.C.
1181 Paddock Rd.
Smyrna, De. 19977

Date: October 24, 2006

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| ARGUMENTS FROM SUPREME COURT POST-CONVICTION MOTION | Ex 1-4 |
| CAUSE AND PREJUDICE FROM SUPERIOR COURT POST-CONVICTION MOTION | Ex 4-8 |
| SUPREME COURT OPINION | Ex - 9 |
| DISCOVERY RESPONSE | Ex 10 |
| POLICE REPORTS | Ex 11,12 |
| PORTION OF DET. HUDSON'S PRELIMINARY HEARING TESTIMONY | Ex 13,14 |
| PORTION OF WILSON'S TRIAL TESTIMONY | Ex 15, 16 |
| PLEA OFFER | Ex 17 |
| PORTION OF ADKIN'S CLOSING ARGUMENT | Ex 18,19 |
| PORTION OF DET. HUDSON'S TRIAL TESTIMONY | Ex 20-23 |
| PORTION OF BARNETT'S CLOSING AT PRELIMINARY HEARING | Ex 24,25 |
| SENTENCING JUDGE DENIAL OF CUBBAGE'S MOTION FOR JUDGMENT OF AQUITTAL | Ex 26,27 |
| PORTION OF BRADY'S OPENING BRIEF | Ex 28 |
| LETTER TO BRADY FROM CUBBAGE | Ex 29,34 |
| SIDEBAR CONFERENCE CONCERNING POST-ARREST | Ex 30,31 |
| PORTION OF CUBBAGE'S TRIAL TESTIMONY | Ex 32,33 |
| MOTION FOR DISCOVERY | Ex 35 |

## I. THE DEFENDANT'S DUE PROCESS OF LAW WAS VIOLATED WHEN THE DEFENSE WAS MISLED INTO PROCEEDING TO TRIAL UNPREPARED BECAUSE OF NON DISCLOSURE.

### STANDARD AND SCOPE OF REVIEW

The Standard and Scope of review is whether the State violated it's discovery obligations and prevented the defendant from preparing for trial.

### RULE 16 VIOLATION

Within the Order denying defendant's motion for post-Conviction relief, the trial Court accepted the Commissioner's findings and recommendations. The Commissioner argues that the defendant wasn't entitled to Wilson's Statements if there weren't any notes taking because Superior Court Criminal Rule 16(a) only allows for discovery of written or recorded Statements of a codefendant, not oral Statements and defense attorney was not ineffective for seeking discovery or have it excluded. The notes, whether any were taken or not, was only disputed after Wilson's damaging testimony and neither Wilson nor Det. Hudson were voir Dired to determine if notes were taken or not, it was defense and prosecuting attorney. (A-13 LN 12-16) In this case, Prosecutor Adkins provided Automatic Discovery to the defense (A-14 LN 4-11) and was obligated to comply with the rules of Superior Court Criminal Rule 16. First Prosecutor Adkins was to find out about evidence which it has within its Control under Superior Court Criminal Rule 16(f). Johnson v. State, Del. Supr., 550 A.2d 903 (1988)

The State Knew that Wilson made Statements to Det. Hudson when Det. Hudson testified at Cubbage's preliminary hearing (A-15 LN 7-17) (A-16 LN 4-10) and the State was obligated to disclose those Statements which it Knew existed before he disclosed his discovery response to the defense. Gardner v. State, Del. Supr., 567 A.2d 404 (1989) If the defense was not entitled to the statements, Prosecutor Adkins was required to specify it in the discovery response with an objection under Superior Court Criminal Rule 16(d). The State may not haphazardly discharge its duty to disclose discovery then appear at trial and expect a defendant to pay the price of its negligence by going

## II. THE DEFENDANT'S RIGHT TO CONFRONTATION WAS VIOLATED WHEN THE TRIAL JUDGE ABUSED IT'S DISCRETION AND LIMITED THE CROSS-EXAMINATION OF A CODEFENDANT.

### STANDARD AND SCOPE OF REVIEW

The Standard and Scope of review is whether the trial Court's limitation on the defense effect the defendant's right to cross-examine an adverse witness.

### LIMITED CROSS

Within the Order denying defendant's motion for post-conviction relief, the trial Court accepted the Commissioner's findings and recommendations. The Commissioner argues that the limitation the Court imposed was to the defendant's benefit and this is a meritless argument. The Commissioner incorrectly states that Mr. Brady sought to limit the questioning of Det. Hudson. Mr. Brady approached the bench about two questions Prosecutor Adkins asked of Wilson: "Did you tell the truth then?" and "Did you admit your involvement?" (A-13 LN 3-13) (A-42 LN 6-17) because Mr. Brady was unable to examine Wilson because of the nondisclosure of notes from that interview. It was the trial judge who improperly suggested to limit the cross-examination. (A-42 LN 18-23) The trial judge should have given curative instructions to the jury to strike Wilson's testimony that he told the truth because there was no way for the defense to examine him about the interview and the Court had ruled that no questions would be asked about the February 21st, 2002 interview. Because the trial Court had placed limitations on cross-examination of the second interview, the defense was unable to inquire into the motivation, bias or favorable treatment from the police or prosecution. The defense was unable to ask Wilson if he implicated Cubbage at his preliminary hearing in exchange of having his bail reduced. Wilson's bail, which was $60,000 cash bond was reduced to unsecured at his preliminary hearing. The jury may have believed that Wilson was

(11)                    EX 2

ARGUMENT III.

III. THE DEFENDANT'S DUE PROCESS OF LAW
WAS VIOLATED WHEN THE STATE SUBMITTED
FALSE AND PREJUDICIAL EVIDENCE TO GAIN
A CONVICTION.

## STANDARD AND SCOPE OF REVIEW

The Standard and Scope of review is whether the
the evidence submitted was irrelevant and prejudicial.

## IRRELEVANT EVIDENCE

The defendant argues claims Three and Four of his
post-conviction motion as one argument on appeal because
the two arguments are closely related and to avoid
repetition. Within the Order denying defendant's motion for
post-conviction relief, the trial court accepted the
Commissioner's findings and recommendations. The Commissioner
argues that the doorags and gloves were admissible
because the State identified the photographs in it's discovery
response dated April 25, 2002 and defense counsel was not
ineffective for failing to object to the admission of the
evidence. The defendant argues that in order for an seized
item(s) to be admissible, it must be relevant and tend to
establish a fact in issue. Delaware Uniform Rules of Evidence
401 and Farmer v. State, Del. Supr., 698 A.2d 946 (1997) The
doorags, gloves and the photograph of these items did not
tend to establish a fact in issue, the State could not
link the items to the crime and their admissibility should
have been barred. These items were not argued to have been
used in the robbery. The Commissioner states that the
photographs were admissible because they were identified
in the discovery response but fails to state the purpose
of the prosecution offering these items into evidence.
Mr. Brady was ineffective for failing to object to the
admission of the evidence under Delaware Uniform Rules
of Evidence 402. Mr. Brady should have objected to the
admission of the evidence because the State could not
offer proof that these items were used and allowing

(13)

IV. THE DEFENDANT'S DUE PROCESS OF LAW
WAS VIOLATED DUE TO PROSECUTOR MISCONDUCT
OF IMPERMISSIBLE CROSS-EXAMINATION
ON DEFENDANT'S POST-ARREST SILENCE.

## STANDARD AND SCOPE OF REVIEW

The Standard and Scope of review is whether
the prosecutor was permitted to cross-examine defendant
about exculpatory story told for first time at trial.

## POST ARREST SILENCE

Within the Order denying defendant's motion for post conviction
relief, the trial Court accepted the Commissioner's finding and
recommendations. The Commissioner argues that the defendant
waived his rights to silence and defense Counsel had no valid
basis for pursuing an argument that a comment on
defendant's post-arrest silence was a Constitutional violation.
The defendant argues that he did in fact invoke his right to
Silence. The defendant was interviewed by Det. Hudson on
February 10, 2002 and during the interview Det. Hudson accused
the defendant of participating in the Burger King robbery.
At that time, defendant told Det. Hudson to take him to
Jail. (see Cubbage's interview tape) Once warnings have been
given, the subsequent procedure is clear, if the individual
indicates in any manner, at any time prior to or
during questioning, that he wishes to remain silent,
the interrogation must cease. At this point he has shown
that he intends to exercise his Fifth Amendment privilege.
Miranda v. Arizonia, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed
694 (1966) and Dodson v. State, Del. Supr., 513 A.2d 761 (1986)
In Deshields v. State, 534 A.2d 630 (1987), defendant
Deshields stated "I need some time to think" and the
trial court held that the police violated Deshields'
Miranda rights. No magic language or ritualistic formula
is required to assert the Fifth Amendment privilege against
Self-incrimination which is effectively invoked by any

(16)

Ex 4

issue to appropriate... selectively reasonable under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984)

Superior Court Rule 61(i)(3)(B) also requires that the movant show prejudice from the violation of the movant's rights. In the case of deliberate nondisclosure, the Supreme Court will grant a new trial without inquiry into the degree of harm caused by the misconduct. <u>In re Ouimette</u>, 115 R.I. 169, 175, 342 A.2d 250, 253 (1975) When the defense attorney made it known that he was unable to examine the witness because of the nondisclosure of the notes, the prosecutor stated that he wasn't sure if there were any notes but they don't have any now. Unlike the prosecutor in <u>Skinner</u>, who learned of the statements for the first time during trial, Prosecutor Adkins had Wilson's statements in his possession for nearly eight months plus filed two discovery responses that failed to disclose the statements or the substance of any oral statements. The State had represented in it's first cover letter on 4-25-02 that his discovery obligations was completed, then five months later and three days before trial in his second discovery response on 9-27-02, he stated that Wilson and Det. Hudson had an untaped oral interview on 2-21-02. The defense

Ex 5

Other Evidence and the trial judge took no actions to mitigate the fact that the prosecutor used Wilson's statements as evidence without first disclosing them to the defense.

Superior Court Criminal Rule 61 (i) (3) (A) states that the movant must show cause for failing to raise issue in judgement leading to conviction. The defendant who was represented by an court appointed attorney was prohibited from raising the issue at trial or on appeal because of Superior Court Criminal Rule 47. Walker v. State, Del. Supr., 763 A.2d 92 (2000) and In the Matter of Haskins, Del. Supr., 551 A.2d 68, 66-67 (1988)

Preservation of a claim under state procedural rules does not generally involve an assertion by the defendant himself; rather, the decision to assert or not to assert constitutional rights or constitutional based objections at trial is necessarily entrusted to the defendant's attorney, who must make on-the-spot decisions at virtually all stages of a criminal trial. Once counsel is appointed, the day to day conduct of the defense rests with the attorney. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977) Attorney error that amounts to ineffective assistance of counsel can constitute

753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991)

The defendant claims that his trial attorney, John Brady, was ineffective when he failed to investigate and prepare for trial by not filing for pre-trial discovery to obtain statements made by a codefendant. The defendant specifically had asked Mr. Brady to obtain his codefendant's statements through a motion for Rule 16 discovery and by letter which he neglected to do so. An attorney has a duty to familiarize himself with discovery materials provided by the State. Sullivan, 819 F.2d at 1391 In this case, Mr. Brady was put on notice that a codefendant had made statements implicating his client to the investigating detective concerning the robbery. A competent attorney would have compelled the State to disclose those statements or the substance of those statements. It's the duty of every lawyer to conduct a prompt investigation of the circumstances relevant to the guilt of his client. United States v. Baynes, 687 F.2d 659, 668 (3d Cir. 1982) The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. United

an informed judgement as to the weight to place on Wilson's testimony. Had the jury heard Det. Hudson's preliminary hearing testimony about disguise worn by the codefendants (Ex. 6 lines 17-22), Det. Hudson's preliminary hearing testimony that the only evidence as far as physical or identification he had against the defendant was the statements of the codefendants (Ex. 7 lines 12-21) and Det. Hudson's preliminary hearing testimony that he had interviewed Wilson on 2-21-02 (Ex 20 line 4-10) which was only seven days prior to Cubbage's preliminary hearing that was held on 2-28-02, the jury would have returned a verdict of "not guilty".

Superior Court Criminal Rule 61 (i)(3)(A) states that the movant must show cause for failing to raise issue in judgement leading to conviction. The defendant who was represented by an court appointed attorney was prohibited from raising the issue at trial or on appeal because of Superior Court Criminal Rule 47. Walker v. State, Del. Supr., 763 A.2d 92 (2000) and In the Matter of Haskins, Del. Supr., 551 A.2d 68, 66-67 (1988) Preservation of a claim under State procedural rules does not generally involve an assertion by the defendant himself; rather, the decision to

Ex 6

Constitutional based objections at trial is necessarily entrusted to the defendant's attorney, who must make on-the-spot decisions at virtually all stages of a Criminal trial. Once counsel is appointed, the day to day Conduct of the defense rests with the attorney. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Attorney error that amounts to ineffective assistance of counsel Can constitute such "Cause". Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991)

The defendant claims that his trial attorney, John Brady, was ineffective when he failed to request a mistrial or continuance when the trial judge asked him to limit his cross. Mr. Brady admitted he couldn't examine Wilson, a key state witness because of the nondisclosure of notes, breached his duty to establish the best available defense for the defendant when he continued with the trial. No conceivable sound strategy would include a decision to proceed unprepared. Counsel who was not objecting because at his last trial he objected too much failed to properly preserve the error by securing either an adverse ruling or asking for a mistrial. In his motion for a new trial, Mr. Brady failed to raise the issue of the trial judge limiting the defense from cross-examining a key

..., after that witness testified he had told the truth.

Superior Court Criminal Rule 61 (i)(3)(B) also requires that the movant show prejudice from the violation of the movant's rights. The State was allowed to present to the jury, the uncontradicted testimony of Codefendant Wilson that he told the truth to Det. Hudson when he was interviewed, that he wore the red and white doorag as a disguise during the robbery and the State argued to the jury in closing arguments that Wilson wore the red and white doorag (Ex. 21 lines 17-23)(Ex. 22 lines 1-22)(Ex 23 lines 10-14). The defense was prohibited from presenting impeaching evidence to the jury that they were entitled to hear. The jury did not have sufficient information with which to make a discriminating appraisal of Wilson's motives or bias. Had the defense been able to impeach Wilson's trial testimony with Det. Hudson's preliminary hearing testimony that Wilson told him the exact same story as Lewis, that all the suspects wore black, that the only evidence as far as physical or identification evidence was the statements of the codefendants and he had interview Wilson just a week prior at Wilson's preliminary hearing, the jury would have returned a verdict of "not guilty". The defendant's Constitutional rights to confrontation under the Sixth Amendment was denied and his right to a fair trial

returned a verdict of "not guilty."

Superior Court Criminal Rule 61 (i) (3) (A) states that the movant must show cause for failing to raise issue in judgement leading to conviction. The defendant who was represented by an Court appointed attorney was prohibited from raising the issue at trial or on appeal because of Superior Court Criminal Rule 47. Walker v. State, Del. Supr. 763 A.2d 92 (2000) and In the Matter of Haskins, Del. Supr., 551 A.2d 68, 66-67 (1988) Perservation of a claim under State procedural rules does not generally involve an assertion by the defendant himself; rather, the decision to assert or not to assert Constitutional rights or constitutional based objections at trial is necessarily entrusted to the defendant's attorney, who must make on-the-spot decisions at virtually all stages of a criminal trial. Once counsel is appointed, the day to day conduct of the defense rests with the attorney. Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) Attorney error that amounts to ineffective assistance of counsel can constitute such "cause". Coleman v. Thompson, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991)

EX 7

The defendant claims that his trial attorney John Brady, was ineffective when he failed to object to the admission of irrelevant evidence. Mr. Brady, who disclosed to the trial judge at a sidebar conference that he wasn't objecting because at his last trial he objected too much (Ex. 17 lines 14-16) was not functioning as the attorney guaranteed by the Sixth Amendment. Failure to object deprives the defendant of appellate review of the claim as a matter of right. The purpose of an objection is not simply to preserve an error for appellate review of uncertain outcome but to prevent prejudicial error and a resultant conviction. Trial counsel's failure to object to the prosecutor erroneous admission of irrelevant evidence was unreasonable under prevailing professional standards.

Superior Court Criminal Rule 61 (i)(3)(B) also requires that the movant show prejudice from the violation of the movant's rights. Counsel's ineffectiveness at trial allowed the prosecutor to imply to the jury that the defendant was guilty because he possessed the means to commit the crime. Counsel's failure to object to the prosecutor's erroneous admission of irrelevant evidence prejudiced the defendant's direct appeal. The defendant would have obtained relief on direct appeal if Mr.

Lyle v. Kansas, 317 U.S. 213, 213-16, 63 S.Ct. 177, 87 L.Ed. 214 (1942)

Prosecutor Adkins Solicited Known false testimony to decieve the court and jurors by soliciting testimony from a high ranking police officer that was in active charge of the investigation. Had the State not proffered the false testimony from Det. Hudson or allowed it to go uncorrected, the jury would have returned a verdict of "not guilty". The jury could well have concluded the defendant's guilt after hearing testimony from Det. Hudson, an 18 year veteran, who the jury would consider presumptively reliable that the items submitted was evidence from the Burger King robbery. Det. Hudson's trial testimony that the items seized was evidence contradicted the defendant's testimony that he was innocent and impeached the credibility of the defendant.

Superior Court Criminal Rule 61(i)(3)(A) states that the movant must show cause for failing to raise issue in judgement leading to conviction. The defendant who was represented by an court appointed attorney was prohibited from raising the issue at trial or on

_Walker v. State_, Del. Supr., 763 A.2d 92 (2000) and _In the Matter of Haskins_, Del. Supr., 551 A.2d 68, 66-67 1988) Preservation of a claim under State procedural rules does not generally involve an assertion by the defendant himself; rather, the decision to assert or not to assert Constitutional rights or constitutional based objections at trial is necessarily entrusted to the defendant's attorney, who must make on-the-spot decisions at virtually all stages of a criminal trial. Once Counsel is appointed, the day to day conduct of the defense rests with the attorney. _Wainwright v. Sykes_, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977) Attorney error that amounts to ineffective assistance of Counsel Can constitute such "Cause". _Coleman v. Thompson_, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991)

The defendant Claims that his trial attorney, John Brady, was ineffective when he failed to impeach Det. Hudson's trial testimony with his preliminary hearing testimony. There was no strategic reason for not impeaching Det. Hudson's trial testimony that the items seized in a search of the defendant's car on 2-11-02 with his preliminary hearing testimony that the only evidence he

had was never presented at trial. Had Mr. Brady impeached Det. Hudson's trial testimony with his preliminary hearing testimony about evidence, he also would have damaged Wilson's testimony that he wore the red and white doorag. Counsel's failure to challenge the evidence testimony constitutes deficient performance as defined in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) and <u>Hadley v. Groose</u>, 97 F.3d 1131 (1996)

   Superior Court Criminal Rule 61 (i)(3)(B) also requires that the movant show prejudice from the violation of the movant's rights. Because Det. Hudson's testimony went unchallenged, the State was allowed to present known false evidence to influence the judgement of the jury. Had Mr. Brady impeached Det. Hudson's trial testimony with his preliminary hearing testimony concerning evidence, he would had crippled the State's case and provided favorable evidence for the defendant. If Mr. Brady had presented evidence that ten days after Det. Hudson did a return search and seven days after he interviewed Wilson, he testified that the only evidence he had against the defendant was the statements of the codefendants, Mr. Brady would have given the jury the opportunity to weigh the conflicting testimony of the State witnesses Det. Hudson and Wilson and the jury would have returned a verdict of "not guilty". The State violated the defendant's right to a fair

: Superior Court  States that the movant must show cause for failing to raise issue in judgement leading to conviction. The defendant who was represented by an Court appointed attorney was prohibited from raising the issue at trial or on appeal because of Superior Court Criminal Rule 47. Walker v. State, Del. Supr. 763 A.2d 92 (2000) and In the Matter of Haskins, Del. Supr., 551 A.2d 68, 66-67 (1988) Preservation of a claim under State procedural rules does not generally involve an assertion by the defendant himself; rather the decision to assert or not to assert constitutional rights or Constitutional based objections at trial is necessarily entrusted to the defendant's attorney, who must make on-the-spot decisions at virtually all stages of a criminal trial. Once counsel is appointed, the day to day conduct of the defense rests with the attorney. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 1977) Attorney error that amounts to ineffective assistance of counsel can constitute such "Cause". Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed. 2d 640 (1991)

The defendant claims that his trial attorney, John Brady, was ineffective because he failed to raise on appeal the misconduct due to the prosecutor Commenting

on the defendant's post-trial motion, settled law Clearly recognizes that the State may not comment on a defendant's right to remain silent. The defendant had a strong Fourteenth Amendment argument based on the prosecutor impermissible cross-examination on the defendant's post-arrest silence. The only objection Mr. Brady made at trial and he failed to raise the issue on direct appeal. Counsel's negligence behavior was not within the wide range or reasonable professional assistance and he was not acting as the attorney guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)

Superior Court Criminal Rule 61 (i) (3) (B) also requires that the movant show prejudice from the violation of the movant's rights. Counsel's ineffectiveness at trial allowed the prosecutor to continually imply to the jury that the defendant's failure to assert his story earlier, even though he had a constitutionally protected right to remain silent at those earlier moments, was evidence of his guilt. Had counsel raised the post-arrest issue, the outcome would have been different. The defendant's right to a fair trial that is guaranteed by the Fourteenth Amendment was violated. The defendant's conviction should be reversed and the case remanded for a new trial.

EX 8

Westlaw.

Slip Copy
Slip Copy, 2005 WL 2319114 (Del.Supr.)
**Unpublished Disposition**
**(Cite as: 2005 WL 2319114 (Del.Supr.))**

Law Library

Page 1

**H**

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

NOTE: THIS OPINION WILL NOT BE PUBLISHED IN A PRINTED VOLUME. THE DISPOSITION WILL APPEAR IN A REPORTER TABLE.

Supreme Court of Delaware.
Jarid L. CUBBAGE, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 168, 2005.**

Submitted Aug. 23, 2005.
Decided Sept. 20, 2005.

Court Below--Superior Court of the State of Delaware, in and for Sussex County in IS02-02-0611, 0612 & 0613; IS02-03-0268. Def. ID No. 0202007080.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

ORDER

\*1 This 20th day of September 2005, upon consideration of the appellant's opening brief, the State's motion to affirm, the appellant's response to the motion to affirm, the State's reply to the appellant's response [FN1] and the Superior Court record, it appears to the Court that:

> FN1. The Court permitted the appellant to file the response to the motion to affirm. *See* Supr. Ct. R. 25(a) (providing that there shall be no response to the motion to affirm unless requested by the Court).

(1) The appellant, Jarid L. Cubbage, has filed an appeal from the Superior Court's denial of his motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61"). The appellee, State of Delaware, has moved to affirm the judgment of the

Superior Court on the ground that it is manifest on the face of Cubbage's opening brief that the appeal is without merit. [FN2] We agree and affirm.

> FN2. Del.Supr. Ct. R. 25(a).

(2) Following a jury trial in the Superior Court, Cubbage was convicted of Robbery in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, Conspiracy in the Second Degree and Wearing a Disguise During the Commission of a Felony. The Superior Court sentenced Cubbage to eight years at Level V followed by decreasing levels of supervision.

(3) On direct appeal, Cubbage argued that the Superior Court erred when denying his motion for judgment of acquittal. This Court concluded that Cubbage's arguments were without merit and affirmed the Superior Court's judgment. [FN3]

> FN3. *Cubbage v. State,* 2003 WL 21488129 (Del.Supr.).

(4) In April 2004, Cubbage filed a motion for postconviction relief. Cubbage alleged that (a) he was denied due process when the State failed to disclose alleged notes or a detailed summary of a co-defendant's oral statement; (b) he was denied due process when the State introduced irrelevant and prejudicial evidence; (c) his confrontation rights were violated when the Superior Court limited cross-examination of a co-defendant; and (d) the prosecutor improperly cross-examined him on his post-arrest silence. In related claims, Cubbage alleged that his defense counsel was ineffective when he failed to (a) file for discovery, (b) obtain the criminal record of a co-defendant for impeachment purposes, (c) file a motion for return of property, (d) object to inadmissible evidence, e) impeach a detective's trial testimony, and (f) raise the State's alleged discovery violation and alleged *Doyle* violation on direct appeal. [FN4]

> FN4. *See Capano v. State,* 781 A.2d 556, 648 (Del.2001) (discussing *Doyle v. Ohio,* 426 U.S. 610, 619 (1976) holding that Due Process Clause of Fourteenth Amendment prohibits impeachment on the basis of a defendant's silence following *Miranda* warnings)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(5) The Superior Court directed that defense counsel file an affidavit in response to Cubbage's allegations of ineffective assistance of counsel. [FN5] Cubbage then filed a reply to defense counsel's affidavit.

> FN5. *See Horne v. State,* ___ A.2d ___, 2005 WL 1949967 at *2 (Del.Supr.) (concluding that the Superior Court should obtain trial counsel's affidavit in response to a first postconviction motion that raises ineffective assistance of counsel).

(6) The Superior Court referred Cubbage's postconviction motion to a Commissioner for proposed findings of fact and recommendations. [FN6] In a thoughtful and thorough twenty-four page report dated March 15, 2005, the Commissioner addressed each of Cubbage's claims before recommending to the Superior Court that the postconviction motion should be denied. The Commissioner concluded that, as to each claim, Cubbage failed to overcome the procedural bar of Rule 61(i)(3). [FN7] Where Cubbage raised a related claim of ineffective assistance of counsel, the Commissioner concluded that Cubbage failed to establish that he was prejudiced as a result of his counsel's alleged ineffectiveness. [FN8]

> FN6. Del.Code Ann. tit. 10, § 512(b)(1)b; Super. Ct.Crim. R. 62(a)(5).

> FN7. Rule 61(i)(3) provides that any ground for relief that was not previously raised is procedurally barred unless the defendant demonstrates "cause for relief from the procedural default" and "prejudice" stemming from the alleged grievance.

> FN8. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that defense counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the outcome of the case would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).

**\*2** (7) Cubbage filed extensive written objections to the Commissioner's report and recommendation. Following its de novo determination of Cubbage's objections, the Superior Court, by order dated April 14, 2005, adopted the Commissioner's findings and recommendation and denied Cubbage's motion for postconviction relief . [FN9] This appeal followed.

> FN9. Super. Ct.Crim. R. 62(a)(5)(iv).

(8) We have carefully considered Cubbage's appellate claims as set forth in the opening brief, as well as the State's motion to affirm and the Superior Court record. We conclude that the judgment of the Superior Court should be affirmed on the basis of the Superior Court's order dated April 14, 2005, that adopted the Commissioner's well-reasoned report and recommendation dated March 15, 2005. We agree that Cubbage's claims, none of which were raised in his direct appeal, do not meet the cause and prejudice standard of Rule 61(i)(3), nor do they qualify for the exception to the Rule 61(i)(3) procedural bar that is found in Rule 61(i)(5). [FN10] Moreover, to the extent that Cubbage alleged ineffective assistance of counsel, we agree that Cubbage has not demonstrated that any claimed error on the part of his counsel resulted in prejudice to him.

> FN10. Rule 61(i)(5) provides in pertinent part that the procedural bar in Rule 61(i)(3) shall not apply to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

(9) It is manifest on the face of Cubbage's opening brief that this appeal is without merit. The issues raised on appeal are clearly controlled by settled principles of law, and there was no error of law in the Superior Court. To the extent the appeal presents issues of judicial discretion, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

Slip Copy, 2005 WL 2319114 (Del.Supr.), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



M. JANE BRADY
ATTORNEY GENERAL

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

NEW CASTLE COUNTY
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

KENT COUNTY
102 West Water Street
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

SUSSEX COUNTY
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-2500

PLEASE REPLY TO :
Sussex County Office

September 27, 2002

John F. Brady, Esquire
P.O. Box 251
Georgetown, DE 19947

RE:    State v. Jarid L. Cubbage
ID #0202007080
Cr. A. #S02-02-0611 thru 0613; S02-03-0268

Dear Mr. Brady:

It is my understanding that when you were substituted as counsel for the defendant in the place of Thomas Barnett, Esquire, you were provided the entire file from Mr. Barnett, which would have included the State's complete discovery package, dated April 25, 2002. Despite the fact that said formal discovery invited defense counsel to arrange a time to listen to audio tapes of the defendant or provide blank tapes, so that we could forward copies to defense counsel, I have heard nothing from defense counsel on this subject and; therefore, I am choosing to go ahead and provide copies of these audio tapes to you today. Please find enclosed copies of the following audio tapes:

1. Interview of Co-Defendant, Daron Lewis (2 tapes).
2. Interview of Co-Defendant, William Wilson.
3. Interview of Defendant, Jarid Cubbage.

In addition, please be advised that Det. Doug Hudson did an untaped oral interview of Co-Defendant, William Wilson, in the presence of his attorney, Mr. William Chasanov, on his preliminary hearing date, February 21, 2002, in which William Wilson admitted his involvement in the subject robbery and substantially corroborated the version given by Co-Defendant, Daron Lewis. The main inconsistency between Lewis and Wilson is that they each claim the other one had the gun.

Although it is my recollection that Mr. Barnett was present on the court dates that Co-Defendants, Lewis and Wilson entered pleas of guilty and we fully discussed their deals, I enclose for your review the following:

| | Report Date: 02/11/2002 | Agency: Troop 4 State Police | | Complaint: 07-02-004670 |
|---|---|---|---|---|
| 1 | | | | |

## Supplemental Report - #1

**iginal Occurrence Dates and Times:** AT 02/09/2002 0100 thru SAT 02/09/2002 0115   **Grid** 204-114   **Sector** 73

**iginal Location:** 545 HIGHWAY ONE BURGER KING RESTAURANT   Rehoboth Beach, DE 19971
TATE ROUTE 1 2 MILES NORTH OF REHOBOTH

### Original Victim Information

| ctim Number: 001 | Name: BAULL, JASON  T/A BURGER KING RESTAURANT | | | | | |
|---|---|---|---|---|---|---|
| pe: ndividual | Sex | Race | | Ethnic Origin Non-Hispanic | Age | D.O.B. |
| ddress | | Resident Status Full Time | Business Telephone | Employer/School | | Work Telephone |

| porting Person? ☐ Yes  ☒ No | Victim Injured? ☐ Yes  ☒ No | Victim Deceased? ☐ Yes  ☒ No | Officer Comments |
|---|---|---|---|

### Original Suspect/Defendant Information

| equence 001 | Type Suspect | SBI Number | Name LEWIS, DARON | | | Nick Name | | |
|---|---|---|---|---|---|---|---|---|
| ex Male | Race Black | Ethnic Origin Non-Hispanic | Age 19 | D.O.B. | Height 6' 01" | Weight | Skin Tone | Eye Color |
| air Color Black | Hair Length | Hair Style Afro/Natural | Facial Hair | Voice Speech | Teeth | | Build Large | Glasses |
| ddress RD. 4 BOX 296 MILTON, DE 19968 | | Home Telephone | | Employer/School | | | | Work Telephone |

**rrest Number** | Suspect's Clothing Description: All dark clothing. Fleece type hooded shirt, with the hood up. A black neoprene ski mask, which covered the mouth and nose area.

### Modified Suspect/Defendant Information

| Sequence 001 | Type Defendant | SBI Number | Name LEWIS, DARON | | | Nick Name | | |
|---|---|---|---|---|---|---|---|---|
| ex Male | Race Black | Ethnic Origin Non-Hispanic | Age 19 | D.O.B. 12/18/1982 | Height 6' 01" | Weight 210 | Skin Tone | Eye Color Brown |
| air Color Black | Hair Length | Hair Style Afro/Natural | Facial Hair | Voice Speech | Teeth | | Build Large | Glasses |
| Disguise Ski Mask | | Disguise Color(s) Black | | Resident Status Full Time | Unusual Characteristics | | Armed With Handgun | |
| Address RD. 4 BOX 296 MILTON, DE 19968 | | Home Telephone | | Employer/School | | | | Work Telephone |
| Arrest Number 123778 | Arrest Type Warrant | | | | | | | |

### Original Suspect/Defendant Information

| Sequence 002 | Type Suspect | SBI Number | Name WILSON, WILLIAM J | | | Nick Name | | |
|---|---|---|---|---|---|---|---|---|
| Sex Male | Race Black | Ethnic Origin Non-Hispanic | Age 18 | D.O.B. 11/05/1983 | Height 5' 04" | Weight 105 | Skin Tone | Eye Color Brown |
| Hair Color Black | Hair Length | Hair Style Afro/Natural | Facial Hair | Voice Speech | Teeth | | Build Small | Glasses |
| Address RD. 2 BOX 282 MILTON, DE 19968 | | Home Telephone | | Employer/School | | | | Work Telephone |

**Arrest Number** | Suspect's Clothing Description: All dark clothing. Hooded shirt with hood up. Black neoprene ski mask, which covered mouth and nose.

### Modified Suspect/Defendant Information

| Sequence 002 | Type Defendant | SBI Number | Name WILSON, WILLIAM J | | | Nick Name | | |
|---|---|---|---|---|---|---|---|---|
| Sex Male | Race Black | Ethnic Origin Non-Hispanic | Age 18 | D.O.B. 11/05/1983 | Height 5' 04" | Weight 105 | Skin Tone | Eye Color Brown |
| Hair Color Black | Hair Length | Hair Style Afro/Natural | Facial Hair | Voice Speech | Teeth | | Build Small | Glasses |
| Disguise Ski Mask | | Disguise Color(s) Black | | Residen Status Full Time | Unusual Characteristics | | Armed With Club/Blackjack/Brass Knuckles | |

| Reporting Officer DET BETHARD   1857 | Pending Supervisory Review |
|---|---|

## Statement of Victim 002 - MICHAEL JOHNSON - Continued

I asked Mr. Johnson to estimate on a scale of one to ten how sure he was of Daron Lewis' and William Wilson's identity. He stated that he was a ten because he  had worked with both of them at Burger King. He added that at one point, he heard someone say 'Daron watch yourself.' Refer to the audio tape of the interview for the exact detail.

On 021002 a short time after 0700 hrs. I responded to the ███████████and recontacted Mr. Johnson and asked him about the money missing from the safe.

Mr. Johnson was positive that he locked the safe and stated that he did not take any of the money from the safe.

On 021002 at 1550 hrs. I recontacted Mr.     Michael Johnson at the Burger King.

He advised that at 1440 hrs. he received a phone call from Jarid Cubbage, and that Jarid told threatened to hurt him for telling on him.

## Statement of Suspect 001 - DARON LEWIS

On 021002 at 1100 hrs. I interviewed Daron Lewis at DSP 4.  He was advised of Miranda before any questioning.  During the interview, Mr. Lewis admitted to being involved in the Robbery at the Burger King on 020902.  Mr. Lewis stated that he and     William Wilson went riding around with Jarid Cubbage, in Jarid's car on the evening of 020802.  Mr. Lewis added that Jarid's car is a gold Toyota Camry.  Mr. Lewis stated that while they were riding around, Jarid talked about 'getting the Burger    King.'  I asked Mr. Lewis what that meant, and he stated that Jarid was talking about robbing the Burger King.

Mr. Lewis later stated that Jarid later parked his car in the parking lot of the Dollar General store, which is located on State Route  24 behind the Burger King, and he, Jarid Cubbage and William Wilson got out and walked up to the rear of the Burger King.  He added that he had the bat and William Wilson had the gun, which was a B.B. gun.  Mr. Lewis then stated a while later, a     person exited the rear door of the Burger King with the trash and William ran up to him and grabbed him and told him to call the manager outside.  Mr. Lewis then stated that when 'Mike' the manager came outside, he went to him and they took both of  them to the dumpster area and closed them in there behind the gate.  Mr. Lewis stated that Jarid went inside the restaurant and retrieved the money.  Mr. Lewis told me a short time later that Jarid was an assistant manager of that Burger King.  Mr. Lewis then stated that upon exiting the Burger King, he, Jarid Cubbage and William Wilson went back to Jarid's car and they drove to West Rehoboth and he threw the B.B. gun under a disabled car in West Rehoboth.  He also stated that they all wore    gloves during the incident and that Jarid and William had masks on, and that they put everything, except for the B.B. gun, in the trunk of Jarid's car.  Mr. Lewis stated that after leaving West Rehoboth, they drove to an unknown location in     Salisbury, MD and Jarid left the money with a female named Josel.  Refer to the audio tape of the interview for the exact dialogue.

On 021202 at 1245 hrs. I contacted Mr. Lewis at SCI and inquired about him taking me to West Rehoboth to show me    where he placed the B.B. gun.  At that time, he agreed to show me and I drove him to West Rehoboth.  Mr. Lewis then directed me to 114 Duffy Street and he pointed to to a disabled Cadillac Cimeron, which was parked in the front yard.  Mr. Lewis then told me that the B.B. gun and the bat were under the car, near the left rear wheel.

$$EX. 12$$

| Reporting Officer DET. HUDSON  - 4216 | Supervisor Approval CHARLES C BROWN  PSPT560  Date 02/27/2002 1239 | | |

1    taken from a location where an individual would have had to have a key and a

2    combination or something of that effect?

3                    A.        Yes, sir.  After, when I interviewed Mr. Johnson,

4    he stated he took the money out of the registers, put 1,400 -- I think it was

5    fourteen hundred and seven bucks, in the night deposit bag, took the other $522

6    put it in the safe as the start-up money for the next day.  He said he locked the

7    safe with the key and a combination and the next morning, Miss Pamela Bland,

8    which is the manager of the store, notified me that the money was missing from

9    the safe, too.

10                    At that point in time we couldn't understand how the money

11    could have been taken.  So, once I interviewed Mr. Lewis and realized that Mr.

12    Cubbage, who was an assistant manager there, that explained why the money

13    was gone, because Mr. Lewis told me that Mr. Cubbage was the one that went

14    inside the restaurant when he and Mr. Wilson took the two victims back to the

15    dumpster area.  That explains that because I know for sure that Mr. Cubbage

16    knew the combination to the safe and as well as I confirmed that he had a key.

17                    Q.        Okay.  And did you also, you also discussed in

18    your testimony whether any or all three were wearing a disguise on the occasion

19    of this offense and what kind of disguise?

20                    A.        Yes.  Mr. Lewis stated they had on all black

21    clothing and had a shirt over his face.  Said that Mr. Wilson and Mr. Cubbage

22    had on black, possibly neoprene type ski masks.

23                    Q.        Okay.  And did these versions coincide with the

1             A.      I don't think so, sir.

2             (PAUSE).

3             THE COURT:    Anything further, Mr. Barnett?

4             MR. BARNETT:  If I could have a moment, Your Honor, I'm

5    trying to look through the report here.

6             (PAUSE).

7    BY MR. BARNETT:

8             Q.      So, was the gun and the bat tested for any sort of

9    fingerprint evidence?

10            A.      It's in the process of that now, sir.  I don't know if

11   it's been done yet.

12            Q.      Okay.  And so the only evidence that you really

13   have against Mr. Cubbage is the statements by the two codefendants; is that

14   correct?

15            A.      Yes.  Plus that matches up with the only people at

16   the crime scene would have known certain elements of what happened if they

17   were there.

18            Q.      You are circumstantially correct, but as far as any

19   physical evidence or any identification the only thing you have are the

20   codefendants' statements; correct?

21            A.      Yes, sir.

22            MR. BARNETT:  No further questions.  One more, Your

23   Honor, I'm sorry.

LINDA A. LAVENDER
Official Court Reporter

*Ex 14*

B-65
WILSON - Direct

1    Q    The other two get out of the car?

2    A    Yes, sir.

3    Q    What did you do?

4    A    We walk.

5    Q    Step-by-step, what did you do there at the

6    car?

7    A    We put on our disguises, like halfway on,

8    and then we walked over to the little restaurant

9    before Burger King.

10   Q    Did you have anything covering part of your

11   face?

12   A    No, not walking to the store.

13   Q    During the incident at the store, did you

14   have something covering part of your face?

15   A    Yes, sir.

16   Q    What was that?

17   A    A red and white doo-rag.

18   Q    What is a doo-rag?

19   A    It's like a bandana.

20        MR. ADKINS:  Your Honor, I would like to

21   have this marked as the next letter exhibit for I.D.

22        THE CLERK:  Marked as D for State's I.D.

23

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

Ex 15

WILSON - Direct

1    BY MR. ADKINS:

2        Q    Mr. Wilson, I'm going to hand you what is

3    marked State's D for I.D.  I want you to take a look

4    at this.  Do you recognize that?

5        A    Yes, sir.

6        Q    What is it?

7        A    The disguise I had on when I committed the

8    crime.

9        Q    How did you have that on when you say "as

10   you committed the crime"?

11       A    On my face.  Like you could see my eyes, but

12   you couldn't see like the other part of my face.

13       Q    Now do you remember what route or path you

14   took, the three of you, to get over to the Burger

15   King?

16       A    We went through a little housing development

17   that is right behind the Dollar Store, and we stood

18   behind this little restaurant.  I forgot -- I think

19   it's called Cafe Italiano.

20       Q    What, if anything, were you carrying with

21   you?  Were you carrying anything?

22       A    No, sir.

23       Q    Do you know if Daron Lewis was carrying

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

$E \times 16$

Superior Court of the State of Delaware, _____ County

# PLEA AGREEMENT

State of Delaware v. _____

Case No(s): _____ Cr.A.#s: _____

☐ Title 11HAB. OFFENDER _____     ☐ BOOT CAMP ELIGIBLE     ☐ INELIGIBLE
☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☐ Title 11, §4336, sex offender notification required     ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

**Defendant will plead guilty to:**

| Count | Cr.A.# | Charge | [LIO if applicable] |
|---|---|---|---|
| 1 | 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 | Robbery 1st degree | 2-20 yrs L5 |
| | | | guideline 2-10 yrs L5 |
| 2 | 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 | Conspiracy 2nd degree | 0-2 yrs L5 |
| | | | guideline up to 12 mos |
| 3 | 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 | PDWDCF | 2-20 yrs L5 |
| | | | guideline 2-5 yrs L5 |

Upon the sentencing of the defendant, a **nolle prosequi** is entered on ☒ the following charges/☐ all remaining charges on this indictment:

| Count | Cr.A.# | Charge |
|---|---|---|
| 4 | 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 | Wear Disguise During Com. of Felony |

(SUM · 4YRS w/ KEY INSIDE)

**Sentence Recommendation/Agreement:**     ☒ PSI     ☐ Immediate Sentencing

CT 1 /0611/ ROBBERY 1ST · 7YRS L5 AFTER 2YRS L5 THE BALANCE IS SUSPENDED
FOR 5YRS L3  —  CT 2/ 2YRS L5 SUSPENDED FOR 2YRS L2
CT 3/0268/ PDWDCF - 7YRS L5 AFTER 2YRS L5 & SUCCESSFUL COMPLETION
L5/KEY THE BALANCE IS SUSPENDED FOR 12 M L4/CREST UPON COMPLETION CRI 51
BALANCE L4 to · 4YRS L3

**State and Defendant agree to the following:**
☒ Restitution: Pay 1/3 pro rata share of restitution to victim Jeanson
☒ No _____ contact w/ undisclosed victim or Bang King
☒ Other Conditions:
FORFEIT ALL EVID

DAG: ADAM D. GELOF          DEF. COUNSEL: _____
        PRINT NAME                              PRINT NAME

_____          _____
        SIGNATURE                              SIGNATURE

                                   DEFENDANT: _____
Date: _____

XC: Attorney for Defendant, Defendant          Page     of

1   fact that there is testimony that he is in the trunk

2   there at the Salvation Army taking stuff out of the

3   trunk and that things that were used in this were put

4   in the trunk; despite the fact that he is also in the

5   trunk at Joselle's; and despite the fact that he has

6   this vehicle through all this time, they do the search

7   and they still find things related to this robbery.

8          William Wilson took that stand -- I mean, who

9   should know better what they were wearing than the

10  person who wore it -- and he identified that red and

11  white doo-rag as the one he was wearing; that he put

12  over his face.  He even puts it on for you in front of

13  the jury.  And that was found in the car.  You recall

14  the testimony firsthand.  My recollection right now is

15  that it was in the trunk.  If it was somewhere else in

16  the car, you are the ones who determine where it was

17  found.  But in the trunk of the gold Camry.

18          You might say, "Well, how about Michael

19  Johnson?  He couldn't identify the red and white

20  doo-rag."  That is where it goes to back to when you

21  have witnesses testifying, it goes to their

22  perceptions.

23          How could Michael Johnson's perceptions be

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

$Ex$  18

1   affected?  Well, it is eight months later.  At the

2   time, what could be affecting his perceptions of color,

3   of things, of exactly who was wearing what?  It is

4   nighttime.  It is dark.  It is not every day that you .

5   walk out the back door of your place of work and find a

6   gun pointed at the head of your co-worker and another

7   person with a bat who tells you you better move on and

8   get in the dumpster.  That's an upsetting event.  That

9   is a traumatic event.  He said he was shook up.

10       But the person who wore that knows what they

11   wore.  It is pointed out to you, and then it is

12   connected to that man because he says they are his

13   doo-rags.  They were found in his trunk, and that was

14   what was worn by William Wilson.

15       In addition, to corroborate Michael Johnson,

16   where it says on the tape that the third party had

17   gloves.  They were black gloves.  They confiscated

18   gloves also, so you have evidence of a pair of black

19   gloves and you have the one black glove.  Maybe any

20   effort to get rid of everything wasn't completely

21   successful in a junky trunk, in a junky car, and the

22   black gloves and the doo-rags still remain.

23       There is a black bandana, too, or doo-rag,

HUDSON - Direct

1        Q     Detective Hudson, I'm going to put into

2    this machine State's Exhibit 14.  Did you take that

3    photograph?

4        A     Yes, sir, I did.  That's in the parking

5    lot at Troop 4.

6        Q     Can you tell us what that is?

7        A     That is Jarid Cubbage's 1998 gold Toyota

8    Camry.

9        Q     Is that the vehicle you searched?

10       A     Yes, sir, it is.

11       Q     State's Exhibit 15.  Did you take that

12   photograph?

13       A     Yes, sir, I did.

14       Q     What's that?

15       A     On the defendant is the red and white

16   bandana, and on the right there is a black bandana

17   or doo-rag that I found in the trunk of the

18   vehicle.

19       Q     State's Exhibit 16.  Did you take that?

20       A     Yes, sir, I took that photograph.

21       Q     What is that?

22       A     That is a black leather glove or

23   leather-type material.

HUDSON - Direct

1    Q    Where did you find that?

2    A    That was in the rear seat of the vehicle

3   of that 1998 Toyota Camry.

4    Q    State's Exhibit 16.  Did you take that

5   photo?

6    A    Yes, sir, I did.

7    Q    What is that?

8    A    This is a pair of gloves and a white

9   bandana.

10    Q    All right.  Where did you locate those?

11    A    The pair of gloves came from the right --

12   sorry -- from the front passenger seat of the

13   vehicle.

14         THE COURT:  That last photo was No. 17, I

15   guess.

16         MR. ADKINS:  Yes, Your Honor.

17   BY MR. ADKINS:

18    Q    Detective Hudson, I'd like to hand you

19   this bag.

20    A    Yes, sir.

21    Q    Have you ever seen that bag before?

22    A    Yes, sir.  It's the evidence -- it's my

23   writing on the front of the bag.  It contains --

HUDSON - Direct

1    I'm sorry, I misstated that.  It was a light blue

2    bandana, not white.  Dark blue bandana and two

3    black gloves.  This is my writing.  I placed these

4    items in the evidence bag.

5        Q    Could you retrieve the two black gloves?

6        A    (Witness complied.)

7        Q    Are those the gloves that you retrieved

8    from the gold Camry?

9        A    Yes, sir.

10       Q    If I could have those, please.

11            MR. ADKINS:  Your Honor, I offer this pair

12   of gloves as the next State's numbered exhibit.

13            THE CLERK:  Admitted as State's Exhibit

14   No. 18.

15   BY MR. ADKINS:

16       Q    May I have that bag, please?  I hand you

17   another bag, Detective Hudson, and ask you if

18   you've seen that bag before.

19       A    Yes, sir.  It's an evidence bag with my

20   handwriting on it.  It contains a black T-shirt.

21       Q    Well, what I'm really interested in is, is

22   there a glove you collected in that bag?

23       A    Yes, sir, it's the one separate single

KATHY S. PURNELL
OFFICIAL COURT REPORTER

HUDSON - Direct

1    glove.

2        Q    Would you retrieve that?

3        A    Yes, sir.

4        Q    All right.  Where did you retrieve that

5    glove from?

6        A    The one single glove came from the rear

7    seat of the vehicle.

8        Q    Can I have that?

9             MR. ADKINS:  Your Honor, I offer this

10   glove as the next State's numbered exhibit.

11            THE COURT:  Very well.  It is admitted

12   then.

13            THE CLERK:  Admitted as State's Exhibit

14   No. 19.

15   BY MR. ADKINS:

16       Q    With regard to the bat and gun, did you

17   locate those items in your investigation?

18       A    Yes, sir, I did.

19       Q    How did you do that?

20       A    On the 12th of February 2002 at 12:45, I

21   picked up Daron Lewis at SCI and he took me to, I

22   believe it was Hebron Road -- I'm sorry.  No.  It

23   was 114 Duffy Street, and directed me to an

1          MR. ADKINS:   Detective Hudson also is aware of at least a

2   report of a threatening phone call.

3          DETECTIVE HUDSON:   Mr. Michael Johnson.

4          MR. ADKINS:   Mr. Michael Johnson, one of the victims,

5   purportedly placed by the defendant--

6          DETECTIVE HUDSON:   Sunday afternoon at 2:40.

7          MR. ADKINS:   When is that in relation to the Robbery?

8          DETECTIVE HUDSON:   This was Sunday afternoon, the

9   tenth.

10          MR. ADKINS:   So —

11          THE COURT:   So the State's asking for $25,000 on the

12   Robbery First and $5,000 cash each on the other two charges; is that it?

13          MR. ADKINS:   Yes.

14          THE COURT:   All right. Mr. Barnett--

15          MR. BARNETT:   Yes, may I address--

16          THE COURT:    Is there anything further?

17          MR. BARNETT:   Yes, just a moment, Your Honor. If by

18   setting a cash bond the Court is foreclosing any bond on this defendant because

19   no bondsman is going to post a cash bond and if the Court is going to keep his

20   bond at that level, I would ask it at least be secured so that he has the possibility

21   of bond.  And he is entitled to that, he's not been convicted of anything, Your

22   Honor, this is all at the probable cause stage.  There is a possibility that he will

23   be found not guilty by a jury.

LINDA A. LAVENDER
Official Court Reporter

1          It's going to be a matter of basically whether or not there are

2    any fingerprints on the weapons and even fingerprint evidence is now in

3    question in our jurisdiction because of the Federal Court ruling in the Third

4    Circuit now saying that it's not reliable.

5          So, what we have is two codefendants ganging up on a third

6    person and saying he did it. That's all the evidence they have and I think to set

7    a cash bond is effectively denying bond to this defendant.

8          THE COURT:   I'm not so sure that a cash bond is the best

9    bond to set myself. Because in order to secure his appearance, but cash bond

10   might be the best bond to set if he's a threat to the community. And I conclude

11   based on what I've heard here today that he is a threat to the community. The

12   aggravating circumstance being that he is on probation at the time of the alleged

13   offenses. Further, there is other indication in the record about his response to

14   supervision.

15         The bond will be set as follows: $25,000 cash for the

16   Robbery First charge; $5,000 cash on the 020468, the Disguise charge; and

17   $5,000 secured -- I'm going to change that and bond will be set in the amount of

18   $1,000 secured on the 0489, the Conspiracy charge. That's a total of $31,000

19   cash, if I misspoke. I'm reducing only the bond on the Conspiracy charge.

20         The defendant is to have--if the defendant makes bond-- I

21   assume if there's not a no contact order he is to have no contact with the victims

22   of the Burger King robbery incident and is there an application that he have--

23   Well, is there any further application?   Is that sufficient?

LINDA A. LAVENDER
Official Court Reporter

1                   P R O C E E D I N G S

2           THE COURT:  We need Mr. Cubbage brought to

3    the courtroom.

4           THE BAILIFF:  He should be here any second,

5    Your Honor.  I called for him.

6           THE COURT:  All right.  This is the matter

7    of State v. Jarid Cubbage.  I have a motion for

8    judgment of acquittal.  I reviewed the motion filed

9    by the defendant.  I reviewed the response by the

10   State.  I'm prepared to proceed.  Does either side

11   care to have argument on that?  It's up to you.  It's

12   not necessary.

13          MR. ADKINS:  Nothing more from the State,

14   Your Honor.

15          MR. BRADY:  Nothing more from the defense,

16   Your Honor.

17          THE COURT:  The standard of review for the

18   denial of a motion of judgment of acquittal is

19   whether any rational trier of fact, viewing the

20   evidence in the light most favorable to the State,

21   could find the defendant guilty beyond a reasonable

22   doubt.

23          As the trial judge, of course, I heard all

1    of the evidence in this case.  Of course, the matter
2    was submitted for a jury trial.  The jury came back
3    with a finding of guilt on the charges.

4         In this case, we had testimony from Daron .
5    Lewis and William Wilson, who were co-defendants, who
6    previously entered pleas.  They appeared as
7    witnesses, and they set out in detail the involvement
8    of the defendant in this episode.  This was an
9    episode where the three of them, the evidence shows,
10   and certainly a rational fact finder could find this
11   determination, planned to rob the Burger King.  The
12   two of them, Daron Lewis and William Wilson, did the
13   outside work.  Whereas Jarid Cubbage, who was also on
14   the outside with them, went inside and took the money
15   from the cash register.

16        There is overwhelming evidence of the
17   defendant's culpability in this matter.  And there
18   was physical evidence introduced that supported the
19   guilty verdict as well, black gloves, several
20   bandanas found and seized by the police from the
21   defendant's vehicle.  Daron Lewis' taped statement.
22   He said everybody, himself and the co-conspirators,
23   had gloves on.  And the taped statement of Lewis and

trier of fact could have found the defendant guilty beyond a reasonable doubt. Fawcett v. State, Del.Supr 697 A.2d 385 (1997). In this case, there is not credible eyewitness testimony that Cubbage robbed the Burger King. In fact the individual with the best possible vantage point, Johnson, the night manager, told the police that the third suspect was wearing a mask. The two co-defendants combine to provide contradictory and uncorroborated evidence that is greatly impaired by self-interest. Further, should the Court find there was sufficient evidence to believe that Cubbage was the third suspect, the defendant incorporates those arguments made previously with respect to the trial Court's denial of the Motion for Judgement of Acquittal that there was insufficient evidence to believe he was guilty of Possession of a Deadly Weapoon during the Commission of a Felony, Conspiracy 1st and Wearing a Disguise during the Commission of a Felony. Further, the testimony of Johnson was that the three subjects were wearing black headgear, while at trial, Wilson testified that he wore a red and white do-rag (A-36), and Lewis testified that he covered his head with a shirt (A-37). No one ever identified the other do-rags as being involved in the robbery. Further, Detective Hudson could not produce the notes of his preliminary hearing conversation with Wilson (A-38). In total, the evidence

$Ex \ 28$

13

EX 29

1-18-03

Mr. Brady:

I've made a mistake when I told you that I didn't want you to do my appeal but by law you have to do it. I sincerely hope that you didn't file the motion without first informing me. I am suppose to be notified of all decesions you make on my behalf in regards to my case; so saids Delaware Rule Annotated Vol. 2, Rule 1.4 Communication. I have a list of grounds that I would like for you to argue on my behalf as well as any arguements that you may have that differ from the ones I have. The first two arguements, although you did not object to them at trial as I had asked you, they still can be raised on my appeal because (1) I was prejudiced when the State introduced into evidence, William Wilson's oral statements with Det. Hudson that he wore the red/white dorag during the robbery as a disguise which was seized from my car and (2) I also was prejudiced when the State offered into evidence dorags, gloves and black shirts as disguises used in a robbery that they could not link to the Burger King robbery. The State didn't ask any of the State witnesses who were directly involved in the robbery as a participant or a complaining witness about any of the items they introduced into evidence as disguises that were seized from my Toyota Camry. That left the jury to speculate and evidence that is speculative carries the potential for permitting the jury to draw unwarranted inferences. Admissibility is barred because speculation creates prejudice. I mailed you five motions in September to file on my behalf and those motions were for a suppression hearing, evidence hearing and to receive William Wilson's statements from the State. I also mailed the same motions to Superior Court, so if the State still argues that I waived the right to challange the entries on appeal, you can argue Gregory vs. State Del. Spr. 616 A.2d 198, "the motion to suppress standing alone preserves the issue on appeal." I ask that you argue some Federal case law with my appeal. If you have completed the appeal already, I ask that you amended it and file a new appeal with my listed arguements. I also want a copy of the amended appeal

and the previous appeal was filed. I want you to send me a copy as soon as you receive this letter. I hope you respond to this letter because I've written five times since September and yet to have received a letter from you.

Thank you
Jarid Culber
271685

- State failed to disclose relevant statements of Codefendant which is a violation of Delaware Superior Court Criminal Rule 16
  - Johnson vs State Del Supr. 550 A.2d 903    - Ray vs State Del Supr. 587 A.2d 439
  - Skinner vs State Del Supr 575 A.2d 1108

: It was an error in admitting into evidence doorags, gloves and shirts that had no established nexus to the offense charged
  - Farmer vs State Del Supr. 698 A.2d 946

- There was an irreconcilable conflict in the State's case concerning the defendant's guilt
  - Bland vs State Del Supr. 263 A.2d 286     - State vs Thomas et al, 6 Terry 385. 75 A.2d 218
  - Saunders vs State Del Supr. 401 A.2d 629

# There was insufficient evidence to support the jury's verdict

: State failed to establish a prima facie case

: Trial Judge erred in not granting a judgement of acquittal

Trial court erred in allowing impeachment with prior conviction
  - Fennel vs State Del Supr. 691 A.2d 624

Trial Court erred in allowing Jury Foreman to remain on panel after it was disclosed that jury foreman and owner of Burger King James Hautala, whose restaurant was robbed are neighbors and that owner asked for $17,000 dollars in restitution when only $1929.03 was stolen.        EX 29

1    trial, we get that, and I was going to ask him, "Why

2    didn't you tell the police when you were being

3    interviewed about your alibi as to where you were?"  I

4    won't go there if, in the opinion of the Court, that

5    somehow infringes upon his privilege.  But he has

6    already, in an interview, waived his Miranda and

7    voluntarily talked about this subject.  It seems a

8    natural place for me to go on cross-examination.

9                MR. BRADY:  Your Honor, he is right.  He

10   waived his Miranda right.  Before you get upset, I am

11   not saying it wasn't voluntarily.  He said, "You ask

12   questions.  I will answer them."

13               Never in that interview did Detective Hudson

14   ever say, "Well, where were you then if you were not

15   robbing the Burger King?," or "Tell me where you were

16   so I can check it out."  He asked him, "I am under

17   arrest?"  "Yes."  Then he said, "You are going to take

18   me to jail?"  "Yes."  Then, "Take me to jail."

19               THE COURT:  Well, post-arrest silence

20   generally comes with a situation where you have an

21   assertion of rights.  Here you have the rights given

22   and waived in an interview.  He is told in the

23   interview that he is a suspect of this incident, and

Cubbage – Cross                              D-43

1    yet he fails to mention in the interview that he is

2    with his girlfriend, which is an alibi that is being

3    offered at trial. So if your objection is on some kind

4    of constitutional post-arrest silence basis, it is

5    overruled, because that is out. He waived his rights.

6                MR. BRADY: He waived his rights, but

7    Detective Hudson never asked him or gave him the

8    opportunity. You remember at the end, "Well, I am

9    going to shut the tape off."

10                THE COURT: Maybe on redirect examination you

11    can ask him, "Did Mr. Hudson ever ask you that

12    question?"

13                MR. BRADY: All right.

14                THE COURT: That is usually the way that is

15    handled. This is not the first time this has happened.

16    I mean, the way it has been handled before is people

17    say, "I didn't give that explanation because I wasn't

18    asked about it," but it is still fair game to ask.

19                MR. BRADY: I would like also to recall

20    Detective Hudson.

21                THE COURT: Yes.

22                MR. BRADY: I already called him and released

23    him.

Cubbage — Cross                          D-44

1          THE COURT:  He is here.  He is not going

2     anywhere.

3          MR. BRADY:  Thanks.

4          (Whereupon, counsel returned to the trial

5          table and the following proceedings were had:)

6     BY MR. ADKINS:

7     Q    Mr. Cubbage, also in that interview with

8     Detective Hudson, he directly accused you of doing this

9     robbery with Daron Lewis and William Wilson, didn't he?

10    A    Yes.

11    Q    You knew you were a suspect; correct?

12    A    Yes.

13    Q    You knew you were about to get arrested;

14    correct?

15    A    I was already arrested.  He told me once at

16    Burger King and told me once before he turned on the

17    tape.  Then he told me once during the tape.  So I

18    already knew I was arrested.

19    Q    He gave you an opportunity to talk about

20    this; correct?

21    A    What do you mean?

22    Q    Well, to explain yourself?

23    A    No.  He asked me questions about the robbery.

Cubbage – Cross                    D-45

1    He never asked me where I was that night, no.

2         Q    So did you ever think, right then and there

3    at that time, during that interview, to tell Detective

4    Hudson, "I was with this Trineina girl.  Here is her

5    phone number.  Call her.  She will confirm it.  Let me

6    go"?  Did you think of doing that?

7         A    Yeah.

8         Q    Why didn't you?

9         A    Because he already said that I did it, he

10   knew I did it, and that's why I did not tell him,

11   because he already had his mind set that I was guilty.

12   He is not the judge or the jury.  I deal with them.  So

13   that is why I told him, "Take me to jail.  If you are

14   so convinced I am guilty, then take me to jail."

15        Q    So you chose to wait to tell about where you

16   were; correct?

17        A    I would rather talk to a lawyer.  He is not a

18   lawyer.

19        Q    How long have you had this relationship with

20   Trineina?

21        A    Well, it never ended.  So it is still on-

22   going.  So it has been a little over two years.  But I

23   didn't start physically seeing her until after I was in

Mr. Brady:

EX34

I'm writing to you so that you can get a better feel of what I expect of you and my situation. Do not take this the wrong way but I don't trust this whole situation I am in. I had an attorney for seven months and all of a sudden you are my attorney and you were going to go to trial just four days after taking over my case. Then the incident with Prosecutor Gelof didn't sit to well with me at all. That put doubt in my mind about you looking out for the best interest of your Client. I asked around about your credentials and only a few people have heard of you and they all gave negative statements about you. What was told to me by these other people only added strength to my own opinion that I based on the two days that we talked. I couldn't find your name in the phone book, you didn't give me a card or anythin with your address on it. I had to get it from Lamar Hopkins. I don't want you to think that I'm putting you down or anything. M life is on the line and I need someone I can trust and not trying to get the State another conviction. As long as I've been in the system, it has always been mentioned that the Public Defender or Court Appointed works for the state. I just want the person appointed to represent me to fight for me just as they would fight for themself or their children. Everyone wants justice even the accused but justice isn't always about finding a culprit or convicting a culprit, it's about finding out the truth. And no one on the State's side is telling the truth. I need you to file the five motions I have enclosed with this letter. I'm going to te you the same as I told Mr. Barnett. I'm not taking no one else's robbery or weapon's charges. I was trying to get Barnett to resolve the issue before trial because I didn't want my wife to find out I was having an affair but like I said I refuse to

to take another man's charge and I'll take the chance of my wife finding out about my infidelities. I know there is an irreconcilable conflict in the State's Case concerning my guilt. The evidence collected by Sgt. Swain and Det. Hudson contradicts every witness statement. Not to mention Davon lying in his confession three or more times. Like I wrote to Barnett, his credibility is worthless and any decent lawyer would attack it from start to finish. The State would be crazy to jeopardize the case to put him on the stand as their case in cheif. After the State rest their case, I'm asking for a judgement of acquittal. If I'm still found guilty, I'll fight it on appeals and also ineffective assistance of counsel. Another thing, every manager at Burger King has to write down on a cash daily sheet the amount of their Shift's deposit, the amount of money in the safe (start up money). and the time they counted the safe. Burger King safe is exactly $1500 dollars not $522 dollars. Mike told Det. Hudson at 3:05 AM on Saturday 2-9-02 that the safe was approximately $522 dollars but if you check the daily cash sheet, it's going to say that the safe is $1500 dollars. How is he going to log on paper one thing and tell Det. Hudson another? It was only two hours after he allegedly did the paperwork for the night. The safe is the last thing to be counted when doing paperwork. How could he tell the detective the exact amount of money taken from the safe before anyone or the morning manager realized the money was missing? You will see what I'm talking about when you get the cash daily sheet. I need you to send me a copy of the police report, William Wilson's confession or statement and a copy of all the questions I sent to Barnett for Det. Hudson, Mike Johnson, Davon Lewis, Jason Beall, William Wilson and Pam Bland and their inconsistent statements. I need you to file the five motions that I have enclosed with the letter and the

∘ The State is trying to convict me on what I knew as a manager and who I knew. Evidence don't lie, people do and Davon lied and said I was involved to take the heat off of him. I would like to see you in person before I go to trial so that we may discuss strategy for my defense. There is a lot more information and questions that can help open up the case. I hope to hear from you soon. Please respond to my letters and I do not wish to be left in the dark about anything cause this is my life and freedom I'm fighting for.

Thank you

Ex.
34

NAME:

Delaware Corr. Center
Smyrna, DE  19977

OFFICE OF THE PUBLIC DEFENDER
1 South Race Street
Georgetown, DE  19947

DEAR  John Brady            ,

PLEASE FILE THE MOTION(S) INDICATED BELOW IN MY BEHALF:

(X)  MOTION FOR DISCOVERY - RULE 16  Police Report, Statements of Victims and
                                     Suspects' statements

( )  MOTION FOR SPEEDY TRIAL

( )  MOTION FOR REDUCTION OF BAIL

(X)  MOTION FOR SUPPRESSION / Evidence Hearing

( )  MOTION TO DISMISS - FAILURE TO INDICT, FAILURE TO PROSECUTE

( )  MOTION FOR REDUCTION OF SENTENCE

( )  NOTICE OF APPEAL

( )  MOTION FOR BILL OF PARTICULARS

(X)  OTHER: Motion to be permitted to listen to tape recordings made by police of
     co-defendant William Wilson and inspect written records of such tapes
     **PERSONAL INFORMATION:**

NAME: David Cubbage            AKA: _____

SBI # 271683                   DOB: 5-19-72

CASE NUMBERS: 0202007080   _____   _____

CHARGES Robbery 1st  Conspiracy 2nd  wearing disguise during Commission
of Felony  PDWDCF   _____

I APPRECIATE YOUR FILING THESE MOTIONS IN MY BEHALF.

THANK YOU.

SINCERELY YOURS,

DATE: 9-9-02

FORM PDDCCXC.OFM

$Ex$ 35