## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JARID L. CUBBAGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 05-798-GMS |
| | ) | |
| PERRY PHELPS, Warden, | ) | |
| and JOSEPH J. BIDEN, III, Attorney | ) | |
| General of the State of Delaware, | ) | |
| | ) | |
| Respondents.[1] | ) | |

———————————

Jarid L. Cubbage. *Pro se* petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for respondents.

———————————

## MEMORANDUM OPINION

_____ *11 · / 16*_____, 2008
Wilmington, Delaware

———————————

[1]Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former
Attorney General Carl C. Danberg, an original party to this case, and Warden Perry Phelps
replaced Warden Thomas Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).



Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Jarid L. Cubbage ("Cubbage") is an inmate at the Delaware Correctional

Center in Smyrna, Delaware.  Cubbage filed the pending petition for a writ of habeas corpus

("petition") pursuant to 28 U.S.C. § 2254.  (D.I. 2; D.I. 8.)  For the reasons that follow, the court

will dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As detailed by the Delaware Supreme Court in Cubbage's direct appeal, the facts of his

case are as follows:

> Cubbage entered a guilty plea in 1994 to a charge of robbery in the second degree and
> was therefore a convicted felon at the time of his October 2002 Sussex County jury trial.
> From May 2000 to February 2002, Cubbage worked at a Burger King in Sussex county,
> and on February 8, 2002, Cubbage worked at a Burger King in Rehoboth Beach as an
> assistant manager.  As one of the assistant managers, Cubbage had a key to the restaurant
> safe.  The safe also contained a combination lock and only the owners and three store
> managers (Cubbage, Michael Johnson, and Pamela Sue Bland) had both the key and the
> combination.
>
> On February 9, 2002, at approximately 1:00 a.m., assistant manager Johnson was
> counting the daily receipts and placing $1,407.03 in the night deposit bag.  Jason Baull,
> an employee, assisted Johnson with the closing responsibilities.  Baull's responsibilities
> included cleaning the restaurant and removing the trash while Johnson totaled the
> receipts.
>
> While totaling the receipts, Johnson heard Baull calling him from outside the restaurant.
> Johnson laid the deposit bag on a storage room table and went outside to investigate.
> Johnson saw two people dressed in black and one of the individuals had his arms around
> Baull.  The larger of the two individuals had what appeared to be a 9 millimeter handgun
> pointed at Baull's head while the other individual had a baseball bat.  Johnson also
> noticed a third person dressed in black and wearing black gloves trying to hide behind the
> store's utility box.  All three of the individuals wore masks, and Johnson heard the
> individual with the bat address the gunman as "Daron."  The gunman commanded Johnson
> not to do anything stupid or he would shoot Baull.  Johnson recognized the
> gunman's voice to be that of Daron Lewis, a former employee at the Rehoboth Burger

1

King from July 2001 through December 2001. Johnson also recognized the voice of the person with the bat to be William James Wilson III, another former employee from June 2000 to December 2001.

Lewis and Wilson took Johnson to the trash dumpster behind the restaurant and locked Johnson and Baull in the trash dumpster area. A brick wall with access through two wooden doors standing approximately 12 feet high surrounded the restaurant dumpster area. When Lewis and Wilson eventually ran away, Baull climbed over the wall and opened the doors for Johnson. Johnson then noticed that someone opened the previously locked drive-thru window and took the deposit bag. Johnson also inspected the store safe and noticed that the safe was still locked. Johnson then telephoned Pamela Sue Bland, the store manager, to notify her of the robbery. Bland went to the restaurant to meet with the State Police and then noticed that the safe was closed. The next morning, however, Bland opened the safe and discovered approximately $595.000 missing from the safe.

On Sunday, February 10, 2002, Daron Lewis turned himself in at Delaware State Police Troop 4. Lewis told Detective Hudson that Cubbage was the third masked participant in the Burger King robbery of the previous day. Detective Hudson arrested Cubbage that same afternoon while Cubbage was working at the Burger King. The police searched Cubbage's car and found three bandanas and a pair of black gloves. Lewis later showed the Detective the location of the bat and a BB gun actually used in the robbery.

In May 2002, Lewis entered a guilty plea to charges of robbery in the second degree and wearing a disguise during the commission of a felony in connection with his involvement in the February 9th Burger King robbery. Co-defendant William Wilson also pleaded guity to the same charges. Both Lewis and Wilson testified at Cubbage's trial and implicated Cubbage as the third participant in the February 9th robbery. Lewis also testified that after he and Wilson placed Baull and Johnson in the dumpster area, Cubbage ran into the restaurant and stole the money. Both Lewis and Wilson testified that Cubbage drove the three of them to Salisbury, Maryland and left the deposit bag at a residence. Cubbage testified in his own defense at trial and denied any involvement in the robbery.

*Cubbage v. State*, 827 A.2d 30 (Table), 2003 WL 21488129 (Del. June 25, 2003).

A Superior Court jury convicted Cubbage of first degree robbery, possession of a deadly

weapon during the commission of a felony, first degree conspiracy, and wearing a disguise

during the commission of a felony. The Superior Court sentenced Cubbage to eight years in

prison followed by decreasing levels of probation. Cubbage appealed, and the Delaware

2

Supreme Court affirmed his conviction and sentence. *Id*.

In April 2004, Cubbage filed a motion for post-conviction relief pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion") raising nine grounds for relief, including allegations of ineffective assistance of counsel. After considering the defense attorney's affidavit and the State's response, a Superior Court Commissioner filed a Report and Recommendation to the Superior Court recommending that Cubbage's Rule 61 motion be denied. The Commissioner concluded that four claims were procedurally barred pursuant to Superior Court Criminal Rule 61(i)(3), and that Cubbage's ineffective assistance of counsel claims were meritless because Cubbage did not demonstrate prejudice. The Superior Court adopted the Commissioner's Report and Recommendation and denied Cubbage's Rule 61 motion. *State v. Cubbage*, 2005 WL 914470 (Del. Super. Ct. Apr. 13, 2005). Cubbage appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment. *Cubbage v. State*, 884 A.2d 511 (Table), 2005 WL 2319114 (Del. 2005).

Cubbage filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, the State filed an answer, and Cubbage filed a reply. (D.I. 1; D.I. 12; D.I. 25.) Cubbage's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

3

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

4

state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner

5

demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.

*Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.

2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation

has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at

496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United*

*States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to

find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24

(3d Cir. 2002).

## C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court

adjudicated the federal claim on the merits, the court can only grant habeas relief if the state

court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for

the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties

claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather

than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir.

2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374

(2005).

6

When reviewing a § 2254 petition, a federal court must presume the state court's

determinations of factual issues are correct, unless the petitioner presents clear and convincing

evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,

whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This

presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v.

Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV.  DISCUSSION

Cubbage asserts the following eight grounds for relief in his petition: (1) the State

violated Cubbage's due process rights by failing to disclose the substance of co-defendant

William Wilson's statement prior to trial; (2) limitations placed on defense counsel's cross-

examination of Wilson violated the Confrontation Clause; (3) the State submitted false evidence

(doo-rags, gloves, and pictures) during the trial because Detective Hudson stated at Cubbage's

preliminary hearing that the two co-defendants' statements were the only evidence against

Cubbage; (4) the prosecutor improperly cross-examined Cubbage regarding his post-arrest

silence; (5) defense counsel's representation was constitutionally ineffective because he failed to

obtain Wilson's statement regarding the red and white doo-rag and was thus unprepared for trial;

(6) defense counsel's representation was constitutionally ineffective because he did not obtain

Wilson's criminal record which included a shoplifting conviction that could have been used for

impeachment purposes; (7) defense counsel provided ineffective assistance by failing to impeach

Detective Hudson's trial testimony with his preliminary hearing testimony; and (8) defense

counsel provided ineffective assistance by failing to raise as an issue on direct appeal the

7

prosecutor's non-disclosure of Wilson's statement.

The State contends that claims one, two, three, and four are procedurally barred from federal habeas review, and that claims five through eight do not warrant federal habeas relief.

The court will review the claims in seriatim.

### A. Claims five, six, seven, and eight do not warrant relief

Thomas D.H. Barnett, Esquire, represented Cubbage as conflict counsel from the time of discovery in April 2002 through early September 2002, when John Brady, Esquire was substituted as counsel. Cubbage's trial was continued approximately one month in order to allow Mr. Brady an opportunity to "get up to speed." *Cubbage*, 2005 WL 91440, at *6. Cubbage's Rule 61 motion to the Superior Court contained four ineffective assistance of counsel claims, all of which challenged Mr. Brady's performance during the trial and direct appeal. Cubbage also presented his four claims to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court denied the claims as meritless. Consequently, Cubbage will only be entitled to habeas relief if the Delaware Supreme Court's decision is either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but

8

for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Delaware Supreme Court identified *Strickland* as the proper standard and analyzed Cubbage's allegations regarding counsel's performance within its framework. Therefore, the state supreme court's decision is not contrary to *Strickland*. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). The court will separately review the adjudicated ineffective assistance of counsel allegations to determine whether the Delaware Supreme Court reasonably applied *Strickland* in denying those allegations.

### 1. Claims five and eight

Wilson and Lewis gave recorded interviews to Detective Hudson concerning the robbery. Although Lewis initially denied being present at the time of the robbery, he eventually confessed to the robbery. Lewis explained that he had a shirt over his face and that both Wilson and Cubbage "had on black, possibly neoprene type ski masks." *Cubbage*, 2005 WL 914470, at *4. Lewis also stated that all three co-defendants were wearing "black clothing" during the robbery. *Id.* According to Wilson's recorded interview, Cubbage and Lewis picked him up from church

9

and then all three drove to Rehoboth. Wilson, however, stated that they did not rob anyone. *Cubbage*, 2005 WL 914470, at \*4.

Detective Hudson also took a written statement of an interview he had with Lewis. According to the written statement, Lewis explained that "they all wore gloves during the incident and . . . [Cubbage] and [Wilson] had masks on." (D.I. 26, App. to Appellant's Br. in *Cubbage v. State*, No. 168, 2005 at A-35.)

There is no written statement of any interview between Detective Hudson and Wilson. However, Wilson did talk to Detective Hudson after his preliminary hearing in February 2002, and according to Hudson's testimony during Cubbage's preliminary hearing, Wilson's story was "just about the exact same story as Mr. Lewis." *Cubbage*, 2005 WL 914470, at \*4. It is not clear whether Detective Hudson took any notes of that interview. *Id.*

Lewis and Wilson eventually pled guilty to robbing the Burger King, and they both testified at Cubbage's trial. Lewis testified that he had a t-shirt across his nose during the robbery, and although he could not remember what Wilson was wearing, Lewis testified that Cubbage had on "some kind of ski mask." (D.I. 26, App. to Appellant's Op. Br. in *Cubbage v. State*, No. 5,2003, at A-37.) Wilson testified that he was wearing a red and white doo-rag as a mask during the robbery. *Cubbage*, 2005 WL 914470, at \*4. Both Cubbage and his mistress testified that Cubbage was with the mistress at the time of robbery. *Id.*

The police searched Cubbage's car after his arrest, and uncovered a white and red doo-rag, three other bandanas, a pair of black gloves, a single black glove, a black t-shirt, and another black shirt. *Cubbage*, 2005 WL 914470, at \*4. The prosecution disclosed these items to the defense during discovery, and the items were admitted as evidence at Cubbage's trial. However,

10

Cubbage asserts that Wilson's testimony about the red and white doo-rag took the defense by surprise, and that the prosecution should have provided Wilson's intended testimony to the defense during discovery. As a result, in claims five and eight, Cubbage argues that defense counsel was unable to present the best defense possible, and that counsel was ineffective for failing to challenge the prosecutor's non-disclosure of Wilson's intended testimony about the doo-rag at trial and also on appeal.

Cubbage presented these ineffective assistance of counsel claims to the Superior Court in his Rule 61 motion. Because the record did not conclusively indicate whether Detective Hudson took notes of the conversation he had with Wilson after Wilson's preliminary hearing, the Superior Court provided two alternate reasons for denying the claims as meritless. First, the Superior Court explained that, if Hudson did not take notes of Wilson's statement, then Cubbage "was not entitled to the oral statements on Wilson pursuant to discovery, [and] . . . trial counsel was not ineffective for not seeking disclosure of the notes during discovery or for not seeking exclusion of the statement on the ground that discovery was violated." *Cubbage*, 2005 WL 914470, at *10. Second, even if the Detective did take notes, and those notes reflected a statement by Wilson identifying the red and white doo-rag as his mask, counsel was not ineffective for failing to object to the non-disclosure of the notes (or for failing to object to Wilson's testimony itself) because there was such substantial and overwhelming evidence of Cubbage's guilt that Cubbage would have been convicted without Wilson's doo-rag testimony. *Id.* at *11. In other words, Cubbage did not satisfy the prejudice prong of *Strickland* because he could not show that the jury would not have found him guilty if counsel objected to Wilson's testimony, or that the Delaware Supreme Court would have reversed if counsel raised the alleged

11

discovery violation on direct appeal. The Delaware Supreme Court affirmed the Superior Court's denial of the claims.

After reviewing the record, the court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in affirming the Superior Court's decision. As an initial matter, the court notes that there is no "concrete evidence to establish that Wilson ever stated to the police officer that he wore the red and white doo-rag." *Cubbage*, 2005 Wl 914470, at *2. Consequently, if Wilson did not tell Detective Hudson that he was wearing a red and white doo-rag during the robbery, then there simply was no discovery violation and counsel was not ineffective for failing to raise a meritless objection at trial or present a meritless argument on appeal.

Further, even if Wilson did describe the red and white doo-rag in the statement he gave to Detective Hudson after Wilson's preliminary hearing, the Delaware state courts reasonably applied *Strickland* in holding that counsel's failure to object to the non-disclosure of the statement (or his failure to raise the issue on appeal) did not rise to the level of constitutionally ineffective assistance. In counsel's Rule 61 affidavit, counsel explicitly states that the State provided him with a copy of the police report which, in turn, indicated that Wilson gave a non-taped statement to Detective Hudson in the presence of Mr. Chasanov, Wilson's counsel. Defense counsel's affidavit also explains that he talked to Mr. Chasanov prior to Cubbage's trial, and that Chasanov "confirmed the statement." (D.I. 26, Appellant's Op. Br. in *Cubbage v. State*, No.168,2005, at AA-66.) After reading defense counsel's Rule 61 affidavit in context with the record, the court interprets defense counsel's assertion that Chasanov "confirmed the statement" to mean that Chasanov confirmed the *content* of Wilson's un-taped statement to Detective

Hudson, as opposed to merely confirming the *fact* that Wilson gave a statement to Detective

Hudson. Consequently, counsel did not perform ineffectively by failing to object to the

testimony as "non-disclosed" because counsel was already aware of Wilson's information

regarding the red and white doo-rag.

However, even if the court views the Rule 61 affidavit as merely confirming the *fact* that

Wilson spoke to Detective Hudson after his preliminary hearing rather than as confirming the

*content* of Wilson's statement, the court still finds that the Delaware state courts did not

unreasonably apply *Strickland* in this case. Simply stated, Cubbage has failed to demonstrate

that he would not have been convicted if Wilson's doo-rag testimony had been excluded. As

explained in the Superior Court Commissioner's Report and Recommendation,

> There was substantial, overwhelming evidence of defendant's guilt. The testimony and
> statements of Wilson and Lewis established that defendant participated in the robbery.
> The facts defendant had a key to the safe and the money in the safe was taken constitute
> additional evidence of defendant's participation in the crimes. The gloves found in
> defendant's car were tied to the robbery. If the doo-rag statement had not been a part of
> the State's case, then the outcome would have been different only if the jury had not
> believed the statements and testimony of Wilson and Lewis, had believed the testimony
> of defendant and his mistress [that defendant was with mistress at the time of the crime],
> and had ignored the facts regarding defendant's access to the safe from which money was
> taken. The testimony about the red and white doo-rag was but one drop in a bucket of
> evidence.

*Cubbage*, 2005 WL 914470, at *11.

It is the jury's task at trial, and not a court's task on habeas review, to judge the credibility

of witnesses and to resolve conflicts in testimony. *Jackson v. Virginia*, 443 U.S. 307, 326

(1979). In this case, both Lewis and Wilson implicated Cubbage as the third robber, and the

court defers to the jury's acceptance of the witnesses' testimony as more credible than the

testimony provided by Cubbage and his mistress. Additionally, three black gloves and two black

13

shirts were found in Cubbage's car, Cubbage knew the combination to the Burger King safe, and he possessed a key to the safe. Even without Wilson's doo-rag testimony, these facts and evidence provided the jury with a sufficient basis to reasonably conclude that Cubbage was guilty of committing the crimes charged. Accordingly, the court will deny Cubbage's claims regarding counsel's ineffective assistance with respect to Wilson's testimony.

### 2. Claim six

In claim six, Cubbage contends that counsel provided ineffective assistance by failing to obtain the record of Wilson's juvenile shoplifting conviction because counsel could have used the conviction to impeach Wilson's credibility under Delaware Rule of Evidence 609. The Superior Court denied this claim due to Cubbage's failure to demonstrate prejudice under *Strickland* after concluding that evidence of Wilson's juvenile adjudication was not necessary for a fair determination of Cubbage's guilt or innocence. The Delaware Supreme Court affirmed Superior Court's decision.

As a general rule, evidence of juvenile adjudications is not admissible pursuant to Delaware Rule of Evidence 609(d); however, in a criminal case, a court may

> allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

Del. R. Evid. 609(e). During Cubbage's trial, Wilson testified that he had entered pleas of guilty to second degree robbery and wearing a disguise during the felony (D.I. 26, App. to State's Ans. Br. in No.5,2003, at B-42.) These two convictions provided the defense with sufficient opportunity to impeach Wilson's credibility, thereby supporting the Superior Court's conclusion

14

that the additional evidence of Wilson's juvenile adjudication was not necessary for a fair

determination of Cubbage's guilt or innocence. *Cubbage*, 2005 WL 914470, at *15. Moreover,

the record demonstrates that defense counsel knew about Wilson's juvenile criminal record, and

that he made an informed decision to not use the juvenile conviction for impeachment purposes.[2]

Therefore, counsel also did not perform deficiently by not attempting to impeach Wilson's

credibility with his juvenile conviction. Accordingly, the court concludes that claim six does not

warrant habeas relief.[3]

### 3. Claim seven

The following colloquy between Detective Hudson and defense counsel occurred during

Cubbage's preliminary hearing:

Q: So, was the gun and the bat tested for any sort of fingerprint evidence?

A: It's in the process of that now, sir. I don't know if it's been done yet.

Q: Okay. And so the only evidence that you really have against Mr. Cubbage is the statements by the co-defendants; is that correct?

A: Yes. Plus that matches up with the only people at the crime scene who would have known certain elements of what happened if they were there.

Q: You are circumstantially correct, but as far as any physical evidence or identification

---

[2]In his Rule 61 affidavit, counsel states that Wilson's juvenile conviction would not be admissible because Wilson "admitted he pled guilty to a felony and was serving a sentence." (D.I. 26.)

[3]The Superior Court also concluded that Cubbage could not satisfy *Strickland*'s prejudice prong because defense counsel undermined Wilson's credibility during Wilson's cross-examination and during counsel's closing statement. Although the court cannot assess this conclusion because the record does not include defense counsel's cross-examination of Wilson or defense counsel's closing statement, Wilson's testimony regarding his conviction for participating in the Burger King robbery provides a sufficient basis for the court's conclusion that Cubbage did not establish sufficient prejudice under *Strickland*.

the only thing you have are the co-defendants' statements; correct?

A: Yes, sir.

*Cubbage*, 2005 WL 914470, at *12. However, during Cubbage's trial, Detective Hudson stated that he retrieved four bandanas (one of which was the red and white doo-rag), a black shirt, a single black leather glove, and another pair of black gloves and placed them in evidence bags that were admitted at trial. (D.I. 26, Appellant's Op. Br. in *Cubbage v. State*, No.168,2005, at AA Ex. 24-26.) In claim seven, Cubbage argues that defense counsel provided ineffective assistance by failing to impeach Detective Hudson's trial testimony as being inconsistent with the testimony Detective Hudson provided during Cubbage's preliminary hearing.

Cubbage raised this claim in his Rule 61 motion, and the Superior Court denied it for lack of prejudice. More specifically, after viewing Detective Hudson's preliminary hearing testimony in context with the entire record and the timing of events, the Superior Court Commissioner determined that Hudson "clearly had physical evidence against [Cubbage] as a result of the car search and location of the weapons," and that the Detective was merely stating that "he did not have identifying evidence against [Cubbage], such as DNA or fingerprints." *Cubbage*, 2005 WL 914470, at *12 n.7, *13. Consequently, "if trial counsel had sought to impeach the Detective, the Detective merely would have clarified his statement." *Id.* at *13.

After independently reviewing the record, the court concludes that the Delaware courts did not unreasonably apply *Strickland* in denying this claim for lack of prejudice. According to Detective Hudson's typed "Investigative Narrative," he searched Cubbage's car on February 11, 2002, and seized one red/white bandana, one black bandana, one pair of white Rebok sneakers, 1 black t-shirt, 1 black golf type shirt, and one black glove. (D.I. 26, Appellant's Op. Br. in

16

*Cubbage v. State*, No.168,2005, at AA Ex. 10(B).) The Search Warrant Return, dated February

18, 2002, indicates that the following additional items were seized on the same day: one light

blue bandana, one dark blue bandana, and one pair of black gloves. *Id.* at Ex. 28. Cubbage's

preliminary hearing took place on February 28, 2002, seventeen days after the evidence was

seized. *Id.* at AA-80. Clearly, then, at Cubbage's preliminary hearing, Detective Hudson was

aware of the physical evidence he had obtained from Cubbage's car, and further questioning by

defense counsel would have clarified any misconception surrounding Hudson's remark that the

only pieces of evidence were the two statements by Cubbage's co-defendants. Accordingly, the

court will deny claim seven as meritless.

### B. Claims one, two, three, and four are procedurally barred

Cubbage presented claims one through four to the Superior Court in his Rule 61 motion,

and the Superior Court denied the claims as procedurally barred by Rule 61(i)(3) due to

Cubbage's failure to assert the claims in his direct appeal. In turn, the Delaware Supreme Court

affirmed the Superior Court's judgment, specifically holding that Cubbage's claims were

procedurally barred under Rule 61(i)(3) and that the claims failed to qualify for the exception to

that bar found in Rule 61(i)(5). *Cubbage*, 2005 Wl 2319114, at *2.

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated

a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1989) that its decision rested on

state law grounds. This court has consistently held that Rule 61 is an independent and adequate

state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d

283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus,

the court cannot review the merits of claims one, two, three, and four absent a showing of cause

17

for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

Cubbage does not assert any cause sufficient to excuse his procedural default of claims two and four.[4] To the extent Cubbage attempts to assert ineffective assistance of counsel as cause for his default of claims one and three, his attempt fails because the court has already concluded that Cubbage's ineffective assistance of counsel claims are meritless. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) (explaining that counsel's ineffectiveness in failing to preserve a claim for review in the state courts can constitute cause for a procedural default if the ineffective assistance of counsel claim was presented to the state courts and counsel's assistance was so ineffective that it violated the Constitution.)

In the absence of cause, the court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine does not excuse Cubbage's default, because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will dismiss claims one, two, three, and four as procedurally barred.

---

[4]In his reply to the State's answer, Cubbage argues that he is not required to establish cause because the Delaware Supreme Court adjudicated the merits of claims one through four and waived Cubbage's procedural default by issuing the "alternative holding" that "[i]t is manifest on the face of Cubbage's opening brief that this appeal is without merit." (D.I. 25 at pp. 2-3.) Reading the Delaware Supreme Court's decision in its entirety reveals the speciousness of Cubbage's argument, and therefore, the court concludes that the Delaware Supreme Court did not issue an alternative holding on the merits. Nevertheless, even if the court were to view the Delaware Supreme Court's decision as providing an alternative holding on the merits, the Delaware Supreme Court explicitly invoked the procedural bar of Rule 61 in its opinion, thereby authorizing the court to apply the procedural default doctrine to claims one through four. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Johnson v. Pinchak*, 392 F.3d 551, 558 (3d Cir. 2004).

18

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Cubbage's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, the court will deny Cubbage's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

19

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JARID L. CUBBAGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 05-798-GMS |
| | ) | |
| PERRY PHELPS, Warden, | ) | |
| and JOSEPH J. BIDEN, III, Attorney | ) | |
| General of the State of Delaware, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner Jarid L. Cubbage's petition for the writ of habeas corpus filed pursuant to 28 U.S.C § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 2; D.I. 8.)

2. The court declines to issue a certificate of appealability for failure to satisfy 28 U.S.C. § 2253(c)(2).

Dated: _Mar 16_ , 2008

CHIEF, UNITED STATES DISTRICT JUDGE

**FILED**

APR 16 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE